## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

......................................................

**DAVID R. GEIGER,**

                    Plaintiff,

          v.

**FOLEY HOAG LLP RETIREMENT
PLAN** and **FOLEY HOAG LLP,** as
administrator of the Foley Hoag LLP
Retirement Plan,

                    Defendants.

......................................................

# 0 5 CA 1 1 8 9 3 RWZ

**C. A. NO.** _____

RECEIPT # _____

AMOUNT $ 250. 00 _____

SUMMONS ISSUED ✓ _____

LOCAL RULE 4.1 ___/_____

WAIVER FORM ___/_____

MCF ISSUED _____

BY DPTY. CLK. _cmg_

DATE _9-19-05_

MAGISTRATE JUDGE _Bowler_

SCANNED
DATE: 9/20/05
BY: Tom

## COMPLAINT

Plaintiff David R. Geiger ("Mr. Geiger") hereby asserts the following as his Complaint
against defendants Foley Hoag LLP Retirement Plan (the "Plan") and Foley Hoag LLP, as
administrator of the Foley Hoag LLP Retirement Plan ("Foley"):

### Parties and Jurisdiction

1. Mr. Geiger is an individual with a principal place of residence in Wellesley,
Massachusetts.

2. Upon information and belief, the Plan is a pension plan within the meaning of and
subject to the federal Employee Retirement Income Security Act of 1974, as from time to time
amended ("ERISA" or the "Act"), with a principal place of business at 155 Seaport Boulevard,
Boston, Massachusetts.

3. Upon information and belief, Foley is a registered professional limited liability
partnership organized under the laws of the Commonwealth of Massachusetts with a principal
place of business at 155 Seaport Boulevard, Boston, Massachusetts.

4.  This court has jurisdiction over the subject matter of this action pursuant to, among other provisions, 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), inasmuch as the action arises under the Constitution, laws or treaties of the United States and is by a pension plan participant under Subchapter I of Chapter 18 of Title 29 of the United States Code.

5.  Venue is proper in this district pursuant to, among other provisions, 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2), in that the Plan and Foley reside in this district, a substantial part of the events or omissions giving rise to the claims occurred therein, the Plan is administered therein and the Plan's and Foley's breaches of duty took place therein.

### Facts

### The Plan and the Other Parties' Roles Therein

6.  Upon information and belief, the Plan is a terminated plan within the meaning of ERISA.  Upon information and belief, as a result of this status funds that are already in the Plan in the name of or for the benefit of a participant may remain in the Plan and be reinvested in investment options permitted by the Plan, but new such funds may not be added to the Plan nor may such funds that were previously in but withdrawn from the Plan be returned thereto.

7.  Mr. Geiger is a participant in the Plan within the meaning of ERISA, including but not limited to under 29 U.S.C. § 1002(7).

8.  Upon information and belief, Foley is the administrator of the Plan within the meaning of ERISA, including but not limited to under 29 U.S.C. § 1002(16)(A).

9.  Upon information and belief, as administrator Foley is a fiduciary with respect to Mr. Geiger under the Act, including but not limited to under 29 U.S.C. § 1002(21)(A), and is required by 29 U.S.C. § 1104(a)(1) to, among other things, "discharge [its] duties with respect to [the] [P]lan solely in the interest of" Mr. Geiger and "for the exclusive purpose of . . . providing

- 2 -

benefits" to him.

### The Underlying Divorce Action and Order

10.  For some period of time prior to the date hereof, Mr. Geiger has been a party to an action for divorce pending in the Probate and Family Court of the Trial Court of the Commonwealth of Massachusetts (the "Action"). By order entered on or after August 8, 2000, the court in the Action found that the parties had a strong interest in their privacy, that there was no identifiable community interest in the case and that there was a risk to the parties and others of harm from the disclosure of sensitive financial and other highly personal and private information that would be revealed in the court file. Accordingly, the court found good cause for issuance of an order of impoundment and ordered the entire court file except the docket sheet impounded until the passage of twenty-five years from the entry of any judgment of divorce. Such judgment was entered on June 7, 2004.

11.  On or about March 29, 2005 the court in the Action signed, and on or about May 13, 2005 the court entered, an order and supplemental order (together, the "Order") purporting to assign a portion of Mr. Geiger's interest in the Plan to the plaintiff in the Action. A true and accurate copy of the Order—with the exception of the redaction, in order to protect the privacy interests of the parties to the Action, of a fixed dollar amount specified in the Order and of the parties' social security numbers—is attached hereto and incorporated herein as Exhibit A.

### ERISA's Anti-Assignment Requirement

12.  Under ERISA, including but not limited to 29 U.S.C. § 1056(d)(1), every pension plan "shall provide that benefits provided under the plan may not be assigned or alienated." By virtue of 29 U.S.C. § 1056(d)(3)(A), this prohibition on assignment of benefits "shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a

- 3 -

participant pursuant to a domestic relations order, except . . . if the order is determined to be a qualified domestic relations order" ("QDRO").

