UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE
2005 SEP 28 P 12: 05

U.S. DISTRICT COURT
DISTRICT OF MASS.

DAVID R. GEIGER,

Plaintiff,

v.

FOLEY HOAG LLP RETIREMENT
PLAN, et al.,

Defendants.

NO. 05-CA-11893-RWZ

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### MOTION FOR PRELIMINARY INJUNCTION

Plaintiff David R. Geiger ("Mr. Geiger") hereby submits the following memorandum i support of his Plaintiff's Motion for Preliminary Injunction (the "Motion"):

#### Facts

The facts relevant to the Motion are set forth in greater detail in the Amended Compla and the Affidavit of David R. Geiger, both of which are hereby incorporated as if fully set for herein.

Briefly, defendants Foley Hoag LLP Retirement Plan, Foley Hoag LLP Savings and Retirement Plan and Foley Hoag LLP Money Purchase Pension Plan (individually or collectiv the "Plan" or "Plans") are pension plans subject to the federal Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), and defendant Foley Hoag LLP ("Foley"), as administrator of said plans, is the administrator of each Plan. Mr. Geiger is a participant in ea Plan and Foley owes a fiduciary duty to act solely in his interest and to pay Plan benefits to hi

ERISA prohibits the assignment of plan benefits to third parties, even pursuant to cour

orders in divorce actions, unless the order is a qualified domestic relations order ("QDRO") as defined by the Act. Before an order may be found to be a QDRO, three conditions must be m First, the plan must have promulgated reasonable procedures to determine whether an order is QDRO. Second, promptly on a plan's receipt of an order the plan administrator must send no thereof to a participant affected by the order and also notify the participant of the plan's QDR procedures; the plan must then afford the participant an opportunity to be heard on the questio of whether the order is indeed a QDRO. Third, the order must meet the Act's numerous definitional requirements for a QDRO.

In the present case, none of these conditions has been met. For one thing, none of the Plans promulgated any QDRO procedures, much less any reasonable ones. Moreover, any purported Plan procedures are confusing and unintelligible, purport without any basis in ERIS to address orders that have not even been issued by any divorce court and violate various expr ERISA requirements.

Further, the Plans did not promptly give notice to Mr. Geiger either of their receipt of divorce court orders at issue or of their QDRO procedures, and purported to find the orders to QDROs without affording him an opportunity to be heard. Indeed, two of the Plans actually assigned substantial portions of Mr. Geiger's benefits to the divorce court plaintiff without su notice or opportunity to be heard.

In any event, none of the orders is a QDRO, for numerous reasons. Among other thin and without limitation, under the statutory language and Congressionally stated purpose to be QDRO a divorce court order must be final, while the orders at issue here are on appeal. Unde the statutory language and legislative history a divorce court property division order must be based on community property rights, which none of the orders are. Both the Act and relevant

authority requires an order to "clearly specif[y]" the plan name, which one of the orders does 1 do. The Act and relevant authority also requires an order to "clearly specif[y]" the benefits to assigned, which none of the orders does (they require the transfer of a dollar amount, while the plan benefits are not held in dollars but as a variety of shares of a variety of mutual funds, and contain various undefined and ambiguous terms). The Act and relevant authority also require an order to "clearly specif[y]" the time period when plan benefits are to be assigned, which nc of the orders does.

Besides these violations, both the anti-assignment provisions of ERISA referred to abc and specific ERISA provisions relating to disputes concerning whether an order is a QDRO prohibit assignment of plan benefits pursuant to a divorce court order until the issue of whethe the order is a QDRO is finally determined, including by any federal court action such as this c The QDRO dispute provision requires that the plan not transfer the benefits but merely separately account for any benefits that would be assignable *if* the order were finally determin to be a QDRO, and that the benefits be actually assigned only if the order is finally determine be a QDRO within eighteen months and otherwise be remitted to the participant.

Despite the foregoing requirements, defendants have in the case of two of the Plans already assigned to the divorce court plaintiff substantial portions of Mr. Geiger's benefits an are imminently about to un-"freeze" those benefits to the divorce plaintiff's control, and in the case of the third Plan are imminently about to assign such benefits. Such action is likely imminent because, among other things, a hearing is set for October 11, 2005 in the divorce action in which the divorce plaintiff will seek an adjudication that Foley is in contempt of the state court orders.

If defendants take such actions, Mr. Geiger faces irreparable harm in that his Plan

3

benefits will no longer be subject to his investment and control and he will be subject to investment losses and dissipation by the divorce plaintiff that cannot be restored even if the orders are finally determined not to be QDROs or are reversed on appeal in the divorce action Moreover, once removed from the Plans whatever former Plan benefits may remain may no longer be able to be returned to the Plans even if the orders are finally determined not to be QDROs or are reversed on appeal, and hence Mr. Geiger will lose these benefits' invaluable ability to appreciate tax-free until retirement; this risk is particularly acute in the case of one o the plans which is a terminated plan to which new funds may not be contributed.

Mr. Geiger understands that defendants do not disagree with his interpretation of ERISA's QDRO dispute resolution procedures as set forth here and in the Amended Complai or disagree with or object to the relief requested in the Motion.

**Argument**

For the reasons set forth above, a preliminary injunction restraining defendants from assigning Mr. Geiger's plan benefits pending final resolution of this action would be amply justified by his significant likelihood of success herein, the irreparable harm he would suffer i relief were not granted and the lack of harm that would accrue to defendants if relief were granted.

Regardless, however, a preliminary injunction is expressly <u>required</u> by ERISA's anti-assignment and QDRO dispute resolution provisions described above.[1]

Respectfully submitted,

_/s/ David R. Geiger_
David R. Geiger, <u>pro se</u>
22 Tanglewood Road
Wellesley, MA  02481
(781) 431-1411

Dated:  September 28, 2005

Certificate of Service

I, David R. Geiger, <u>pro se</u>, hereby certify that on this 28th day of September, 2005, I ser[ved] the foregoing Plaintiff's Memorandum in Support of Motion for Preliminary Injunction upon parties by causing a copy of same to be delivered in hand to Michael P. Boudett, Esq., Foley Hoag LLP, 155 Seaport Boulevard, Boston, MA 02210, attorney for defendants.

_/s/ David R. Geiger_
David R. Geiger

---

[1] Mr. Geiger apologizes for the absence of detailed factual and legal citations herein, although many of those details are contained in the materials incorporated by reference herein. The lac[k] of further detail is necessitated by the time exigencies of this motion, Mr. Geiger's <u>pro se</u> stat[us] (due to the judgment in the divorce action his ordinary expenses, excluding legal fees, exceed [his] income and he cannot afford counsel herein) and his status as a single working parent who is struggling to perform his normal job and to raise two children approximately half the time, leaving insufficient time to adequately represent himself.

5