**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
CLERKS OFFICE

2005 SEP 28 ⊃ 12: 05

U.S. DISTRICT COURT
DISTRICT OF MASS.

............................................................................

**DAVID R. GEIGER,**

               Plaintiff,

     v.

**FOLEY HOAG LLP RETIREMENT**
**PLAN, FOLEY HOAG LLP SAVINGS**
**AND RETIREMENT PLAN, FOLEY**
**HOAG LLP MONEY PURCHASE**
**PENSION PLAN** and **FOLEY**
**HOAG LLP**, as administrator of
each of the foregoing plans,

               Defendants.

............................................................................

**NO. 05-CA-11893-RWZ**

## AMENDED COMPLAINT

Plaintiff David R. Geiger ("Mr. Geiger") hereby asserts the following as his Complaint

against defendants Foley Hoag LLP Retirement Plan (the "Retirement Plan"), Foley Hoag LLP

Savings and Retirement Plan (the "Savings Plan"), Foley Hoag LLP Money Purchase Pension

Plan (the "Money Plan") (all of said plans sometimes being referred to individually as the "Plan"

and collectively as the "Plans") and Foley Hoag LLP, as administrator of each of the foregoing

plans ("Foley"):

### Parties and Jurisdiction

1. Mr. Geiger is an individual with a principal place of residence in Wellesley,

Massachusetts.

2. Upon information and belief, each Plan is a pension plan within the meaning of and

subject to the federal Employee Retirement Income Security Act of 1974, as from time to time

amended ("ERISA" or the "Act"), with a principal place of business at 155 Seaport Boulevard, Boston, Massachusetts.

3. Upon information and belief, Foley is a registered professional limited liability partnership organized under the laws of the Commonwealth of Massachusetts with a principal place of business at 155 Seaport Boulevard, Boston, Massachusetts.

4. This court has jurisdiction over the subject matter of this action pursuant to, among other provisions, 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), inasmuch as the action arises under the Constitution, laws or treaties of the United States and is by a pension plan participant under Subchapter I of Chapter 18 of Title 29 of the United States Code.

5. Venue is proper in this district pursuant to, among other provisions, 28 U.S.C. § 139 and 29 U.S.C. § 1132(e)(2), in that the Plans and Foley reside in this district, a substantial part the events or omissions giving rise to the claims occurred therein, the Plans are administered therein and the Plans' and Foley's breaches of duty took place therein.

### Facts

### The Plans and the Other Parties' Relationships Thereto

6. Upon information and belief, the Retirement Plan is a terminated plan within the meaning of ERISA. Upon information and belief, as a result of this status funds that are alread in the Plan in the name of or for the benefit of a participant may remain in the Plan and be reinvested in investment options permitted by the Plan, but new such funds may not be added the Plan nor may such funds that were previously in but withdrawn from the Plan be returned thereto.

7. Mr. Geiger is a participant in each of the Plans within the meaning of ERISA, including but not limited to under 29 U.S.C. § 1002(7).

- 2 -

8. Upon information and belief, Foley is the administrator of each of the Plans within tl meaning of ERISA, including but not limited to under 29 U.S.C. § 1002(16)(A).

9. Upon information and belief, as administrator of each Plan Foley is a fiduciary with respect to Mr. Geiger under the Act, including but not limited to under 29 U.S.C. § 1002(21)(A and is required by 29 U.S.C. § 1104(a)(1) to, among other things, "discharge [its] duties with respect to [the] [P]lan solely in the interest of" Mr. Geiger and "for the exclusive purpose of . . providing benefits" to him.

### The Underlying Divorce Action and Orders

10. For some period of time prior to the date hereof, Mr. Geiger has been a party to an action for divorce pending in the Probate and Family Court of the Trial Court of the Commonwealth of Massachusetts (the "Action"). By order entered on or after August 8, 2000 the court in the Action found that the parties had a strong interest in their privacy, that there wa no identifiable community interest in the case and that there was a risk to the parties and other: of harm from the disclosure of sensitive financial and other highly personal and private information that would be revealed in the court file. Accordingly, the court found good cause issuance of an order of impoundment and ordered the entire court file except the docket sheet impounded until the passage of twenty-five years from the entry of any judgment of divorce. Such judgment was entered on June 7, 2004.

11. On or about March 29, 2005 the court in the Action signed, and on or about May 1 2005 the court entered, orders purportedly relating to each Plan and a supplemental order purportedly relating to all the Plans (each order together with the supplemental order being hereinafter referred to individually as the "Order," and said orders collectively as the "Orders' purporting to assign a substantial portion of Mr. Geiger's interest in each of the Plans to the

- 3 -

plaintiff in the Action. True and accurate copies of the Orders relating to the Retirement,

Savings and Money Plans, respectively—with the exception of the redaction, in order to protec

the privacy interests of the parties to the Action, of fixed dollar amounts specified in the Orders

and of the parties' social security numbers—are attached hereto and incorporated herein as

Exhibits A, B and C, respectively.

## ERISA's Anti-Assignment Requirement

12.  Under ERISA, including but not limited to 29 U.S.C. § 1056(d)(1), every pension

plan "shall provide that benefits provided under the plan may not be assigned or alienated." B

virtue of 29 U.S.C. § 1056(d)(3)(A), this prohibition against the assignment of benefits "shall

apply to the creation, assignment, or recognition of a right to any benefit payable with respect

a participant pursuant to a domestic relations order, except . . . if the order is determined to be

qualified domestic relations order" ("QDRO").

## Violations of ERISA Requirements for Plan QDRO Procedures

13.  ERISA requires, including but not limited to by virtue of 29 U.S.C. §

1056(d)(3)(G)(ii), that that each pension plan governed by the Act "shall establish reasonable

procedures to determine the qualified status of domestic relations orders and to administer

distributions under such qualified orders."

14.  Upon information and belief, however, notwithstanding that requirement, at no tir

prior to the date hereof did any of the Plans or Foley establish with respect to the Plans any

procedures to determine the qualified status of domestic relations orders or to administer

distributions under such qualified orders.

15.  On or about June 13, 2005, Foley represented, upon information and belief falsel:

that a document entitled "Qualified Domestic Relations Order Procedures," a true and accura

- 4 -

copy of which is attached hereto and incorporated herein as Exhibit D, constituted such procedures that had been established by the Retirement Plan. On or about July 8, 2005, Foley represented (by its purported agent and with Foley's knowledge), upon information and belief falsely, that two other documents also entitled "Qualified Domestic Relations Order Procedure: true and accurate copies of which are attached hereto and incorporated herein as Exhibits E and F, constituted such procedures that had been established by the Savings and Money Plans, respectively. (All of the foregoing procedures documents are sometimes referred to herein individually or collectively as the "Procedures.")

16. The Procedures, however, are unsigned, undated, nowhere identify themselves as procedures promulgated by the Plans or Foley (upon information and belief they are also not located anywhere on Foley's word processing system) and nowhere identify themselves as procedures relating the Plans. Foley also failed to respond to Mr. Geiger's request by letter of June 13, 2005 to explain how the Procedures purportedly relating to the Retirement Plan were purportedly established and pursuant to what provisions of the Plan, and to his request by lette of June 20, 2005 to explain how the Procedures purportedly relating to the Savings and Mone; Plans were purportedly established and pursuant to what provisions of the Plans.

17. To the extent the Procedures are indeed procedures established by the Plans or by Foley with respect to the Plans to determine the qualified status of domestic relations orders a to administer distributions under such qualified orders, the Procedures are not reasonable or otherwise lawful under the Act. Among other things, and, without limitation:

a. The Procedures are generally confusing, unintelligible and internally contradictory.

b. The Procedures contain numerous provisions by which the Plan would purport to make a hypothetical determination whether a draft of a domestic relations order, which has no

- 5 -

been entered by any domestic relations court, would <u>if</u> entered by such a court constitute a QDRO, which is completely unauthorized by ERISA.

c. The Procedures fail to require that if the Plan receives a domestic relations order relating to a participant the Plan promptly give the participant notice of the Plan's procedures fr determining whether the order constitutes a QDRO, contrary to the explicit requirement of 29 U.S.C. § 1056(d)(3)(G)(ii)(II) that a plan's procedures for determining the qualified status of a domestic relations order "<u>shall</u> provide for the notification of each person specified in a domes relations order as entitled to payment of benefits under the plan . . . of such procedures prompt upon receipt by the plan of the domestic relations order," and contrary to the requirement of 29 U.S.C. § 1056(d)(3)(G)(i)(I) that "[i]n the case of any domestic relations order received by a p . . . the plan administrator <u>shall</u> promptly notify the participant and any alternate payee of . . . the plan's procedures for determining the qualified status of domestic relations orders."

d. The Procedures provide for a determination by the Plan whether a domestic relation order received by the Plan relating to a participant constitutes a QDRO <u>before giving the participant an opportunity to be heard</u> on the issue.

e. The Procedures fail to require that if the Plan determines that a domestic relations order received by the Plan constitutes a QDRO, the Plan inform the participant affected by the order of the Plan's <u>reasons for such determination</u>.

### **Violations of ERISA's Procedural Requirements Concerning the Order**

18. Upon information and belief, at some time on or after March 29, 2005 but on or before May 5, 2005, the Plans and Foley (or Foley's purported agent, with Foley's knowledge received a copy of the Orders. Foley thereupon failed to notify Mr. Geiger promptly of its receipt of the Orders, or of the Plans' purported procedures for determining the qualified statu

- 6 -

of domestic relations orders and administering distributions under such qualified orders, including but not limited to the Procedures, contrary to the explicit requirement of 29 U.S.C. § 1056(d)(3)(G)(i)(I) that "[i]n the case of any domestic relations order received by a plan . . . the plan administrator shall promptly notify the participant and any alternate payee of the receipt of such order and the plan's procedures for determining the qualified status of domestic relations orders."

19. Contrary to the Act, including but not limited to the intent of the just-cited provisio Foley then purported to determine, by letter of May 5, 2005, that the Order relating to the Retirement Plan constituted a QDRO without giving Mr. Geiger an opportunity to be heard on the issue. A true and accurate copy of said letter—with the exception of the redaction, to prote the parties' privacy interests, of the specified dollar amount and the parties' social security numbers—is attached hereto and incorporated herein as Exhibit G.

20. Upon information and belief, contrary to the Act, including but not limited to the intent of the just-cited provision, Foley (or its purported agent, with Foley's knowledge) purported to determine, by letter of unknown date, perhaps of April 1, 2005 and in any event o or before June 13, 2005, which letter was never even delivered to Mr. Geiger, that the Orders relating to the Savings and Money Plans constituted QDROs without giving Mr. Geiger an opportunity to be heard on the issue.