### Violations of ERISA Requirements for Plan QDRO Procedures

13. ERISA requires, including but not limited to by virtue of 29 U.S.C. § 1056(d)(3)(G)(ii), that that each pension plan governed by the Act "shall establish reasonable procedures to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders."

14. Upon information and belief, however, notwithstanding that requirement, at no time prior to June 3, 2005, June 13 or 14, 2005 or the date hereof, did the Plan or Foley establish with respect to the Plan any procedures to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders.

15. On or about June 13, 2005, Foley represented, upon information and belief falsely, that a document entitled Qualified Domestic Relations Order Procedures (the "Procedures"), a true and accurate copy of which is attached hereto and incorporated herein as Exhibit B, constituted such procedures that had been established by the Plan. The Procedures, however, are unsigned, undated, nowhere identify themselves as procedures promulgated by the Plan or Foley (upon information and belief they are also not located anywhere on Foley's word processing system) and nowhere identify themselves as procedures relating the Plan. Foley also failed to respond to Mr. Geiger's request by letter of June 13, 2005 to explain how the Procedures were purportedly established and pursuant to what provisions of the Plan.

16. To the extent the Procedures are indeed procedures established by the Plan or by Foley with respect to the Plan to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders, the Procedures are not reasonable or

- 4 -

otherwise lawful under the Act.  Among other things, and, without limitation:

a.  The Procedures are generally confusing, unintelligible and internally contradictory.

b.  The Procedures contain numerous provisions by which the Plan would purport to make a hypothetical determination whether a <u>draft</u> of a domestic relations order, which has not been entered by a domestic relations court, would <u>if</u> entered by such a court constitute a QDRO, which is completely unauthorized by ERISA.

c.  The Procedures fail to require that if the Plan receives a domestic relations order relating to a participant the Plan promptly give the participant notice of the Plan's procedures for determining whether the order constitutes a QDRO, contrary to the explicit requirement of 29 U.S.C. § 1056(d)(3)(G)(ii)(II) that a plan's procedures for determining the qualified status of a domestic relations order "<u>shall</u> provide for the notification of each person specified in a domestic relations order as entitled to payment of benefits under the plan . . . of such procedures promptly upon receipt by the plan of the domestic relations order," and contrary to the requirement of 29 U.S.C. § 1056(d)(3)(G)(i)(I) that "[i]n the case of any domestic relations order received by a plan . . . the plan administrator <u>shall</u> promptly notify the participant and any alternate payee of . . . and the plan's procedures for determining the qualified status of domestic relations orders."

d.  The Procedures provide for a determination by the Plan whether a domestic relations order received by the Plan relating to a participant constitutes a QDRO <u>before giving the participant an opportunity to be heard</u> on the issue.

e.  The Procedures fail to require that if the Plan determines that a domestic relations order received by the Plan constitutes a QDRO, the Plan inform the participant affected by the order of the Plan's <u>reasons for such determination</u>.

## **Violations of ERISA's Procedural Requirements Concerning the Order**

17. Upon information and belief, at some time on or after March 29, 2005 but on or before May 5, 2005, the Plan and Foley received a copy of the Order. Foley thereupon failed to notify Mr. Geiger promptly of its receipt of the Order, or of the Plan's purported procedures for determining the qualified status of domestic relations orders and administering distributions under such qualified orders, including but not limited to the Procedures, contrary to the explicit requirement of 29 U.S.C. § 1056(d)(3)(G)(i)(I) that "[i]n the case of any domestic relations order received by a plan . . . the plan administrator shall promptly notify the participant and any alternate payee of the receipt of such order and the plan's procedures for determining the qualified status of domestic relations orders."

18. Contrary to the Act, including but not limited to the intent of the just-cited provision, Foley purported to determine, by letter of May 5, 2005, that the Order constituted a QDRO without giving Mr. Geiger an opportunity to be heard on the issue. A true and accurate copy of said letter—with the exception of the redaction, to protect the parties' privacy interests, of the specified dollar amount and the parties' social security numbers—is attached hereto and incorporated herein as Exhibit C.

19. Foley did not give Mr. Geiger notice of its receipt of the Order until his receipt of a letter from Foley dated June 3, 2005, over four weeks after Foley had already purported to determine, without giving Mr. Geiger an opportunity to be heard, that the Order was a QDRO,

20. Foley did not give Mr. Geiger notice that the Procedures were Foley's purported procedures for determining the qualified status of domestic relations orders and administering distributions under such qualified orders until on or after June 13, 2005, over six weeks after Foley had already purported to determine, without giving Mr. Geiger an opportunity to be heard,

- 6 -

that the Order was a QDRO.

### Additional ERISA Violations in Determining the Order to be a QDRO

21. In addition to the Plan and Foley's failure to establish proper QDRO procedures in general, and Foley's failure to follow procedures lawful under ERISA in determining whether the Order constitutes a QDRO, Foley violated ERISA in purporting, by letter sent on or about September 16, 2005, to make a further and final determination that the Order constitutes a QDRO. A true and accurate copy of said letter—with the exception of the redaction, to protect the parties' privacy interests, of the specified dollar amount and the parties' social security numbers—is attached hereto and incorporated herein as Exhibit D.