21. Moreover, as indicated by a letter of June 13, 2005, which letter was also never ev delivered to Mr. Geiger but the existence of which he discovered inadvertently seven days thereafter, Foley (or its purported agent, with Foley's knowledge) had by that date, without delivering notice to Mr. Geiger, already purported to assign substantial portions of Mr. Geiger benefits under the Savings and Money Plans to the plaintiff in the Action. A true and accurate

- 7 -

copy of said letter is attached hereto and incorporated herein as Exhibit H. Foley's action was contrary to the Act, including but not limited to its anti-assignment provisions discussed above and its dispute resolution procedures discussed below.

22. Contrary to the Act, including but not limited to the intent of the just-cited provisio Foley again purported to determine, by two letters of July 8, 2005 (by Foley's purported agent, with Foley's knowledge), that the Orders relating to the Savings and Money Plans constituted QDROs without giving Mr. Geiger an opportunity to be heard on the issue. True and accurate copies of said letters—with the exception of the redaction, to protect the parties' privacy interests, of the specified dollar amounts and the parties' social security numbers—are attached hereto and incorporated herein as Exhibits I and J, respectively.

23. Foley did not give Mr. Geiger notice of its receipt of the Order purportedly relating to the Retirement Plan until his receipt of a letter from Foley dated June 3, 2005, over four wee after Foley had already purported to determine, without giving Mr. Geiger an opportunity to be heard, that the Order was a QDRO.

24. Foley did not give Mr. Geiger notice of its receipt of the Orders relating to the Savings and Money Plans until his receipt of the letters of July 8, 2005, on information and belief over three months after Foley (or its purported agent, with Foley's knowledge) had alre: purported to determine, without giving Mr. Geiger an opportunity to be heard, that the Orders were QDROs and, upon information and belief, over two months after assigning significant portions of Mr. Geiger's interests in the Plans to the plaintiff in the Action.

25. Foley did not give Mr. Geiger notice that the Procedures purportedly relating to th Retirement Plan were Foley's purported procedures for determining the qualified status of domestic relations orders and administering distributions under such qualified orders until on

- 8 -

after June 13, 2005, <u>over six weeks after</u> Foley had already purported to determine, without giving Mr. Geiger an opportunity to be heard, that the Order purportedly relating to the Plan wa a QDRO.

26. Foley did not give Mr. Geiger notice that the Procedures purportedly relating to the Savings and Money Plans were Foley's purported procedures for determining the qualified stati of domestic relations orders and administering distributions under such qualified orders until or or after July 8, 2005, upon information and belief <u>over three months after</u> Foley (or its purporte agent, with Foley's knowledge) had already purported to determine, without giving Mr. Geiger an opportunity to be heard, that the Orders were QDROs and, upon information and belief, ove two months after assigning significant portions of Mr. Geiger's interests in the Plans to the plaintiff in the Action.

<center><b>Additional ERISA Violations in Determining the Orders to be QDROs</b></center>

27. In addition to the Plans' and Foley's failures to establish proper QDRO procedures general, and Foley's failure to follow procedures lawful under ERISA in determining whether the Orders constitute QDROs, Foley violated ERISA in purporting, by letter sent on or about September 16, 2005 relating to the Retirement Plan, and on or about September 23, 2005 (by Foley's purported agent, with Foley's knowledge) relating to the Savings and Money Plans, to make a further and final determination that the Orders constituted QDROs. True and accurate copy of said letters—with the exception of the redaction, to protect the parties' privacy interes of the specified dollar amounts and the parties' social security numbers—are attached hereto a incorporated herein as Exhibits K and L, respectively.

28. Among other things, to the extent there was any ambiguity or discretion available Foley under ERISA in determining whether the Orders were QDROs, Foley was required as a

<center>- 9 -</center>

Plan fiduciary to exercise that discretion in Mr. Geiger's favor and to determine that the Orders were not QDROs, thus acting solely in <u>his</u> interest and exclusively for the purpose of providing Plan benefits to <u>him</u>. For the reasons set forth below the Orders were as a matter of law not QDROs, but at the very least there was ambiguity and discretion available, which Foley, in violation of the Act, failed to exercise, to find that they were not.

29. Foley further violated ERISA in purporting to determine that the Orders constituted QDROs for numerous additional reasons, including but not limited to the following:

a. None of the Orders even constituted a "domestic relations order" under 29 U.S.C. § 1056(d)(3)(B)(ii), a prerequisite to being a QDRO, because an order may be found to constitut "judgment, decree, or order" under that provision only when it is <u>final</u>, rather than merely provisional, while the Orders, and the judgment in the Action on which they are based, are presently on appeal and hence not final.

b. The Orders also do not constitute "domestic relations order[s]" because the Orders not "relate[] to the provision . . . of marital property rights to a . . . former spouse" within the meaning of under 29 U.S.C. § 1056(d)(3)(B)(ii)(I), as Massachusetts law does not provide eith spouse any property <u>rights</u> but rather makes the retrospective assignment of property interests the court completely discretionary or arbitrary.

c. The Orders also do not constitute "domestic relations order[s]" because the Orders were not in fact issued "pursuant to a State domestic relations law" as required by 29 U.S.C. § 1056(d)(3)(B)(ii)(II) but rather <u>contrary</u> to same, which is why the Orders, and the judgment which they are based, are on appeal.

d. Even if it is a "domestic relations order," the Order purportedly relating to the Retirement Plan does not constitute a QDRO because it fails to "clearly specif[y] . . . each pla

- 10 -

to which such order applies" as required by 29 U.S.C. § 1056(d)(3)(C)(iv). Rather than specif

that it relates to the <u>Retirement Plan</u>, the Order states that it pertains to the "Foley Hoag LLP

Keogh Plan."

     e. The Orders also do not constitute QDROs because they each fail to "clearly specif[

. . the amount . . . of the participant's benefits to be paid . . . to each such alternate payee, or th

manner in which such amount . . . is to be determined" as required by 29 U.S.C. §

1056(d)(3)(C)(ii). The Orders provide that plaintiff in the Action is "awarded . . . [the specifi

dollar amount] adjusted for any investment gains and losses . . . for the period between the da

an account is established for the benefit of [plaintiff] and the date of distribution," and that the

"Administrator is hereby instructed to establish a separate account under the Plan in the name

[plaintiff] and in the amount of the benefit assigned." Yet, among other things, Mr. Geiger's

interests in the Plans are <u>not</u> held in cash but rather in differing numbers of shares of different

mutual funds, and the terms "investment gains and losses," "date an account is established for

the benefit of [plaintiff]" and "date of distribution" are completely undefined and at best

ambiguous.

     f. The Orders also do not constitute QDROs because they fail to "clearly specif[y] . .

the . . . period to which such order applies" as required by 29 U.S.C. § 1056(d)(3)(C)(iii). Th

Orders each contain no provision whatsoever as to when the benefit assignment is to be made

**The Threatened Violation of ERISA's QDRO Dispute Procedures and Harm to Mr. Gei**

     30. ERISA contains specific procedures which prohibit the assignment of a participar

pension plan benefits pending final resolution of any dispute concerning whether an order

purportedly affecting those benefits is a QDRO. In addition to the anti-assignment provision:

discussed above, among other provisions 29 U.S.C. § 1056(d)(3)(H) requires that "[d]uring a

period in which the issue of whether a domestic relations order is a qualified domestic relation

order is being determined (by the plan administrator, by a court of competent jurisdiction, or

otherwise), the plan administrator shall separately account for the amounts . . . which would h

been payable to the alternate payee during such period if the order had been determined to be ;

[QDRO]" and shall ultimately pay the separately accounted-for amount to the alternate payee

the order is determined to be a QDRO within eighteen months but otherwise remit the benefit:

the participant.

31.  Upon information and belief, contrary to the foregoing provisions, the Plans and/o

Foley are imminently about to assign, or in the case of the Savings and Money Plans have

already assigned and are imminently about to un-"freeze," a substantial portion of Mr. Geiger'

vested benefits in the Plans to the control of the plaintiff in the Action, causing grievous finan

loss to Mr. Geiger.

32.  Upon information and belief, any such transfer or un-"freezing" will also cause

irreparable harm to Mr. Geiger in that, among other things, he will be deprived of his right anc

ability to control the investment of the benefits, the benefits will be subject to diminution or

complete dissipation due to investment by the plaintiff in the Action and the benefits may be

withdrawn by said plaintiff from the Plans and may not be subsequently restorable thereto eve

in the event the Order is determined in this action not to constitute a QDRO or is reversed on

appeal in the Action itself, including but not limited to because, in the case of the Retirement

Plan, of that Plan's terminated status.

## Count I

### (29 U.S.C. § 1132)

33. By virtue of their actions and omissions as set forth above, Foley has violated and about to violate further its fiduciary duties under ERISA, and the Plans and Foley have violate and are about to violate further various provisions of Subchapter I of Chapter 18 of Title 29 of the United States Code. Accordingly, Foley is liable to Mr. Geiger under 29 U.S.C. § 1132(a)(2), and the Plans and Foley are liable to him under 29 U.S.C. § 1132(a)(3), for injunctive, other appropriate equitable and other appropriate relief.

WHEREFORE, Mr. Geiger respectfully prays that this Court:

(1) enter judgment in favor of Mr. Geiger and against the Plans and Foley on all counts hereof;

(2) declare that the Order are not QDROs;

(3) issue a preliminary injunction, pending final resolution of this action, including any available appeal or other proceeding for review, ordering the Plans and Foley, their respective officers, agents, servants, employees and attorneys, and all persons in privity or in active conc or participation with any of them, to refrain from assigning, transferring, restricting, encumbering, or otherwise impairing in any way any interest or benefit of Mr. Geiger under th Plans and to fully restore any such interest or benefits already assigned, including all investme gains that said interest or benefits would have earned in the ordinary course based on Mr. Geiger's investment elections;

(4) issue a permanent injunction ordering the Plans and Foley, their respective officers, agents, servants, employees and attorneys, and all persons in privity or in active concert or participation with any of them, to refrain from assigning, transferring, restricting, encumbering

- 13 -

or otherwise impairing in any way any interest or benefit of Mr. Geiger under the Plans and to

fully restore to him any such interest or benefit already assigned, including all investment gain

that would have accrued in the ordinary course based on Mr. Geiger's investment elections;

(5) award Mr. Geiger his reasonable costs and attorneys' fees herein; and

(6) award Mr. Geiger such other and further relief as is proper and just.

Respectfully submitted,

David R. Geiger, pro se
22 Tanglewood Road
Wellesley, MA 02481
(781) 431-1411

Dated: September 28, 2005

Certificate of Service

I, David R. Geiger, pro se, hereby certify that on this 28th day of September, 2005, I serv
the foregoing Amended Complaint upon all parties by causing a copy of same to be delivered
hand to Michael P. Boudett, Esq., Foley Hoag LLP, 155 Seaport Boulevard, Boston, MA 0221
attorney for defendants.