22. Among other things, to the extent there was any ambiguity or discretion available to Foley under ERISA in determining whether the Order was a QDRO, Foley was required as a Plan fiduciary to exercise that discretion in Mr. Geiger's favor and to determine that the order was not a QDRO, thus acting solely in <u>his</u> interest and exclusively for the purpose of providing Plan benefits to <u>him</u>.

23. Further, Foley violated ERISA in purporting to determine that the Order constitutes a QDRO in numerous additional respects, including but not limited to the following:

a. The Order does not even constitute a "domestic relations order" under 29 U.S.C. § 1056(d)(3)(B)(ii), a prerequisite to being a QDRO, because an order may be found to constitute a "judgment, decree, or order" under that provision only when it is <u>final</u>, rather than merely provisional, while the Order, and the judgment in the Action on which it is based, is presently on appeal and hence not final.

b. The Order also does not constitute a "domestic relations order" because the Order does not "relate[] to the provision . . . of marital property rights to a . . . former spouse" within

- 7 -

the meaning of under 29 U.S.C. § 1056(d)(3)(B)(ii)(I), as Massachusetts law does not provide either spouse any property rights but rather makes the retrospective assignment of property interests by the court completely discretionary or arbitrary.

c. The Order also does not constitute a "domestic relations order" because the Order was not in fact issued "pursuant to a State domestic relations law" as required by 29 U.S.C. § 1056(d)(3)(B)(ii)(II) but rather contrary to same, which is why the Order, and the judgment on which it is based, is on appeal.

d. Even if it is a "domestic relations order," the Order does not constitute a QDRO because it fails to "clearly specif[y] . . . each plan to which such order applies" as required by 29 U.S.C. § 1056(d)(3)(C)(iv). Rather than specify that it relates to the Plan, the Order states that it pertains to the "Foley Hoag LLP Keogh Plan."

e. The Order also does not constitute a QDRO because it fails to "clearly specif[y] . . . the amount . . . of the participant's benefits to be paid . . . to each such alternate payee, or the manner in which such amount . . . is to be determined" as required by 29 U.S.C. § 1056(d)(3)(C)(ii). The Order provides that plaintiff in the Action is "awarded . . . [the specified dollar amount] adjusted for any investment gains and losses . . . for the period between the date an account is established for the benefit of [plaintiff] and the date of distribution," and that the "Administrator is hereby instructed to establish a separate account under the Plan in the name of [plaintiff] and in the amount of the benefit assigned." Yet, among other things, Mr. Geiger's interest in the Plan is not held in cash but rather in differing numbers of shares of different mutual funds, and the terms "investment gains and losses," "date an account is established for the benefit of [plaintiff]" and "date of distribution" are completely undefined and at best ambiguous.

- 8 -

f. The Order also does not constitute a QDRO because it fails to "clearly specif[y] . . . the . . . period to which such order applies" as required by 29 U.S.C. § 1056(d)(3)(C)(iii). The Order contains no provision whatsoever as to when the benefit assignment is to be made.

### The Threatened Harm to Mr. Geiger

24. Upon information and belief, the Plan and/or Foley are imminently about to transfer a substantial portion of Mr. Geiger's vested benefits in the Plan to the plaintiff in the Action, causing grievous financial loss to Mr. Geiger. Upon information and belief, any such transfer will also cause irreparable harm to Mr. Geiger in that, among other things, he will be deprived of his right and ability to control the investment of the benefits, the benefits will be subject to diminution or complete dissipation due to investment by the plaintiff in the Action and the benefits may be withdrawn by the plaintiff in the Action from the Plan and may not be subsequently restorable thereto, even in the event the Order is determined not to constitute a QDRO or is reversed on appeal in the Action, due to the Plan's terminated status.

### Count I

### (29 U.S.C. § 1132)

25. By virtue of their actions and omissions as set forth above, Foley has violated and is about to violate further its fiduciary duties under ERISA, and the Plan and Foley have violated and are about to violate further various provisions of Subchapter I of Chapter 18 of Title 29 of the United States Code. Accordingly, Foley is liable to Mr. Geiger under 29 U.S.C. § 1132(a)(2), and the Plan and Foley are liable to him under 29 U.S.C. § 1132(a)(3), for injunctive, other appropriate equitable and other appropriate relief.

WHEREFORE, Mr. Geiger respectfully prays that this Court:

(1) enter judgment in favor of Mr. Geiger and against the Plan and Foley on all counts hereof;

(2) declare that the Order is not a QDRO;

(3) issue a permanent injunction ordering the Plan and Foley, their respective officers, agents, servants, employees and attorneys, and all persons in privity or in active concert or participation with any of them, to refrain from assigning, transferring, restricting, encumbering, or otherwise impairing in any way any interest or benefit of Mr. Geiger under the Plan;

(4) award Mr. Geiger his reasonable costs and attorneys' fees herein; and

(5) award Mr. Geiger such other and further relief as is proper and just.