David R. Geiger

COMMONWEALTH OF MASSACHUSETTS
PROBATE & FAMILY COURT

**IMPOUNDED CASE**

NORFOLK, SS:

NO. 99D-1578-DV1

```
KAREN LEEDS,              )
     Plaintiff,           )
                          )
                          )    QUALIFIED DOMESTIC RELATIONS ORDER
     vs.                  )
                          )
DAVID R. GEIGER,          )
     Defendant            )
                          )
```

## FOLEY HOAG LLP KEOGH PLAN
### (RETIREMENT TRUST FOR THE BENEFIT OF DAVID R. GEIGER)

This Order is entered pursuant to M.G.L. c. 208, §34 that relates to the provision of child support, alimony payments and/or marital property rights, as defined therein between spouses and former spouses. This Order assigns to the Alternate Payee the right to receive a portion of the Participant's vested account payable under the plan specified below, which is qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and the Employee Retirement Income Security Act of 1974 ("ERISA"). Furthermore, this Order is intended to constitute a Qualified Domestic Relations Order ("QDRO") and is made in accordance with Sections 401(a)(13) and 414(p) of the Code and Section 206(d) of ERISA.

**IT IS ORDERED AND ADJUDGED** as follows:

I.     For purpose of this Order, the following terms are defined as follows:

A.     "Plan" is Foley Hoag LLP Keogh Plan, as may be amended from time to time, and any successor thereto, the Plan to which this Order applies.

B.     "Participant" is:

    Name:                       David R. Geiger
    Social Security Number:
    Address:               22 Tanglewood Road
                            Wellesley, MA 02481

C.   "Alternate Payee" is:

<div style="margin-left:2em">

Name:                              Karen Leeds
Social Security Number:
Address:                           8 Vista Road
                                   Wellesley, MA 02481

</div>

The Alternate Payee is the former spouse of the Participant.

D.   "Plan Administrator" is Foley Hoag LLP and may be contacted at:

155 Seaport Blvd.
Boston, MA 02210.

II.   The following provisions govern the assignment, management and distribution of the benefit awarded to the Alternate Payee under this Order.

A.   *Amount of Benefit Assigned to the Alternate Payee.*  The Alternate Payee is awarded from the Participant's vested account under the Plan:

$_____$ adjusted for any investment gains and losses in accordance with the provisions of the Plan for the period between the date an account is established for the benefit of the Alternate Payee and the date of distribution.

The amount awarded and assigned to the Alternate Payee shall not include any portion of a note payable by the Participant pursuant to an outstanding loan under the Plan and any such note shall remain the sole responsibility of the Participant.

B.   *Separate Account Established for the Alternate Payee.*  The Plan Administrator is hereby instructed to establish a separate account under the Plan in the name of the Alternate Payee and in the amount of the benefit assigned to the Alternate Payee pursuant to II.A. above.  The amount assigned to the Alternate Payee will be taken from the Participant's vested account~~, on a pro-rata basis from the Participant's investment elections in effect on the date the Alternate Payee's account is established ("set investment elections")~~.  The Alternate Payee's account will continue to be invested in the set investment elections, subject to subsequent change by the Alternate Payee.

C.   *Investment Options.*  Following the establishment of the Alternate Payee's account, if distribution to the Alternate Payee is deferred and the Plan offers self-directed investment options, the Alternate Payee may change the investment of

<p style="text-align:center">2</p>

his/her assigned benefit and invest said benefit in any of the investment options offered under the Plan by calling *Benefits Complete®* at (800) 294-3575.

D.   *Form of Benefit Payment to Alternate Payee.* The Alternate Payee shall receive the benefit assigned on his/her behalf in accordance with one of the payment options available to the Participant in the Plan as selected by the Alternate Payee, provided, however, that the Alternate Payee may not elect to receive a joint and survivor annuity and name a subsequent spouse as a joint annuitant.

E.   *Commencement of Benefit Payment to Alternate Payee.* The Alternate Payee may elect to commence distribution of the benefit assigned on his/her behalf at any time after the Plan Administrator has determined that the Order constitutes a Qualified Domestic Relations Order ("QDRO") within the meaning of Section 414(p) of the Code by filing the proper distribution form with the Plan Administrator; provided, however, such date is not later than the "required beginning date" as set forth in Section 401(a)(9) of the Internal Revenue Code an the regulations thereunder.

In no event will distribution be made to the Alternate Payee prior to the determination by the Plan Administrator that the Order constitutes a QDRO within the meaning of Section 414(p) of the Code and prior to receipt of the proper distribution form by the Plan Administrator.

F.   *Death of the Alternate Payee and/or the Participant.* The death of the Participan will not affect the payment of the benefit assigned to the Alternate Payee under this Order.

If the Alternate Payee dies before his/her interest has been distributed, the Alternate Payee's benefit, or remainder (if applicable), will be paid in a single lump sum cash payment to the beneficiary named by the Alternate Payee.

III.   The following provisions are made in accordance with Section 414(p)(3) of the Code:

A.   This Order **does not** require the Plan to provide any type or form of benefit, or an option, not otherwise provided by the Plan.

B.   This Order **does not** require the Plan to provide increased benefits (determined on the basis of actuarial value).

C.   This Order **does not** require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic order.

3

IV.    It is intended that this Order be qualified as a Qualified Domestic Relations Order within the meaning of Section 414(p) of the Code and Section 206(d) of ERISA and under the Retirement Equity Act of 1984. ~~In the event the Plan Administrator determines that the Order is not a Qualified Domestic Relations Order, then each party shall cooperate and do all things necessary to modify the Order in order that it may be deemed a Qualified~~ Domestic Relations Order by the Plan Administrator.

It is further ordered that the Court retains jurisdiction to amend or modify this Order in order to establish or maintain its qualification as a Qualified Domestic Relations Order a defined above.

V.    The distribution of the benefit to an Alternate Payee who is the spouse or former spouse of the Participant will be included in the Alternate Payee's gross income in the year in which the distribution is made, to the extent the distribution does not include any after-ta contributions made to the Plan, and to the extent that the Alternate Payee does not elect to roll over the distribution to another qualified retirement plan or to an IRA. If the distribution, however, is made to an Alternate Payee and is for child support, the distribution is included in the Participant's gross income and may not be rolled over to another qualified retirement plan or to an IRA.

The Alternate Payee is responsible for his/her own federal, state and local and other taxes attributable to the distribution of the benefit assigned to the Alternate Payee under this Order. The Plan Administrator will issue to the Alternate Payee a Form 1099-R stating the gross taxable amount of the distribution.

**Entered by David H. Kopelman, First Justice, this** 29TH **day of March, 2005.**

Justice, Norfolk Probate & Family Court

See supplemental order dated March 29, 2005 attached hereto

4

**Commonwealth of Massachusetts**
**The Trial Court**
**Probate and Family Court Department**

**Norfolk Division**                                          **Docket No.** 99D1578-DV1


Karen Leeds, Plaintiff

vs.

David R. Geiger, Defendant

## SUPPLEMENTAL ORDER

This matter came on for hearing before the Court, KOPELMAN, J. presiding, and after hearing, it is Ordered that:

1.   Notwithstanding paragraph II E of the Qualified Domestic Relations Orders with respect to following three plans:

   a.   Foley Hoag LLP Savings and Retirement Plan,

   b.   Foley Hoag LLP Money Purchase Pension Plan

   c.   Foley Hoag LLP Keough Plan.

   the former wife is hereby restrained from spending, transferring, assigning or encumbering any of the benefits set forth in said Qualified Domestic Relations Orders until such time as a final order is entered on the former husband's appeal.

2.   Notwithstanding paragraph one above, the former wife shall not be restrained from investing or "rolling over" said benefits.

March 29, 2005
Date                                                        Justice

B

PROBATE & FAMILY COURT

**IMPOUNDED CASE**

NORFOLK, SS:                                             NO. 99D-1578-DV1

)
KAREN LEEDS,                      )
    Plaintiff,                    )
                              )       **QUALIFIED DOMESTIC RELATIONS ORDER**
vs.                                     )
                              )
DAVID R. GEIGER,                  )
    Defendant                     )
)

**FOLEY HOAG LLP SAVINGS AND RETIREMENT PLAN**

This Order is entered pursuant to M.G.L. c. 208, §34 that relates to the provision of child support, alimony payments and/or marital property rights, as defined therein between spouses and former spouses. This Order assigns to the Alternate Payee the right to receive a portion of the Participant's vested account payable under the plan specified below, which is qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and the Employee Retirement Income Security Act of 1974 ("ERISA"). Furthermore, this Order is intended to constitute a Qualified Domestic Relations Order ("QDRO") and is made in accordance with Sections 401(a)(13) and 414(p) of the Code and Section 206(d) of ERISA.

**IT IS ORDERED AND ADJUDGED** as follows:

I.     For purpose of this Order, the following terms are defined as follows:

    A.    "Plan" is Foley Hoag LLP Savings and Retirement Plan, as may be amended from time to time, and any successor thereto, the Plan to which this Order applies.

    B.    "Participant" is:

                Name:               David R. Geiger
                Social Security Number:
                Address:            22 Tanglewood Road
                                      Wellesley, MA 02481

C.    "Alternate Payee" is:

Name:                          Karen Leeds
Social Security Number:
Address:        .              8 Vista Road
                               Wellesley, MA 02481

The Alternate Payee is the former spouse of the Participant.

D.    "Plan Administrator" is Foley Hoag LLP and may be contacted at:

155 Seaport Blvd.
Boston, MA 02210.

II.    The following provisions govern the assignment, management and distribution of the
benefit awarded to the Alternate Payee under this Order.

A.    *Amount of Benefit Assigned to the Alternate Payee.* The Alternate Payee is
awarded from the Participant's vested account under the Plan:

$          .. adjusted for any investment gains and losses in accordance with the
provisions of the Plan for the period between the date an account is established for
the benefit of the Alternate Payee and the date of distribution.

The amount awarded and assigned to the Alternate Payee shall not include any
portion of a note payable by the Participant pursuant to an outstanding loan under
the Plan and any such note shall remain the sole responsibility of the Participant.

B.    *Separate Account Established for the Alternate Payee.* The Plan Administrator is
hereby instructed to establish a separate account under the Plan in the name of the
Alternate Payee and in the amount of the benefit assigned to the Alternate Payee
pursuant to II.A. above. The amount assigned to the Alternate Payee will be taken
from the Participant's vested account, ~~on a pro-rata basis from the Participant's~~
~~investment elections in effect on the date the Alternate Payee's account is~~
~~established ("set investment elections")~~. The Alternate Payee's account will
continue to be invested in the set investment elections, subject to subsequent
change by the Alternate Payee.

C.    *Investment Options.* Following the establishment of the Alternate Payee's
account, if distribution to the Alternate Payee is deferred and the Plan offers self-
directed investment options, the Alternate Payee may change the investment of

2

his/her assigned benefit and invest said benefit in any of the investment options offered under the Plan by calling *Benefits Complete®* at (800) 294-3575.