Respectfully submitted,

David R. Geiger, pro se
22 Tanglewood Road
Wellesley, MA 02481
(781) 431-1411

Dated: September 19, 2005

COMMONWEALTH OF MASSACHUSETTS
PROBATE & FAMILY COURT

### IMPOUNDED CASE

NORFOLK, SS:                                              NO. 99D-1578-DV1

|                          |   |                                       |
|--------------------------|---|---------------------------------------|
| KAREN LEEDS,             | ) |                                       |
|     Plaintiff,           | ) |                                       |
|                          | ) | **QUALIFIED DOMESTIC RELATIONS ORDER** |
|     vs.                  | ) |                                       |
|                          | ) |                                       |
| DAVID R. GEIGER,         | ) |                                       |
|     Defendant            | ) |                                       |
|                          | ) |                                       |

### FOLEY HOAG LLP KEOGH PLAN
### (RETIREMENT TRUST FOR THE BENEFIT OF DAVID R. GEIGER)

This Order is entered pursuant to M.G.L. c. 208, §34 that relates to the provision of child support, alimony payments and/or marital property rights, as defined therein between spouses and former spouses. This Order assigns to the Alternate Payee the right to receive a portion of the Participant's vested account payable under the plan specified below, which is qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and the Employee Retirement Income Security Act of 1974 ("ERISA"). Furthermore, this Order is intended to constitute a Qualified Domestic Relations Order ("QDRO") and is made in accordance with Sections 401(a)(13) and 414(p) of the Code and Section 206(d) of ERISA.

**IT IS ORDERED AND ADJUDGED** as follows:

I.    For purpose of this Order, the following terms are defined as follows:

    A.    "Plan" is Foley Hoag LLP Keogh Plan, as may be amended from time to time, and any successor thereto, the Plan to which this Order applies.

    B.    "Participant" is:

                Name:                                 David R. Geiger
                Social Security Number:
                Address:                              22 Tanglewood Road
                                        Wellesley, MA 02481

C.    "Alternate Payee" is:

> Name:                        Karen Leeds
> Social Security Number:
> Address:                     8 Vista Road
>                              Wellesley, MA 02481

The Alternate Payee is the former spouse of the Participant.

D.    "Plan Administrator" is Foley Hoag LLP and may be contacted at:

> 155 Seaport Blvd.
> Boston, MA 02210.

II.    The following provisions govern the assignment, management and distribution of the
benefit awarded to the Alternate Payee under this Order.

A.    *Amount of Benefit Assigned to the Alternate Payee.* The Alternate Payee is
awarded from the Participant's vested account under the Plan:

$_____ adjusted for any investment gains and losses in accordance with the
provisions of the Plan for the period between the date an account is established for
the benefit of the Alternate Payee and the date of distribution.

The amount awarded and assigned to the Alternate Payee shall not include any
portion of a note payable by the Participant pursuant to an outstanding loan under
the Plan and any such note shall remain the sole responsibility of the Participant.

B.    *Separate Account Established for the Alternate Payee.* The Plan Administrator is
hereby instructed to establish a separate account under the Plan in the name of the
Alternate Payee and in the amount of the benefit assigned to the Alternate Payee
pursuant to II.A. above. The amount assigned to the Alternate Payee will be taken
from the Participant's vested account ~~on a pro rata basis from the Participant's
investment elections in effect on the date the Alternate Payee's account is
established ("last investment elections")~~. The Alternate Payee's account will          ⟨D.H.K.⟩
continue to be invested in the set investment elections, subject to subsequent
change by the Alternate Payee.

C.    *Investment Options.* Following the establishment of the Alternate Payee's
account, if distribution to the Alternate Payee is deferred and the Plan offers self-
directed investment options, the Alternate Payee may change the investment of

2

his/her assigned benefit and invest said benefit in any of the investment options offered under the Plan by calling *Benefits Complete*® at (800) 294-3575.

D.   *Form of Benefit Payment to Alternate Payee.* The Alternate Payee shall receive the benefit assigned on his/her behalf in accordance with one of the payment options available to the Participant in the Plan as selected by the Alternate Payee, provided, however, that the Alternate Payee may not elect to receive a joint and survivor annuity and name a subsequent spouse as a joint annuitant.

E.   *Commencement of Benefit Payment to Alternate Payee.* The Alternate Payee may elect to commence distribution of the benefit assigned on his/her behalf at any time after the Plan Administrator has determined that the Order constitutes a Qualified Domestic Relations Order ("QDRO") within the meaning of Section 414(p) of the Code by filing the proper distribution form with the Plan Administrator; provided, however, such date is not later than the "required beginning date" as set forth in Section 401(a)(9) of the Internal Revenue Code and the regulations thereunder.