D.  *Form of Benefit Payment to Alternate Payee.* The Alternate Payee shall receive the benefit assigned on his/her behalf in a single lump sum payment.

E.  *Commencement of Benefit Payment to Alternate Payee.* The Alternate Payee may elect to commence distribution of the benefit assigned on his/her behalf at any time after the Plan Administrator has determined that the Order constitutes a Qualified Domestic Relations Order ("QDRO") within the meaning of Section 414(p) of the Code by filing the proper distribution form with the Plan Administrator; provided, however, such date is not later than the "required beginning date" as set forth in Section 401(a)(9) of the Internal Revenue Code and the regulations thereunder.

In no event will distribution be made to the Alternate Payee prior to the determination by the Plan Administrator that the Order constitutes a QDRO within the meaning of Section 414(p) of the Code and prior to receipt of the proper distribution form by the Plan Administrator.

F.  *Death of the Alternate Payee and/or the Participant.* The death of the Participant will not affect the payment of the benefit assigned to the Alternate Payee under this Order.

If the Alternate Payee dies before his/her interest has been distributed, the Alternate Payee's benefit, or remainder (if applicable), will be paid in a single lump sum cash payment to the beneficiary named by the Alternate Payee.

III.  The following provisions are made in accordance with Section 414(p)(3) of the Code:

A.  This Order **does not** require the Plan to provide any type or form of benefit, or any option, not otherwise provided by the Plan.

B.  This Order **does not** require the Plan to provide increased benefits (determined on the basis of actuarial value).

C.  This Order **does not** require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic order.

IV.  It is intended that this Order be qualified as a Qualified Domestic Relations Order within the meaning of Section 414(p) of the Code and Section 206(d) of ERISA and under the Retirement Equity Act of 1984.

3

~~Order is for a Qualified Domestic Relations Order, then each party shall cooperate and do all things necessary to modify the Order in order that it may be deemed a Qualified Domestic Relations Order by the Plan Administrator.~~

It is further ordered that the Court retains jurisdiction to amend or modify this Order in order to establish or maintain its qualification as a Qualified Domestic Relations Order as defined above.

V.    The distribution of the benefit to an Alternate Payee who is the spouse or former spouse of the Participant will be included in the Alternate Payee's gross income in the year in which the distribution is made, to the extent the distribution does not include any after-tax contributions made to the Plan, and to the extent that the Alternate Payee does not elect to roll over the distribution to another qualified retirement plan or to an IRA. If the distribution, however, is made to an Alternate Payee and is for child support, the distribution is included in the Participant's gross income and may not be rolled over to another qualified retirement plan or to an IRA.

The Alternate Payee is responsible for his/her own federal, state and local and other taxes attributable to the distribution of the benefit assigned to the Alternate Payee under this Order. The Plan Administrator will issue to the Alternate Payee a Form 1099-R stating the gross taxable amount of the distribution.

**Entered by David H. Kopelman, First Justice, this 21ˢᵗ day of March, 2005.**

Justice, Norfolk Probate & Family Court

See supplemental order dated March 29, 2005 attached hereto.

NORFOLK COUNTY
TRUE COPY ATTEST
MAR 29 2005

Commonwealth of Massachusetts
The Trial Court
Probate and Family Court Department

**Norfolk Division**                                    Docket No. 99D1578-DV1

Karen Leeds, Plaintiff

vs.

David R. Geiger, Defendant

**SUPPLEMENTAL ORDER**

This matter came on for hearing before the Court, KOPELMAN, J. presiding, and after hearing, it is Ordered that:

1.   Notwithstanding paragraph II E of the Qualified Domestic Relations Orders with respect to following three plans:

a.   Foley Hoag LLP Savings and Retirement Plan,

b.   Foley Hoag LLP Money Purchase Pension Plan

c.   Foley Hoag LLP Keough Plan.

the former wife is hereby restrained from spending, transferring, assigning or encumbering any of the benefits set forth in said Qualified Domestic Relations Orders until such time as a final order is entered on the former husband's appeal.

2.   Notwithstanding paragraph one above, the former wife shall not be restrained from investing or "rolling over" said benefits.

March 29, 2005
Date

Justice

COMMONWEALTH OF MASSACHUSETTS
PROBATE & FAMILY COURT

### IMPOUNDED CASE

NORFOLK, SS:                                              NO. 99D-1578-DV1

|  |  |
|---|---|
| KAREN LEEDS,<br>    Plaintiff, | )<br>)<br>) |
| | ) **QUALIFIED DOMESTIC RELATIONS ORDER** |
| vs. | )<br>) |
| DAVID R. GEIGER,<br>    Defendant | )<br>)<br>) |

### FOLEY HOAG LLP MONEY PURCHASE PENSION PLAN

This Order is entered pursuant to M.G.L. c. 208, §34 that relates to the provision of child support, alimony payments and/or marital property rights, as defined therein between spouses and former spouses. This Order assigns to the Alternate Payee the right to receive a portion of the Participant's vested account payable under the plan specified below, which is qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and the Employee Retirement Income Security Act of 1974 ("ERISA"). Furthermore, this Order is intended to constitute a Qualified Domestic Relations Order ("QDRO") and is made in accordance with Sections 401(a)(13) and 414(p) of the Code and Section 206(d) of ERISA.

**IT IS ORDERED AND ADJUDGED** as follows:

I.      For purpose of this Order, the following terms are defined as follows:

    A.      "Plan" is Foley Hoag LLP Money Purchase Pension Plan, as may be amended from time to time, and any successor thereto, the Plan to which this Order applies.

    B.      "Participant" is:

                Name:                              David R. Geiger
                Social Security Number:
                Address:                           22 Tanglewood Road
                                          Wellesley, MA 02481

C.      "Alternate Payee" is:

>       Name:                           Karen Leeds
>       Social Security Number:
>       Address:                        8 Vista Road
>                                       Wellesley, MA 02481

The Alternate Payee is the former spouse of the Participant.

D.      "Plan Administrator" is Foley Hoag LLP and may be contacted at:

>       155 Seaport Blvd.
>       Boston, MA 02210.

II.     The following provisions govern the assignment, management and distribution of the
        benefit awarded to the Alternate Payee under this Order.

A.      *Amount of Benefit Assigned to the Alternate Payee.* The Alternate Payee is
        awarded from the Participant's vested account under the Plan:

>       $.           , adjusted for any investment gains and losses in accordance with the
>       provisions of the Plan for the period between the date an account is established for
>       the benefit of the Alternate Payee and the date of distribution.

        The amount awarded and assigned to the Alternate Payee shall not include any
        portion of a note payable by the Participant pursuant to an outstanding loan under
        the Plan and any such note shall remain the sole responsibility of the Participant.

B.      *Separate Account Established for the Alternate Payee.* The Plan Administrator is
        hereby instructed to establish a separate account under the Plan in the name of the
        Alternate Payee and in the amount of the benefit assigned to the Alternate Payee
        pursuant to II.A. above. The amount assigned to the Alternate Payee will be taken
        from the Participant's vested account~~on a pro rata basis from the Participant's
        investment elections in effect on the date the Alternate Payee's account is
        established ("set investment elections"~~). The Alternate Payee's account will
        continue to be invested in the set investment elections, subject to subsequent
        change by the Alternate Payee.

C.      *Investment Options.* Following the establishment of the Alternate Payee's
        account, if distribution to the Alternate Payee is deferred and the Plan offers self-
        directed investment options, the Alternate Payee may change the investment of

2

his/her assigned benefit and invest said benefit in any of the investment options offered under the Plan by calling *Benefits Complete®* at (800) 294-3575.

D.    *Form of Benefit Payment to Alternate Payee.* The Alternate Payee shall receive the benefit assigned on his/her behalf in accordance with one of the payment options available to the Participant in the Plan as selected by the Alternate Payee, provided, however, that the Alternate Payee may not elect to receive a joint and survivor annuity and name a subsequent spouse as a joint annuitant.

E.    *Commencement of Benefit Payment to Alternate Payee.* The Alternate Payee may elect to commence distribution of the benefit assigned on his/her behalf at any time after the Plan Administrator has determined that the Order constitutes a Qualified Domestic Relations Order ("QDRO") within the meaning of Section 414(p) of the Code by filing the proper distribution form with the Plan Administrator; provided, however, such date is not later than the "required beginning date" as set forth in Section 401(a)(9) of the Internal Revenue Code and the regulations thereunder.

In no event will distribution be made to the Alternate Payee prior to the determination by the Plan Administrator that the Order constitutes a QDRO within the meaning of Section 414(p) of the Code and prior to receipt of the proper distribution form by the Plan Administrator.

F.    *Death of the Alternate Payee and/or the Participant.* The death of the Participant will not affect the payment of the benefit assigned to the Alternate Payee under this Order.

If the Alternate Payee dies before his/her interest has been distributed, the Alternate Payee's benefit, or remainder (if applicable), will be paid in a single lump sum cash payment to the beneficiary named by the Alternate Payee.

III.   The following provisions are made in accordance with Section 414(p)(3) of the Code:

A.    This Order **does not** require the Plan to provide any type or form of benefit, or any option, not otherwise provided by the Plan.

B.    This Order **does not** require the Plan to provide increased benefits (determined on the basis of actuarial value).

C.    This Order **does not** require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic order.

3

IV.    It is intended that this Order be qualified as a Qualified Domestic Relations Order within the meaning of Section 414(p) of the Code and Section 206(d) of ERISA and under the Retirement Equity Act of 1984. ~~In the event the Plan Administrator determines that the Order is not a Qualified Domestic Relations Order, the moving party shall cooperate and do all things necessary to modify the Order in order that it may be deemed a Qualified Domestic Relations Order by the Plan Administrator.~~



It is further ordered that the Court retains jurisdiction to amend or modify this Order in order to establish or maintain its qualification as a Qualified Domestic Relations Order as defined above.

V.    The distribution of the benefit to an Alternate Payee who is the spouse or former spouse of the Participant will be included in the Alternate Payee's gross income in the year in which the distribution is made, to the extent the distribution does not include any after-tax contributions made to the Plan, and to the extent that the Alternate Payee does not elect to roll over the distribution to another qualified retirement plan or to an IRA. If the distribution, however, is made to an Alternate Payee and is for child support, the distribution is included in the Participant's gross income and may not be rolled over to another qualified retirement plan or to an IRA.

The Alternate Payee is responsible for his/her own federal, state and local and other taxes attributable to the distribution of the benefit assigned to the Alternate Payee under this Order. The Plan Administrator will issue to the Alternate Payee a Form 1099-R stating the gross taxable amount of the distribution.