In no event will distribution be made to the Alternate Payee prior to the determination by the Plan Administrator that the Order constitutes a QDRO within the meaning of Section 414(p) of the Code and prior to receipt of the proper distribution form by the Plan Administrator.

F.   *Death of the Alternate Payee and/or the Participant.* The death of the Participant will not affect the payment of the benefit assigned to the Alternate Payee under this Order.

If the Alternate Payee dies before his/her interest has been distributed, the Alternate Payee's benefit, or remainder (if applicable), will be paid in a single lump sum cash payment to the beneficiary named by the Alternate Payee.

III.   The following provisions are made in accordance with Section 414(p)(3) of the Code:

A.   This Order **does not** require the Plan to provide any type or form of benefit, or any option, not otherwise provided by the Plan.

B.   This Order **does not** require the Plan to provide increased benefits (determined on the basis of actuarial value).

C.   This Order **does not** require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic order.

3

IV.    It is intended that this Order be qualified as a Qualified Domestic Relations Order within the meaning of Section 414(p) of the Code and Section 206(d) of ERISA and under the Retirement Equity Act of 1984. ~~In the event that the Plan Administrator determines that the Order is not a Qualified Domestic Relations Order, then each party shall cooperate and do all things necessary to modify the Order in order that it may be deemed a Qualified~~ed D~~omestic Relations Order by the Plan Administr~~ator.

It is further ordered that the Court retains jurisdiction to amend or modify this Order in order to establish or maintain its qualification as a Qualified Domestic Relations Order as defined above.

V.    The distribution of the benefit to an Alternate Payee who is the spouse or former spouse of the Participant will be included in the Alternate Payee's gross income in the year in which the distribution is made, to the extent the distribution does not include any after-tax contributions made to the Plan, and to the extent that the Alternate Payee does not elect to roll over the distribution to another qualified retirement plan or to an IRA. If the distribution, however, is made to an Alternate Payee and is for child support, the distribution is included in the Participant's gross income and may not be rolled over to another qualified retirement plan or to an IRA.

The Alternate Payee is responsible for his/her own federal, state and local and other taxes attributable to the distribution of the benefit assigned to the Alternate Payee under this Order. The Plan Administrator will issue to the Alternate Payee a Form 1099-R stating the gross taxable amount of the distribution.

**Entered by David H. Kopelman, First Justice, this 29TH day of March, 2005.**

Justice, Norfolk Probate & Family Court

See supplemental order dated March 29, 2005 attached hereto

**Commonwealth of Massachusetts**
**The Trial Court**
**Probate and Family Court Department**

**Norfolk Division**                              **Docket No.** 99D1578-DV1


Karen Leeds, Plaintiff

vs.

David R. Geiger, Defendant

## SUPPLEMENTAL ORDER

This matter came on for hearing before the Court, KOPELMAN, J. presiding, and after hearing, it is Ordered that:

1.    Notwithstanding paragraph II E of the Qualified Domestic Relations Orders with respect to following three plans:

   a.    Foley Hoag LLP Savings and Retirement Plan,

   b.    Foley Hoag LLP Money Purchase Pension Plan

   c.    Foley Hoag LLP Keough Plan.

   the former wife is hereby restrained from spending, transferring, assigning or encumbering any of the benefits set forth in said Qualified Domestic Relations Orders until such time as a final order is entered on the former husband's appeal.

2.    Notwithstanding paragraph one above, the former wife shall not be restrained from investing or "rolling over" said benefits.

March 29, 2005
Date                                              Justice

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES

Plan administrators are required to establish reasonable procedures for determining the qualified status of domestic relations orders and for administering distributions under such orders pursuant to Section 414(p) of the Internal Revenue Code. The following procedures have been adopted by the Plan Administrator. For purposes of the following procedures, the term "Interested Parties" shall mean all parties named in a domestic relations order and any representatives designated in writing by such persons.

### Freeze Participant's Account Upon Actual Knowledge of Pending Divorce or Divorce Proceeding

The Plan Administrator or Plan Administrator's designee (collectively referred to as "Plan Administrator") shall put a freeze status on a Participant's account immediately following notification by the Plan Administrator, Participant, Participant's spouse, or counsel that a Participant is in the process of obtaining a divorce. In addition, a Participant's account will be frozen upon the:

- receipt of a divorce decree;
- receipt of a domestic relations orders ("Order"); or
- receipt of a letter notifying the Plan Administrator of a Participant's pending divorce or potential Order.

The Participant will be able to change his/her investment elections while his/her account is in the frozen status. However, the Participant will not be able to take in-service withdrawals, loans, or distributions from his/her account during the period in which the account is frozen.

Once an Order has been determined to be qualified and an account has been established for the Alternate Payee under the Order, the freeze on the Participant's account will automatically be removed.