**Entered by David H. Kopelman, First Justice, this 29ᵗʰ day of March, 2005.**

Justice, Norfolk Probate & Family Court

See supplemental order dated March 29, 2005 attached hereto

NORFOLK COURT
TRUE COPY ATTEST:
MAR 29 2005
REGISTER

4

Commonwealth of Massachusetts
The Trial Court
Probate and Family Court Department

Norfolk Division                                    Docket No. 99D1578-DV1

Karen Leeds, Plaintiff

vs.

David R. Geiger, Defendant

**SUPPLEMENTAL ORDER**

This matter came on for hearing before the Court, KOPELMAN, J. presiding, and after hearing, it is Ordered that:

1.  Notwithstanding paragraph II E of the Qualified Domestic Relations Orders with respect to following three plans:

    a.  Foley Hoag LLP Savings and Retirement Plan,

    b.  Foley Hoag LLP Money Purchase Pension Plan

    c.  Foley Hoag LLP Keough Plan.

    the former wife is hereby restrained from spending, transferring, assigning or encumbering any of the benefits set forth in said Qualified Domestic Relations Orders until such time as a final order is entered on the former husband's appeal.

2.  Notwithstanding paragraph one above, the former wife shall not be restrained from investing or "rolling over" said benefits.

March 29, 2005
Date                                    Justice

D

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES

Plan administrators are required to establish reasonable procedures for determining the qualified status of domestic ... ations
orders and for administering distributions under such orders pursuant to Section 414(p) of the Internal Revenue C ... The
following procedures have been adopted by the Plan Administrator. For purposes of the following procedures, ... term
"Interested Parties" shall mean all parties named in a domestic relations order and any representatives designated in ... ng by
such persons.

## Freeze Participant's Account Upon Actual Knowledge of Pending Divorce or Divorce Proceeding

The Plan Administrator or Plan Administrator's designee (collectively referred to as "Plan Administrator") shall put a fre ... status
on a Participant's account immediately following notification by the Plan Administrator, Participant, Participant's s ... se, or
counsel that a Participant is in the process of obtaining a divorce. In addition, a Participant's account will be frozen upon

*   receipt of a divorce decree;
*   receipt of a domestic relations orders ("Order"); or
*   receipt of a letter notifying the Plan Administrator of a Participant's pending divorce or potential Order.

The Participant will be able to change his/her investment elections while his/her account is in the frozen status. How ... r, the
Participant will not be able to take in-service withdrawals, loans, or distributions from his/her account during the period ... which
the account is frozen.

Once an Order has been determined to be qualified and an account has been established for the Alternate Payee under tl ... rder,
the freeze on the Participant's account will automatically be removed.

## Send Notice of Receipt of Domestic Relations Order

Upon receipt of an Order, the Plan Administrator shall promptly send a written Notice of Receipt of Domestic Relatio ... Order
("Notice") to all Interested Parties at the addresses specified in the Order, if applicable, which acknowledges receipt of t ... Order
and sets forth the requirements that the Order must satisfy in order to constitute a qualified domestic relations order ("Q ... ") as
defined in Section 414(p) of the Internal Revenue Code. (The specific QDRO requirements are outlined below.) If the a ... ss of
the Participant or Alternate Payee is not provided in the Order, the Plan Administrator may send the Notice to the addre ... f the
Participant or Alternate Payee last known to the Plan Administrator.

## QDRO Requirements

In order to constitute a QDRO, the Order must satisfy all of the following requirements:

1.  The Order is issued by a court pursuant to its state domestic relations law (including a community property law).
2.  The Order relates to the provision of child support, alimony payments, or marital property rights to a spouse ... rmer
    spouse, child or other dependent of the Participant.
3.  The Order creates or recognizes the Alternate Payee's right to receive all or a part of the Participant's vested ... ount
    under the Plan.
4.  The Order specifies the following information:
    (a)   The full name of the Plan or Plans to which it applies;
    (b)   The amount or percentage of the Participant's vested account to be paid to the Alternate Payee, or the m ... er in
          which the amount or percentage is to be determined;
    (c)   The number of payments or the period to which the Order applies; and
    (d)   The social security number, name, and last known mailing address of the Participant and each Alternat ... ayee
          covered in the Order.

    The Order does not require the Plan to provide any type or form of benefit, or any option that is not already p ... ded
    under the Plan and does not require the Plan to provide increased benefits (determined on the basis of actuarial ... ue).
    Furthermore, the Order cannot provide the Alternate Payee with the right to receive a joint and survivor annuit, ... der
    which a subsequent spouse of the Alternate Payee could be named as contingent annuitant.

conti ... d ...

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES (continued)

## QDRO Requirements (continued)

6. The Order does not require the payment of benefits to the Alternate Payee which are required to be paid t... nother alternate payee named under another qualified domestic relations order.

## Review of Draft Orders

In the event the Order has not been entered by the court ("Draft Order"), the Plan Administrator shall review the Draft O...

If the Draft Order constitutes a QDRO, the Plan Administrator shall send a Preliminary Notice of Qualification ("Preliminar... otice") to all Interested Parties stating that the Draft Order, when entered by a court, would constitute a QDRO. The Prelimin... Notice will also advise the Interested Parties that a Notice of Qualification will be issued to all Interested Parties following the... eipt of the court entered Order.

If the Draft Order is not qualified, the Plan Administrator shall send a Notice of Nonqualification to all Interested Pa... es (see below).

## Pending Determination of Status

Benefit payments cannot be distributed to a Participant or Alternate Payee named in an Order while the Order is... nding qualification.

Within a reasonable period after receipt of an Order, the Plan Administrator shall determine whether it is a QDRO. ...within eighteen (18) months from the date on which the first payment would be required to be made under the Orde... final determination is made that the Order (as modified, if applicable) is a QDRO and proper Notice is given to the Intereste... arties, hen the Plan Administrator shall follow the terms of the Order and authorize distribution of the amount awarded to the... rnate Payee in accordance with the terms of the Order.

If, within the eighteen (18) month period, it is determined that the Order is not a QDRO, or if no final determinatior... made within such period, the Plan Administrator shall notify all Interested Parties in writing of such fact and authorize distributi... f the amount involved to the person or persons who would otherwise be entitled to receive such amount in the absence of the... er, or if such person or persons are not yet in pay status under the terms of the Plan, remove the frozen account status... n the Participant's account.

If it is subsequently determined that the Order (as modified, if applicable) is a QDRO, then the QDRO shall be applied pros... tively only.

## Notice of Qualification of the Order

If the Order is determined to be qualified, the Plan Administrator shall notify in writing all Interested Parties that a deter... ation has been made that the Order constitutes a QDRO as defined in Section 414(p) of the Internal Revenue Code. This I... ce of Qualification ("Qualification Notice") shall also outline the terms and conditions of the Order.

An Interested Party may dispute the determination by mailing, or delivering, a written objection to the Plan Administrat... ithin thirty (30) calendar days of receipt of such Qualification Notice. If no Interested Party disputes this determination within t... hirty (30) calendar day time frame, the Plan Administrator shall establish a separate account for the Alternate Payee and admir... r the Order in accordance with the terms of the Order as outlined in the Qualification Notice. If any Interested Party disp... this determination within the thirty (30) calendar day time frame, the Plan Administrator shall review the dispute and take app... riate steps to resolve such dispute.

## Notice of Nonqualification of the Order

If the Order is determined to be not qualified, the Plan Administrator shall notify in writing all Interested Partie... at a determination has been made that the Order is not a QDRO. This Notice of Nonqualification ("Nonqualification Notice") s... also state the reasons for the determination. The Plan Administrator shall await a revised order. The review process will... n be repeated.

I:\FO0102\DMS\QDPROC01.DOC

E

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES

Plan administrators are required to establish reasonable procedures for determining the qualified status of domestic        tions
orders and for administering distributions under such orders pursuant to Section 414(p) of the Internal Revenue Co        The
following procedures have been adopted by the Plan Administrator.  For purposes of the following procedures, t         term
"Interested Parties" shall mean all parties named in a domestic relations order and any representatives designated in w        ig by
such persons.

### Freeze Participant's Account Upon Actual Knowledge of Pending Divorce or Divorce Proceeding

The Plan Administrator or Plan Administrator's designee (collectively referred to as "Plan Administrator") shall put a free        tatus
on a Participant's account immediately following notification by the Plan Administrator, Participant, Participant's sp        e, or
counsel that a Participant is in the process of obtaining a divorce.  In addition, a Participant's account will be frozen upon tl

- receipt of a divorce decree;
- receipt of a domestic relations orders ("Order");
- receipt of a letter notifying the Plan Administrator of a Participant's pending divorce or potential Order; or
- issuance of a QDRO package to the Participant, Participant's spouse or counsel.

The Participant will be able to change his/her investment elections while his/her account is in the frozen status.  Howe        , the
Participant will not be able to take in-service withdrawals, loans or distributions from his/her account during the period       /hich
the account is frozen.

Once an Order has been determined to be qualified and an account has been established for the Alternate Payee under th        rder,
the freeze on the Participant's account will automatically be removed.  Prior to that time, the frozen status can only be         oved
upon the Participant's and his/her spouse's completion of the **Authorization to Remove Frozen Account Status Form**,         upon
the Plan Sponsor's written direction (which must indemnify NYLB).

### Send Notice of Receipt of Domestic Relations Order

Within 5 business days of receipt of an Order, the Plan Administrator shall send a written Notice of Receipt of Domestic F        tions
Order ("Notice") and to all Interested Parties at the addresses specified in the Order, if applicable, which acknowledges r        ot of
the Order and sets forth the requirements that the Order must satisfy in order to constitute a qualified domestic relatio        irder
("QDRO") as defined in Section 414(p) of the Internal Revenue Code.  (The specific QDRO requirements are outlined belo        The
Plan Administrator may also submit a copy of the Plan's Model Qualified Domestic Relations Order with the Notice.  If the        dress
of the Participant or Alternate Payee is not provided in the Order, the Plan Administrator may send the Notice to the addre        f the
Participant or Alternate Payee last known to the Plan Administrator.

### QDRO Requirements

In order to constitute a QDRO, the Order must satisfy all of the following requirements:

1.    The Order is issued by a court pursuant to its state domestic relations law (including a community property law).

2.    The Order relates to the provision of child support, alimony payments, or marital property rights to a spouse,        rmer
      spouse, child or other dependent of the Participant.

3.    The Order creates or recognizes the Alternate Payee's right to receive all or a part of the Participant's vested        ount
      under the Plan.

4.    The Order specifies the following information:

      (a)    The full name of the Plan or Plans to which it applies;

      (b)    The amount or percentage of the Participant's vested account to be paid to the Alternate Payee, or the m        er in
             which the amount or percentage is to be determined;

      (c)    The number of payments or the period to which the Order applies; and

      (d)    The Social Security number, name, and last known mailing address of the Participant and each Alternat        ayee
             covered in the Order.

conti    d ...