### Send Notice of Receipt of Domestic Relations Order

Upon receipt of an Order, the Plan Administrator shall promptly send a written Notice of Receipt of Domestic Relations Order ("Notice") to all Interested Parties at the addresses specified in the Order, if applicable, which acknowledges receipt of the Order and sets forth the requirements that the Order must satisfy in order to constitute a qualified domestic relations order ("QDRO") as defined in Section 414(p) of the Internal Revenue Code. (The specific QDRO requirements are outlined below.) If the address of the Participant or Alternate Payee is not provided in the Order, the Plan Administrator may send the Notice to the address of the Participant or Alternate Payee last known to the Plan Administrator.

### QDRO Requirements

In order to constitute a QDRO, the Order must satisfy all of the following requirements:

1.    The Order is issued by a court pursuant to its state domestic relations law (including a community property law).

2.    The Order relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of the Participant.

3.    The Order creates or recognizes the Alternate Payee's right to receive all or a part of the Participant's vested account under the Plan.

4.    The Order specifies the following information:

    (a)    The full name of the Plan or Plans to which it applies;

    (b)    The amount or percentage of the Participant's vested account to be paid to the Alternate Payee, or the manner in which the amount or percentage is to be determined;

    (c)    The number of payments or the period to which the Order applies; and

    (d)    The social security number, name, and last known mailing address of the Participant and each Alternate Payee covered in the Order.

    The Order does not require the Plan to provide any type or form of benefit, or any option that is not already provided under the Plan and does not require the Plan to provide increased benefits (determined on the basis of actuarial value). Furthermore, the Order cannot provide the Alternate Payee with the right to receive a joint and survivor annuity under which a subsequent spouse of the Alternate Payee could be named as contingent annuitant.

continued ...

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES
# (continued)

**QDRO Requirements (continued)**

6.    The Order does not require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee named under another qualified domestic relations order.

**Review of Draft Orders**

In the event the Order has not been entered by the court ("Draft Order"), the Plan Administrator shall review the Draft Order.

If the Draft Order constitutes a QDRO, the Plan Administrator shall send a Preliminary Notice of Qualification ("Preliminary Notice") to all Interested Parties stating that the Draft Order, when entered by a court, would constitute a QDRO. The Preliminary Notice will also advise the Interested Parties that a Notice of Qualification will be issued to all Interested Parties following the receipt of the court entered Order.

If the Draft Order is not qualified, the Plan Administrator shall send a Notice of Nonqualification to all Interested Parties (see below).

**Pending Determination of Status**

Benefit payments cannot be distributed to a Participant or Alternate Payee named in an Order while the Order is pending qualification.

Within a reasonable period after receipt of an Order, the Plan Administrator shall determine whether it is a QDRO. If, within eighteen (18) months from the date on which the first payment would be required to be made under the Order, a final determination is made that the Order (as modified, if applicable) is a QDRO and proper Notice is given to the Interested Parties, hen the Plan Administrator shall follow the terms of the Order and authorize distribution of the amount awarded to the Alternate Payee in accordance with the terms of the Order.

If, within the eighteen (18) month period, it is determined that the Order is not a QDRO, or if no final determination is made within such period, the Plan Administrator shall notify all Interested Parties in writing of such fact and authorize distribution of the amount involved to the person or persons who would otherwise be entitled to receive such amount in the absence of the Order, or if such person or persons are not yet in pay status under the terms of the Plan, remove the frozen account status from the Participant's account.

If it is subsequently determined that the Order (as modified, if applicable) is a QDRO, then the QDRO shall be applied prospectively only.

**Notice of Qualification of the Order**

If the Order is determined to be qualified, the Plan Administrator shall notify in writing all Interested Parties that a determination has been made that the Order constitutes a QDRO as defined in Section 414(p) of the Internal Revenue Code. This Notice of Qualification ("Qualification Notice") shall also outline the terms and conditions of the Order.

An Interested Party may dispute the determination by mailing, or delivering, a written objection to the Plan Administrator within thirty (30) calendar days of receipt of such Qualification Notice. If no Interested Party disputes this determination within the thirty (30) calendar day time frame, the Plan Administrator shall establish a separate account for the Alternate Payee and administer the Order in accordance with the terms of the Order as outlined in the Qualification Notice. If any Interested Party disputes this determination within the thirty (30) calendar day time frame, the Plan Administrator shall review the dispute and take appropriate steps to resolve such dispute.

**Notice of Nonqualification of the Order**

If the Order is determined to be not qualified, the Plan Administrator shall notify in writing all Interested Parties that a determination has been made that the Order is not a QDRO. This Notice of Nonqualification ("Nonqualification Notice") shall also state the reasons for the determination. The Plan Administrator shall await a revised order. The review process will then be repeated.