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES
## (continued)

**QDRO Requirements (continued)**

5.    The Order does not require the Plan to provide any type or form of benefit, or any option that is not already    vided
under the Plan and does not require the Plan to provide increased benefits (determined on the basis of actuari    alue).
Furthermore, the Order cannot provide the Alternate Payee with the right to receive a joint and survivor annu    under
which a subsequent spouse of the Alternate Payee could be named as a contingent annuitant.

6.    The Order does not require the payment of benefits to the Alternate Payee which are required to be paid tc    other
alternate payee named under another qualified domestic relations order.

**Review of Orders and Draft Orders**

The Plan Administrator shall review the Order.  In the event the Order has not been entered by the court, the Plan Adm    trator
shall review the draft Order.

If the Order constitutes a QDRO, within 30 business days of receipt, the Plan Administrator shall send a Notice of Qualificat    to all
Interested Parties stating that the Order, when entered by a court, would constitute a QDRO.

If the Order is not qualified, within 30 business days of receipt, the Plan Administrator shall send a Notice of Nonqualificat    to all
Interested Parties (see below).

**Pending Determination of Status**

Benefit payments cannot be distributed to a Participant or Alternate Payee named in an Order while the Order is    nding
qualification.

Within a reasonable period after receipt of an Order, the Plan Administrator shall determine whether it is a QDRO.    vithin
eighteen (18) months from the date on which the first payment would be required to be made under the Orde    final
determination is made that the Order (as modified, if applicable) is a QDRO and proper Notice is given to the Intereste    arties,
then the Plan Administrator shall follow the terms of the Order and authorize distribution of the amount awarded to the .    rnate
Payee in accordance with the terms of the Order.

If, within the eighteen (18) month period, it is determined that the Order is not a QDRO, or if no final determinatior    made
within such period, the Plan Administrator shall notify all Interested Parties in writing of such fact and authorize distributi    >f the
amount involved to the person or persons who would otherwise be entitled to receive such amount in the absence of the    er, or
if such person or persons are not yet in pay status under the terms of the Plan, remove the frozen account status    n the
Participant's account.

If it is subsequently determined that the Order (as modified, if applicable) is a QDRO, then the QDRO shall be applied pro:    tively
only.

**Notice of Qualification of the Order**

If the Order is determined to be qualified, the Plan Administrator shall notify in writing all Interested Parties that a deter    ation
has been made that the Order constitutes a QDRO as defined in Section 414(p) of the Internal Revenue Code. This    ice of
Qualification ("Qualification Notice") shall also outline the terms and conditions of the Order.

An Interested Party may dispute the determination by mailing, or delivering, a written objection to the Plan Administrat    vithin
thirty (30) calendar days of receipt of such Qualification Notice.  If no Interested Party disputes this determination within    thirty
(30) calendar day time frame, the Plan Administrator shall establish a separate account for the Alternate Payee and admi    ir the
Order in accordance with the terms of the Order as outlined in the Qualification Notice.  If any Interested Party disp    s this
determination within the thirty (30) calendar day time frame, the Plan Administrator shall review the dispute and take ap    oriate
steps to resolve such dispute.

con    ed …

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES
## (continued)

**Notice of Nonqualification of the Order**

If the Order is determined to be not qualified, the Plan Administrator shall notify in writing all Interested Parti͏  hat a determination has been made that the Order is not a QDRO.  This Notice of Nonqualification ("Nonqualification Notice")  ll also state the reasons for the determination.  The Plan Administrator may include a copy of the Plan's Model Qualified  nestic Relations Order with the Nonqualification Notice to be used as guidance to bring the Order into compliance with QDRO r  . The Plan Administrator shall await a revised order.  The review process will then be repeated.

F

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES

Plan administrators are required to establish reasonable procedures for determining the qualified status of domestic                     tions
orders and for administering distributions under such orders pursuant to Section 414(p) of the Internal Revenue Co                      The
following procedures have been adopted by the Plan Administrator.  For purposes of the following procedures, t                           term
"Interested Parties" shall mean all parties named in a domestic relations order and any representatives designated in w                  g by
such persons.

### Freeze Participant's Account Upon Actual Knowledge of Pending Divorce or Divorce Proceeding

The Plan Administrator or Plan Administrator's designee (collectively referred to as "Plan Administrator") shall put a free:             :atus
on a Participant's account immediately following notification by the Plan Administrator, Participant, Participant's sp                    ›, or
counsel that a Participant is in the process of obtaining a divorce.  In addition, a Participant's account will be frozen upon tl

- receipt of a divorce decree;
- receipt of a domestic relations orders ("Order");
- receipt of a letter notifying the Plan Administrator of a Participant's pending divorce or potential Order; or
- issuance of a QDRO package to the Participant, Participant's spouse or counsel.

The Participant will be able to change his/her investment elections while his/her account is in the frozen status.  Howe                 the
Participant will not be able to take in-service withdrawals, loans or distributions from his/her account during the period i             ʰhich
the account is frozen.

Once an Order has been determined to be qualified and an account has been established for the Alternate Payee under th                   ʳder,
the freeze on the Participant's account will automatically be removed.  Prior to that time, the frozen status can only be r              ›ved
upon the Participant's and his/her spouse's completion of the **Authorization to Remove Frozen Account Status Form,**                    ıpon
the Plan Sponsor's written direction (which must indemnify NYLB).

### Send Notice of Receipt of Domestic Relations Order

Within 5 business days of receipt of an Order, the Plan Administrator shall send a written Notice of Receipt of Domestic R               ions
Order ("Notice") and to all Interested Parties at the addresses specified in the Order, if applicable, which acknowledges re            ›t of
the Order and sets forth the requirements that the Order must satisfy in order to constitute a qualified domestic relatioı              rder
("QDRO") as defined in Section 414(p) of the Internal Revenue Code.  (The specific QDRO requirements are outlined belo⸱                  The
Plan Administrator may also submit a copy of the Plan's Model Qualified Domestic Relations Order with the Notice.  If the                lress
of the Participant or Alternate Payee is not provided in the Order, the Plan Administrator may send the Notice to the addre:             ̄the
Participant or Alternate Payee last known to the Plan Administrator.

### QDRO Requirements

In order to constitute a QDRO, the Order must satisfy all of the following requirements:

1.    The Order is issued by a court pursuant to its state domestic relations law (including a community property law).

2.    The Order relates to the provision of child support, alimony payments, or marital property rights to a spouse,                     mer
      spouse, child or other dependent of the Participant.

3.    The Order creates or recognizes the Alternate Payee's right to receive all or a part of the Participant's vested                   ›unt
      under the Plan.

4.    The Order specifies the following information:

      (a)    The full name of the Plan or Plans to which it applies;

      (b)    The amount or percentage of the Participant's vested account to be paid to the Alternate Payee, or the mɛ                   ːr in
             which the amount or percentage is to be determined;

      (c)    The number of payments or the period to which the Order applies; and

      (d)    The Social Security number, name, and last known mailing address of the Participant and each Alternatı                      ıyee
             covered in the Order.

contiı     1 ...

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES (continued)

**QDRO Requirements (continued)**

5. The Order does not require the Plan to provide any type or form of benefit, or any option that is not already /ided under the Plan and does not require the Plan to provide increased benefits (determined on the basis of actuari: ılue). Furthermore, the Order cannot provide the Alternate Payee with the right to receive a joint and survivor annui ınder which a subsequent spouse of the Alternate Payee could be named as a contingent annuitant.

6. The Order does not require the payment of benefits to the Alternate Payee which are required to be paid to ›ther alternate payee named under another qualified domestic relations order.

**Review of Orders and Draft Orders**

The Plan Administrator shall review the Order. In the event the Order has not been entered by the court, the Plan Admi rator shall review the draft Order.

If the Order constitutes a QDRO, within 30 business days of receipt, the Plan Administrator shall send a Notice of Qualificat to all Interested Parties stating that the Order, when entered by a court, would constitute a QDRO.

If the Order is not qualified, within 30 business days of receipt, the Plan Administrator shall send a Notice of Nonqualificati to all Interested Parties (see below).

**Pending Determination of Status**

Benefit payments cannot be distributed to a Participant or Alternate Payee named in an Order while the Order is ıding qualification.

Within a reasonable period after receipt of an Order, the Plan Administrator shall determine whether it is a QDRO. I: 'ithin eighteen (18) months from the date on which the first payment would be required to be made under the Order final determination is made that the Order (as modified, if applicable) is a QDRO and proper Notice is given to the Interestec: rties, then the Plan Administrator shall follow the terms of the Order and authorize distribution of the amount awarded to the A 'nate Payee in accordance with the terms of the Order.

If, within the eighteen (18) month period, it is determined that the Order is not a QDRO, or if no final determination nade within such period, the Plan Administrator shall notify all Interested Parties in writing of such fact and authorize distributic f the amount involved to the person or persons who would otherwise be entitled to receive such amount in the absence of the ( ɜr, or if such person or persons are not yet in pay status under the terms of the Plan, remove the frozen account status f ı the Participant's account.

If it is subsequently determined that the Order (as modified, if applicable) is a QDRO, then the QDRO shall be applied pros| ively only.

**Notice of Qualification of the Order**

If the Order is determined to be qualified, the Plan Administrator shall notify in writing all Interested Parties that a deterr: ıtion has been made that the Order constitutes a QDRO as defined in Section 414(p) of the Internal Revenue Code. This N :e of Qualification ("Qualification Notice") shall also outline the terms and conditions of the Order.

An Interested Party may dispute the determination by mailing, or delivering, a written objection to the Plan Administratc ithin thirty (30) calendar days of receipt of such Qualification Notice. If no Interested Party disputes this determination within t hirty (30) calendar day time frame, the Plan Administrator shall establish a separate account for the Alternate Payee and admin r the Order in accordance with the terms of the Order as outlined in the Qualification Notice. If any Interested Party disp this determination within the thirty (30) calendar day time frame, the Plan Administrator shall review the dispute and take app riate steps to resolve such dispute.

conti :d ...

# QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURES
## (continued)

**Notice of Nonqualification of the Order**

If the Order is determined to be not qualified, the Plan Administrator shall notify in writing all Interested Parti   hat a
determination has been made that the Order is not a QDRO.  This Notice of Nonqualification ("Nonqualification Notice")   ll also
state the reasons for the determination.  The Plan Administrator may include a copy of the Plan's Model Qualified   nestic
Relations Order with the Nonqualification Notice to be used as guidance to bring the Order into compliance with QDRO r   .  The
Plan Administrator shall await a revised order.  The review process will then be repeated.