I:\FO0102\DMS\QDPROC01.DOC



**FOLEY**
**HOAG** LLP
ATTORNEYS AT LAW

Louis P. Georgantas
Boston Office
617.832.1125
lpg@foleyhoag.com

May 5, 2005

Frances M. Giordano, Esquire
White, Inker, Aronson, P.C.
One Washington Mall
Boston, MA 02108

David R. Geiger, Esquire
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

> Re:    Foley Hoag LLP Retirement Plan (the "Plan")
> Proposed Qualified Domestic Relations Order between
> David R. Geiger and Karen Leeds
> (Norfolk Probate and Family court #99D-1578-DVI)

Dear Ms. Giordano and Mr. Geiger:

The Plan Administrator has made a preliminary determination that the domestic relations order (the "Order") in the above-referenced matter, a copy of which is enclosed herein, would constitute a qualified domestic relations order as defined in Section 414(p) of the Internal Revenue Code. Outlined below is a summary of the Plan Administrator's understanding of how the Order is to be administered.

## ➤ Name and Address of Participant and Alternate Payee -

*Participant*:    David R. Geiger
22 Tanglewood Road
Wellesley, MA 02481
Social Security Number:

*Alternate Payee:*    Karen Leeds
8 Vista Road
Wellesley, MA 02481
Social Security Number:

B3017773.1

Frances M. Giordano, Esquire
David R. Geiger, Esquire
May 5, 2005
Page 2

> **Amount of Benefit Assigned to Alternate Payee** - The Alternate Payee is awarded $     from the Participant's total vested account balance. This amount shall be adjusted for income, expenses and investment gains and losses from the period an account is established in the Alternate Payee's name until the date of distribution.

  The Plan Administrator will establish a separate account under the Plan in the name of the Alternate Payee and in the amount of the benefit assigned to the Alternate Payee above. The amount assigned to the Alternate Payee will be liquidated from the Participant's vested account and deposited in cash in a money market account subject to any subsequent investment direction by the Alternate Payee.

> **Investment Options** - The Alternate Payee may change the investment of her assigned benefit and invest said benefit in any of the investment options offered under the Plan by instructing the Plan Administrator in writing.

> **Form of Benefit Payment to the Alternate Payee** - The Alternate Payee shall receive the benefit assigned on her behalf in accordance with any of the distribution options available under the Plan. The Alternate Payee may elect to roll over her assigned benefit to an Individual Retirement Account ("IRA") or to a qualified retirement plan of her current employer by providing the necessary information on a form provided by the Plan Administrator.

> **Commencement of Benefit Payment to the Alternate Payee** - The Plan Administrator is in receipt of a Supplemental Order of the Court dated March 29, 2005, which states that, notwithstanding paragraph II E of the Order, the Alternate Payee is restrained from "spending, transferring, assigning or encumbering" any of the benefits set forth in the Order until such time as a final order is entered on the appeal of the Order (although the Supplemental Order further states that the Alternate Payee is not restrained from "rolling over" said benefits). In light of the ambiguity of said language, the Plan Administrator will not release any funds pending a final order being entered or pending a clarification from the Court.

> **Death of the Alternate Payee and/or the Participant** - The death of the Participant will not affect the payment of benefit assigned to the Alternate Payee.

  If the Alternate Payee dies before her interest has been distributed, the Alternate Payee's benefit will be paid in a single-sum cash payment to the beneficiary named by the Alternate Payee, or in the absence of a valid designation of beneficiary form, the Alternate Payee's benefit will be paid in a single-sum cash payment to the Alternate Payee's estate.

B3017773.1

Frances M. Giordano, Esquire
David R. Geiger, Esquire
May 5, 2005
Page 3

If you disagree with any part of this summary, you must request that the Plan Administrator review its finding. Your request for a review must set forth all the grounds upon which it is based, and any other information you feel would be helpful.

The Plan Administrator will act upon any request for review it receives and will inform the Participant and the Alternate Payee in writing of its decision upon review.

If a request for review is not received by the Plan Administrator on or before May 26, 2005, the Plan Administrator will authorize the final qualification of the Order, establish a separate account for the Alternate Payee, and direct that the Order be administered as outlined above.

Sincerely,

Louis P. Georgantas

LPG:mpk



**FOLEY**
**HOAG** LLP
ATTORNEYS AT LAW

Louis P. Georgantas
Boston Office
617.832.1125
lpg@foleyhoag.com

September 16, 2005

David R. Geiger, Esquire
22 Tanglewood Road
Wellesley, MA 02481

Frances M. Giordano, Esquire
White, Inker, Aronson, P.C.
One Washington Mall
Boston, MA 02108

> Re:    Foley Hoag LLP Retirement Plan (the "Plan")
>        Proposed Qualified Domestic Relations Order between
>        David R. Geiger and Karen Leeds
>        (Norfolk Probate and Family Court #99D-1578-DVI)

Dear Mr. Geiger and Ms. Giordano:

After careful review and upon advice of counsel, Foley Hoag LLP as Plan
Administrator has made a final determination that the domestic relations order (the
"Order") in the above-referenced matter, as entered by the Court on March 29, 2005 and
as supplemented by separate orders dated March 29, 2005 and June 1, 2005, constitutes
a qualified domestic relations order within the meaning of Section 414(p) of the Internal
Revenue Code. In accordance with that determination the Plan Administrator will
proceed as outlined below:

➤ **Name and Address of Participant and Alternate Payee -**

*Participant:*        David R. Geiger
                      22 Tanglewood Road
                      Wellesley, MA  02481
                      Social Security Number:

*Alternate Payee:*    Karen Leeds
                      8 Vista Road
                      Wellesley, MA· 02481
                      Social Security Number:

Frances M. Giordano, Esquire
David R. Geiger, Esquire
September 16, 2005
Page 2

> **Amount of Benefit Assigned to Alternate Payee** - The Alternate Payee is
> awarded $         from the Participant's total vested account balance. This
> amount shall be adjusted for income, expenses and investment gains and
> losses from the period an account is established in the Alternate Payee's
> name until the date of distribution.
>
> The Plan Administrator shall establish a separate account under the Plan in
> the name of the Alternate Payee and in the amount of the benefit assigned to
> the Alternate Payee above. The amount assigned to the Alternate Payee will
> be liquidated from the Participant's vested account on a pro rata basis from
> the Participant's current investment elections and will be deposited in cash in
> a money market account subject to any subsequent investment direction by
> the Alternate Payee.
>
> **Investment Options** - The Alternate Payee may change the investment of her
> assigned benefit and invest said benefit in any of the investment options
> offered under the Plan by instructing the Plan Administrator in writing.
>
> **Form of Benefit Payment to the Alternate Payee** - The Alternate Payee
> may elect to roll over her assigned benefit to an Individual Retirement
> Account ("IRA") by providing the necessary information on a form provided
> by the Plan Administrator.
>
> **Death of the Alternate Payee and/or the Participant** - The death of the
> Participant will not affect the payment of benefit assigned to the Alternate
> Payee.
>
> If the Alternate Payee dies before her interest has been distributed, the
> Alternate Payee's benefit will be paid in a single-sum cash payment to the
> beneficiary named by the Alternate Payee, or in the absence of a valid
> designation of beneficiary form, the Alternate Payee's benefit will be paid in
> a single-sum cash payment to the Alternate Payee's estate.

Sincerely,

Louis P. Georgantas

LPG:t

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
David R. Geiger

## DEFENDANTS
FOLEY HOAG LLP RETIREMENT PLAN and FOLEY HOAG LLP, as administrator of Foley Hoag LLP Retirement Plan

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Norfolk
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Suffolk
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
David R. Geiger, pro se
22 Tanglewood Road
Wellesley, MA 02481
781-431-1411

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. GOVERNMENT Plaintiff
- ☑ 3 FEDERAL QUESTION (US Government Not a Party)
- ☐ 2 U.S. GOVERNMENT Defendant
- ☐ 4 DIVERSITY (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (place an "x" in One box for Plaintiff and One box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One BOX Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commercial/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | Liability | | ☐ 650 Airline Regs | ☐ 840 Trademark | |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety | | ☐ 480 Consumer Credit |
| ☐ 160 Stockholder Suits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | Health | | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 195 Contract Product Liability | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards act | ☐ 861 HIA (1395 ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relation | ☐ 862 Black Lung (923) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 D/WC,DIWW (405(g)) | |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | | ☐ 892 Economic Stabilization Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| | | ☐ 555 Prison Condition | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. § 1132

Brief description of cause: ERISA violations by pension plan and administrator thereof

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) (See Instructions): None
IF ANY

JUDGE _____ DOCKET NUMBER _____

DATE 9/19/05

SIGNATURE OF ATTORNEY OF RECORD _David R. Geiger, pro se_

FOR OFFICE USE ONLY

RECEIPT# _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.   TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) <u>David R. Geiger v. Foley Hoag LLP Retirement Plan</u>

2.   CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE
     CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

     ☐   I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

     ☒   II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950            for patent, trademark or copyright cases

     ☐   III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

     ☐   IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

     ☐   V.     150, 152, 153.

3.   TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).

     <u>None</u>

4.   HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
     COURT?                                                                          YES ☐        NO ☒

5.   DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING
     THE PUBLIC INTEREST?   (SEE 28 USC 2403)                                        YES ☐        NO ☒
     IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?      YES ☐        NO ☐

6.   IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO
     TITLE 28 USC 2284?                                                              YES ☐        NO ☒

7.   DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS
     (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C))                                   YES ☐        NO ☒
     OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)?
     (SEE LOCAL RULE 40.1(D))                                                        YES ☐        NO ☒

8.   DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF
     THE DISTRICT?                                                                   YES ☐        NO ☒
     (a)     IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? _____

9.   IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? _____<u>Eastern</u>_____

10.  IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY
     GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE

     CENTRAL SECTION;      YES ☐      NO ☐        OR WESTERN SECTION;      YES ☐        NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME <u>David R. Geiger, pro se</u>
ADDRESS <u>22 Tanglewood Rd., Wellesley, MA 02481</u>
TELEPHONE NO <u>781.431.1411</u>