G



# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

Louis P. Georgantas
Boston Office
617.832.1125
lpg@foleyhoag.com

May 5, 2005

Frances M. Giordano, Esquire
White, Inker, Aronson, P.C.
One Washington Mall
Boston, MA 02108

David R. Geiger, Esquire
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

> Re:   Foley Hoag LLP Retirement Plan (the "Plan")
>       Proposed Qualified Domestic Relations Order between
>       David R. Geiger and Karen Leeds
>       (Norfolk Probate and Family court #99D-1578-DVI)

Dear Ms. Giordano and Mr. Geiger:

The Plan Administrator has made a preliminary determination that the domestic
relations order (the "Order") in the above-referenced matter, a copy of which is enclosed
herein, would constitute a qualified domestic relations order as defined in Section 414(p)
of the Internal Revenue Code. Outlined below is a summary of the Plan Administrator's
understanding of how the Order is to be administered.

> ➤ **Name and Address of Participant and Alternate Payee -**

*Participant*:       David R. Geiger
                     22 Tanglewood Road
                     Wellesley, MA   02481
                     Social Security Number:

*Alternate Payee*:   Karen Leeds
                     8 Vista Road
                     Wellesley, MA   02481
                     Social Security Number:

B3017773.1

Frances M. Giordano, Esquire
David R. Geiger, Esquire
May 5, 2005
Page 2

> **Amount of Benefit Assigned to Alternate Payee** - The Alternate Payee is
> awarded $        from the Participant's total vested account balance. This
> amount shall be adjusted for income, expenses and investment gains and
> losses from the period an account is established in the Alternate Payee's
> name until the date of distribution.
>
> The Plan Administrator will establish a separate account under the Plan in the
> name of the Alternate Payee and in the amount of the benefit assigned to the
> Alternate Payee above. The amount assigned to the Alternate Payee will be
> liquidated from the Participant's vested account and deposited in cash in a
> money market account subject to any subsequent investment direction by the
> Alternate Payee.

> **Investment Options** - The Alternate Payee may change the investment of her
> assigned benefit and invest said benefit in any of the investment options
> offered under the Plan by instructing the Plan Administrator in writing.

> **Form of Benefit Payment to the Alternate Payee** - The Alternate Payee
> shall receive the benefit assigned on her behalf in accordance with any of the
> distribution options available under the Plan. The Alternate Payee may elect
> to roll over her assigned benefit to an Individual Retirement Account ("IRA")
> or to a qualified retirement plan of her current employer by providing the
> necessary information on a form provided by the Plan Administrator.

> **Commencement of Benefit Payment to the Alternate Payee** - The Plan
> Administrator is in receipt of a Supplemental Order of the Court dated March
> 29, 2005, which states that, notwithstanding paragraph II E of the Order, the
> Alternate Payee is restrained from "spending, transferring, assigning or
> encumbering" any of the benefits set forth in the Order until such time as a
> final order is entered on the appeal of the Order (although the Supplemental
> Order further states that the Alternate Payee is not restrained from "rolling
> over" said benefits). In light of the ambiguity of said language, the Plan
> Administrator will not release any funds pending a final order being entered
> or pending a clarification from the Court.

> **Death of the Alternate Payee and/or the Participant** - The death of the
> Participant will not affect the payment of benefit assigned to the Alternate
> Payee.
>
> If the Alternate Payee dies before her interest has been distributed, the
> Alternate Payee's benefit will be paid in a single-sum cash payment to the
> beneficiary named by the Alternate Payee, or in the absence of a valid
> designation of beneficiary form, the Alternate Payee's benefit will be paid in
> a single-sum cash payment to the Alternate Payee's estate.

Frances M. Giordano, Esquire
David R. Geiger, Esquire
May 5, 2005
Page 3

If you disagree with any part of this summary, you must request that the Plan
Administrator review its finding. Your request for a review must set forth all the
grounds upon which it is based, and any other information you feel would be helpful.

The Plan Administrator will act upon any request for review it receives and will
inform the Participant and the Alternate Payee in writing of its decision upon review.

If a request for review is not received by the Plan Administrator on or before
May 26, 2005, the Plan Administrator will authorize the final qualification of the Order,
establish a separate account for the Alternate Payee, and direct that the Order be
administered as outlined above.

Sincerely,

Louis P. Georgantas

LPG:mpk

B3017773.1

H

 **Investment Management LLC**

**NYLIM Retirement Plan Services**
690 Canton Street
Westwood, MA 02090
T 781 619-2000 F 781 619-2296

June 13, 2005

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Frances M. Giordano, Esq.
White, Inker, Aronson, P.C.
One Washington Mall
Boston, MA 02108-2603

Re:    Foley Hoag LLP Savings and Retirement Plan
       Foley Hoag LLP Money Purchase Pension Plan
       Qualified Domestic Relations Order for Karen Leeds ("Alternate Payee") and David R. Geiger
       ("Participant")

Dear Ms. Giordano:

This letter is to notify you that in accordance with the Order issued on June 1, 2005, the status of the Alternate Payee's and the Participant's accounts under each of the retirement plans named above has been changed and the "frozen" status removed.

In accordance with the Order, the Alternate Payee may choose to roll over her account to any other investment vehicle ("IRA") of her choice. In the alternative, the Alternate Payee may change the investment of her account among the funds currently offered under the Plan. To initiate changes to her account, the Alternate Payee must call *Benefits Complete* at (800) 294-3575.

Sincerely,

Donna M. Murphy
Senior Retirement Plan Specialist

fo0102/qd0605geiger.doc

cc:    David R. Geiger – *via certified mail – return receipt requested*
       Karen Leeds – *via certified mail – return receipt requested*
       Louis P. Georgantas – *Foley Hoag LLP*
       Pamela A. Zorn, Esq. – *Sherin and Lodgen LLP*



**Investment**
**Management LLC**

NYLIM **Retirement Plan Service**
690 Canton Street
Westwood, MA 02090
T 781 619-2000  F 781 619-229

## FINAL NOTICE OF QUALIFICATION
## OF DOMESTIC RELATIONS ORDER

July 8, 2005

BY FIRST CLASS MAIL

David R. Geiger, Esq.
22 Tanglewood Road
Wellesley, MA 02481

Ms. Karen Leeds
8 Vista Road
Wellesley, MA 02481

**RE:    Foley Hoag LLP Savings and Retirement Plan ("Plan")**
       **Qualified Domestic Relations Order for Karen Leeds and David R. Geiger**
       **(No. 99D-1578-DVI)**

Dear Mr. Geiger/Ms. Leeds:

The Plan Administrator's designee has determined that the domestic relations order ("Order") refe    ced
above, as entered by the Court on March 29, 2005 and as supplemented by separate orders dated Ma    29,
2005 and June 1, 2005, is a qualified domestic relations order as defined in Section 414(p) of the I    rnal
Revenue Code. Outlined below is a summary of the Plan Administrator's designee's understanding of h    the
Order is to be administered.

> ➤ **Name and Address of Participant and Alternate Payee -**

  *Participant:*      David R. Geiger (S.S. #.            ·)           ⸗
                    22 Tanglewood Road     ·.
                    Wellesley, MA 02481

  *Alternate Payee:*   Karen Leeds  (S.S. #.·        · · ·')
                    8 Vista Road
                    Wellesley, MA 02481

> ➤ **Amount of Benefit Assigned to Alternate Payee -** The Alternate Payee is awarded $.            of
  the Participant's vested account balance under the Plan. The amount assigned to the Alternate      yee
  will be subject to applicable gains and losses based on the investment options in which such am    t is
  invested for the period between the date an account is established for the benefit of the Al       ate
  Payee and the date of distribution.

  The Plan Administrator has established a separate account under the Plan in the name      the
  Alternate Payee and in the amount of the benefit assigned to the Alternate Payee      ⸗ve.
  Notwithstanding the modification made to Sec. II.B. of the Order entered into Court on Ma    29,
  2005 and in accordance with the Plan's administrative procedures, the amount assigned        the
  Alternate Payee has been segregated from the Participant's vested account on a pro-rata basi     om



**Management LLC**

**NYLIM Retirement Plan Servic**
690 Canton Street
Westwood, MA 02090
T 781 619-2000 F 781 619-22!

David R. Geiger, Esq.
Ms. Karen Leeds
July 8, 2005
Page 2

the Participant's investment elections in effect on the date the Alternate Payee's accou    was
established. If the parties do not provide clarification with respect to the investment funds from    rhich
the Alternate Payee's account should be established within 30-days of the date of this Not    . the
prorata segregation will remain in effect.

➤ *Form of Benefit Payment to Alternate Payee* - The Alternate Payee shall receive the    nefit
assigned on her behalf in a single-sum payment.

➤ *Commencement of Benefit Payment to Alternate Payee* - The Alternate Payee may    t to
commence distribution of her benefit assigned under the Order at any time after t    Plan
Administrator has determined that the Order constitutes a Qualified Domestic Relations    rder
("QDRO") within the meaning of Section 414(p) of the Code by filing the appropriate dist    ition
form with the Plan Administrator; provided, however such date is not later than the "r    iired
beginning date" as set forth in Section 401(a)(9) of the Internal Revenue Code and the reg    ions
thereunder.

➤ *Death of Alternate Payee and/or Participant* - The death of the Participant will not af    the
payment of benefit assigned to the Alternate Payee under the Order.

If the Alternate Payee dies before her interest has been distributed, the Alternate Payee's ber    will
be paid in a single-sum cash payment to the beneficiary named by the Alternate Payee.

➤ *Participant's Beneficiary Designation* - If it is the Participant's intent to remove his former    ouse
as his designated beneficiary under the Plan, the Participant must complete a new Ber    :iary
Designation Form available from *Benefits Complete*® and return it to the address indicated on th    orm.
Please note that a Qualified Domestic Relations Order ("QDRO"), Final Decree of E    rce,
Settlement Agreement, or other court order does not automatically change the Parti    int's
designated beneficiary.

If you disagree with any part of this summary, you must request that the Plan Administrator's designee    'iew
its findings. Your request for a review must set forth the reasons upon which it is based, and provide an;    ther
information you feel would be helpful. Please send in writing all comments and responses to: *New Y    Life
Investment Management, P.O. Box 940, Norwood, MA 02062-0940.*

The Plan Administrator's designee will act upon any request for review it receives and within 30 days will    orm
the Participant, the Alternate Payee, and their representatives in writing of its decision.

If a request for review is not received by the Plan Administrator's designee on or before August 7, 20    the
Plan Administrator's designee will administer the Order as outlined above. **Please note that the Alt    ate
Payee may not elect to commence distribution of her account until the date set forth    the
section above entitled "Commencement of Benefit Payment to the Alternate Payee" ar    the
review period noted above has expired.**


Investment
Management LLC

**NYLIM Retirement Plan Servic**
690 Canton Street
Westwood, MA 02090
T 781 619-2000 F 781 619-229

David R. Geiger, Esq.
Ms. Karen Leeds
July 8, 2005
Page 3

Sincerely,

New York Life Investment Management
for the Foley Hoag LLP Savings and Retirement Plan Administrator

cc:   Frances M. Giordano, Esq. – *White, Inker, Aronson, P.C.*
      Louis P. Georgantas – *Foley Hoag LLP*

J



NEW
YORK
LIFE Investment
Management LLC

NYLIM Retirement Plan Service
690 Canton Street
Westwood, MA 02090
T  781 619-2000  F  781 619-229(

## FINAL NOTICE OF QUALIFICATION
## OF DOMESTIC RELATIONS ORDER

July 8, 2005

BY FIRST CLASS MAIL

David R. Geiger, Esq.
22 Tanglewood Road
Wellesley, MA 02481

Ms. Karen Leeds
8 Vista Road
Wellesley, MA 02481

**RE:     Foley Hoag LLP Money Purchase Pension Plan ("Plan")
Qualified Domestic Relations Order for Karen Leeds and David R. Geiger
(No. 99D-1578-DVI)**

Dear Mr. Geiger/Ms. Leeds:

The Plan Administrator's designee has determined that the domestic relations order ("Order") refe  iced
above, as entered by the Court on March 29, 2005 and as supplemented by separate orders dated Ma    29,
2005 and June 1, 2005, is a qualified domestic relations order as defined in Section 414(p) of the   rnal
Revenue Code.  Outlined below is a summary of the Plan Administrator's designee's understanding of t   the
Order is to be administered.

   ➤ *Name and Address of Participant and Alternate Payee -*

   Participant:          David R. Geiger (S.S. #1  .●        . . .)
                          22 Tanglewood Road
                          Wellesley, MA 02481

   Alternate Payee:     Karen Leeds  (S.S. #.            . . . . ）
                          8 Vista Road
                          Wellesley, MA 02481

   ➤ *Amount of Benefit Assigned to Alternate Payee -* The Alternate Payee is awarded $ '      . of
   the Participant's vested account balance under the Plan.  The amount assigned to the Alternat    lyee
   will be subject to applicable gains and losses based on the investment options in which such an    it is
   invested for the period between the date an account is established for the benefit of the Al    iate
   Payee and the date of distribution.

   The Plan Administrator has established a separate account under the Plan in the name    the
   Alternate Payee and in the amount of the benefit assigned to the Alternate Payee     ove.
   Notwithstanding the modification made to Sec. II.B. of the Order entered into Court on Ma    29,
   2005 and in accordance with the Plan's administrative procedures, the amount assigned    the
   Alternate Payee has been segregated from the Participant's vested account on a pro-rata bas    om
   the Participant's investment funds in effect on the date the Alternate Payee's account was esta    led.


Investment
Management LLC

**NYLIM Retirement Plan Servic**
690 Canton Street
Westwood, MA 02090
T 781 619-2000 F 781 619-229

David R. Geiger, Esq.
Ms. Karen Leeds
July 8, 2005
Page 2

> If the parties do not provide clarification with respect to the investment funds from wl    the
> Alternate Payee's account should be established within 30-days of the date of this Notice, the    ›rata
> segregation will remain in effect.

> ➢ **Form of Benefit Payment to Alternate Payee** - The Alternate Payee shall receive the    nefit
> assigned on her behalf in accordance with one of the payment options available to the Partic    nt in
> the Plan as elected by the Alternate Payee; provided, however, that the Alternate Payee may n    elect
> to receive a joint and survivor annuity and name a subsequent spouse as a joint annuitant.

> ➢ **Commencement of Benefit Payment to Alternate Payee** - The Alternate Payee may    t to
> commence distribution of her benefit assigned under the Order at any time after tl    Plan
> Administrator has determined that the Order constitutes a Qualified Domestic Relations    rder
> ("QDRO") within the meaning of Section 414(p) of the Code by filing the appropriate dist    tion
> form with the Plan Administrator; provided, however such date is not later than the "r    ired
> beginning date" as set forth in Section 401(a)(9) of the Internal Revenue Code and the reg    ions
> thereunder.

> ➢ **Death of Alternate Payee and/or Participant** - The death of the Participant will not afl    the
> payment of benefit assigned to the Alternate Payee under the Order.

> If the Alternate Payee dies before her interest has been distributed, the Alternate Payee's ben    will
> be paid in a single-sum cash payment to the beneficiary named by the Alternate Payee.

> ➢ **Participant's Beneficiary Designation** - If it is the Participant's intent to remove his former    ›use
> as his designated beneficiary under the Plan, the Participant must complete a new Ber    :iary
> Designation Form available from *Benefits Complete*® and return it to the address indicated on th    ›rm.
> Please note that a Qualified Domestic Relations Order ("QDRO"), Final Decree of D    rce,
> Settlement Agreement, or other court order does not automatically change the Parti    int's
> designated beneficiary.

If you disagree with any part of this summary, you must request that the Plan Administrator's designee    iew
its findings. Your request for a review must set forth the reasons upon which it is based, and provide an    :her
information you feel would be helpful. Please send in writing all comments and responses to: New Y    Life
*Investment Management, P.O. Box 940, Norwood, MA 02062-0940.*

The Plan Administrator's designee will act upon any request for review it receives and within 30 days will    ›rm
the Participant, the Alternate Payee, and their representatives in writing of its decision.

If a request for review is not received by the Plan Administrator's designee on or before August 7, 20    the
Plan Administrator's designee will administer the Order as outlined above. **Please note that the Alt     ate
Payee may not elect to commence distribution of her account until the date set forth     the
section above entitled "Commencement of Benefit Payment to the Alternate Payee" ar    the
review period noted above has expired.**


Management LLC

**NYLIM Retirement Plan Servic**
690 Canton Street
Westwood, MA 02090
T  781 619-2000  F  781 619-22!

David R. Geiger, Esq.
Ms. Karen Leeds
July 8, 2005
Page 3

Sincerely,

New York Life Investment Management
for the Foley Hoag LLP Money Purchase Pension Plan Administrator

cc:    Frances M. Giordano, Esq. – *White, Inker, Aronson, P.C.*
       Louis P. Georgantas – *Foley Hoag LLP*

i:\fo0105\qdros\qd0305geiger.doc

K



**FOLEY**
**HOAG** LLP
ATTORNEYS AT LAW

Louis P. Georgantas
Boston Office
617.832.1125
lpg@foleyhoag.com

September 16, 2005

David R. Geiger, Esquire
22 Tanglewood Road
Wellesley, MA 02481

Frances M. Giordano, Esquire
White, Inker, Aronson, P.C.
One Washington Mall
Boston, MA 02108

      Re:    Foley Hoag LLP Retirement Plan (the "Plan")
               Proposed Qualified Domestic Relations Order between
               David R. Geiger and Karen Leeds
               (Norfolk Probate and Family Court #99D-1578-DVI)

Dear Mr. Geiger and Ms. Giordano:

      After careful review and upon advice of counsel, Foley Hoag LLP as Plan
Administrator has made a final determination that the domestic relations order (the
"Order") in the above-referenced matter, as entered by the Court on March 29, 2005 and
as supplemented by separate orders dated March 29, 2005 and June 1, 2005, constitutes
a qualified domestic relations order within the meaning of Section 414(p) of the Internal
Revenue Code. In accordance with that determination the Plan Administrator will
proceed as outlined below:

    ➤ **Name and Address of Participant and Alternate Payee —**

      *Participant*:     David R. Geiger
                      22 Tanglewood Road
                      Wellesley, MA  02481
                      Social Security Number:

      *Alternate Payee:*  Karen Leeds
                      8 Vista Road
                      Wellesley, MA· 02481
                      Social Security Number:

Frances M. Giordano, Esquire
David R. Geiger, Esquire
September 16, 2005
Page 2

> **Amount of Benefit Assigned to Alternate Payee** - The Alternate Payee is awarded $            from the Participant's total vested account balance. This amount shall be adjusted for income, expenses and investment gains and losses from the period an account is established in the Alternate Payee's name until the date of distribution.

  The Plan Administrator shall establish a separate account under the Plan in the name of the Alternate Payee and in the amount of the benefit assigned to the Alternate Payee above. The amount assigned to the Alternate Payee will be liquidated from the Participant's vested account on a pro rata basis from the Participant's current investment elections and will be deposited in cash in a money market account subject to any subsequent investment direction by the Alternate Payee.

> **Investment Options** - The Alternate Payee may change the investment of her assigned benefit and invest said benefit in any of the investment options offered under the Plan by instructing the Plan Administrator in writing.

> **Form of Benefit Payment to the Alternate Payee** - The Alternate Payee may elect to roll over her assigned benefit to an Individual Retirement Account ("IRA") by providing the necessary information on a form provided by the Plan Administrator.

> **Death of the Alternate Payee and/or the Participant** - The death of the Participant will not affect the payment of benefit assigned to the Alternate Payee.

  If the Alternate Payee dies before her interest has been distributed, the Alternate Payee's benefit will be paid in a single-sum cash payment to the beneficiary named by the Alternate Payee, or in the absence of a valid designation of beneficiary form, the Alternate Payee's benefit will be paid in a single-sum cash payment to the Alternate Payee's estate.

Sincerely,

Louis P. Georgantas

LPG:t

L


Investment
Management LLC

**NYLIM Retirement Plan Service**
690 Canton Street
Westwood, MA 02090
T 781 619 2000 F 781 619 229

September 23, 2005

BY FIRST CLASS MAIL

David R. Geiger, Esq.
22 Tanglewood Road
Wellesley, MA 02481

Ms. Karen Leeds
8 Vista Road
Wellesley, MA 02481

RE:    **Foley Hoag LLP Savings and Retirement Plan ("401(k) Plan")**
       **Foley Hoag LLP Money Purchase Pension Plan ("MP Plan")**
       **Qualified Domestic Relations Orders for Karen Leeds and David R. Geiger (No. 99D-1578**
       **DVI) ("Orders")**

Dear Mr. Geiger/Ms. Leeds:

New York Life Investment Management LLC ("NYLIM") is in receipt of a letter submitted by Attorɪ
Geiger, dated August 12, 2005, which is in response to the Final Notices of Qualification, dated July
2005, issued for the 401(k) Plan and the MP Plan.  In addition, NYLIM is in receipt of a let
submitted by Attorney Giordano, dated September 12, 2005, in response to Attorney Geiger's letɪ
Following careful review of both letters, NYLIM has determined that the Final Notices of Qualificatɪ
issued for the 401(k) Plan and the MP Plan are valid and remain in effect.

NYLIM has notified the Plan Administrator, Foley Hoag LLP, of its determination and is awaitɪ
further direction as to the disposition of the accounts under the 401(k) Plan and the MP Plan.

Sincerely,

Mark S. Niziak, Esq.
Managing Director, ERISA/Consulting Services

cc:    Frances M. Giordano, Esq. – *Ruben and Rudman LLP*
       Louis P. Georgantas – *Foley Hoag LLP*