UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2006 MAY -8  A 11: 09
U.S. DISTRICT COURT
DISTRICT OF MASS.

.................................................

**DAVID R. GEIGER,**

                Plaintiff,

   v.                                                          NO. 05-CA-11893-RWZ

**FOLEY HOAG LLP RETIREMENT
PLAN**, et al.,

                Defendants.

.................................................

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF ORDER

    Plaintiff David R. Geiger ("Mr. Geiger") hereby opposes defendants' Motion for Entry of Order (the "Motion") and requests instead that an order be entered in the form requested in his Plaintiff's Motion for Preliminary Injunction (the "Injunction Motion"), which was <u>allowed</u> by this Court's order of October 21, 2005 (the "Order"); a proposed separate order in that form is attached hereto and incorporated herein as Exhibit A.  As grounds, Mr. Geiger states that--in contrast to his requested relief set forth in Exhibit A--the order proposed by defendants (1) does not conform to the Order, (2) violates the requirements of ERISA and (3) ignores Mr. Geiger's likelihood of success in establishing defendants' pre-existing ERISA violations and his irreparable harm threatened as a result thereof.  In further support of his opposition Mr. Geiger states as follows:

### Facts

    The basic facts of this matter are set forth both in Mr. Geiger's Amended Complaint of September 28, 2005 ("Cmpl."), which was accompanied and verified under oath by an Affidavit

of David R. Geiger ("Geiger Aff."), and in that affidavit. Geiger Aff. ¶¶ 2-5.[1] In the interest of economy, those facts are incorporated herein by reference and will not be repeated.

### Argument

### I. DEFENDANT'S PROPOSED ORDER DOES NOT CONFORM TO THE COURT'S ORDER OF OCTOBER 21, 2005

First, defendants' Motion must be denied because the order they propose does not comply with the Order. By that order, this Court <u>granted</u> as unopposed plaintiff's Injunction Motion, which requested certain specific relief--the relief set forth in Exhibit A hereto--on specific legal grounds, and asked Mr. Geiger to submit a proposed order with defendants' agreement.[2] After being formally served with the Amended Complaint on January 13, 2006 (having already been provided a copy of the Amended Complaint and Injunction Motion and supporting papers on September 28, 2005), and acknowledging notice of the Order, Motion ¶ 9, defendants have not requested that it be vacated or modified, much less done so on any specified legal grounds.

Accordingly, the <u>only</u> appropriate order herein would be one providing the relief requested in the Injunction Motion and hence in Exhibit A hereto. Defendants' Motion does not claim that it provides such relief, nor--for the reasons set forth in Parts II and III, below--does it.[3]

### II. DEFENDANTS' PROPOSED ORDER VIOLATES ERISA

In large part because it does not provide the relief requested by the Injunction Motion, the order defendants propose would violate ERISA in numerous respects. In the interest of

---

[1] Defendants did not submit any additional or contrary evidence with their Motion. See LR. 7.1(B)(1).

[2] The Order also asked Mr. Geiger to submit a $1,000 bond with his proposed order. After conferring with Michael P. Boudett, Esq., defendants' counsel herein, Mr. Geiger understands that defendants waive the bond requirement.

[3] Defendants' Motion also does not contain a certificate of having conferred as required by L.R. 7.1(A)(2). Defendants do note that they sent a copy of their proposed order to Mr. Geiger on or about January 30, 2006 but neglect to mention that he responded by informing them that he was in the midst of drafting an Appeals Court brief in the underlying litigation and would need some time to be able to respond (subsequently, contempt proceedings also arose in the case which required his attention). Defendants then filed their Motion without conferring.

economy, Mr. Geiger relies on and hereby incorporates by reference his Amended Complaint and Plaintiff's Memorandum in Support of Motion for Preliminary Injunction filed September 28, 2005 (the "Injunction Memorandum") as setting forth the requirements of ERISA that are applicable to this matter. The following, however, sets forth some of the principal respects in which defendants' requested order violates that statute:

### A. The Proposed Order Would Unlawfully Alienate Mr. Geiger's Retirement Benefits.

First, defendants' proposed order would unlawfully permit the alienation of Mr. Geiger's retirement benefits before the underlying divorce court orders purportedly requiring this result have been finally determined to be QDROs. The order proposes that Mr. Geiger's retirement funds be "maintained in the name of Karen Leeds as alternate payee," Motion, Ex. A, ¶1 (emphasis added), and that Ms. Leeds exercise joint control with Mr. Geiger over the investment of his funds, id. ¶¶ 3-4.

The fundamental purpose of ERISA, however, as evident from its very title--the Employee Retirement Income Security Act of 1974--is to protect the security of employees'-- here Mr. Geiger's--retirement funds. Moreover, by explicit statutory provisions Congress determined that "the continued well-being and security of millions of employees and their dependents are directly affected" by retirement plans, 29 U.S.C. § 1001(a), and declared it to be national policy to "protect . . . the interests of participants" in such plans," id. § 1001(b).

To achieve these purposes Congress included a number of specific provisions, including that a plan fiduciary such as defendant Foley Hoag LLP "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1) (emphasis added), and "for the exclusive purpose of . . . providing benefits to participants," id. § 1104(a)(1)(A) (emphasis added).

Perhaps most directly relevant to defendants' Motion, the statute requires that "[e]ach pension plan <u>shall</u> provide that benefits provided under the plan <u>may not be assigned or alienated</u>," 29 U.S.C. § 1056(d)(1) (emphasis added), and that this prohibition on alienation "shall apply to the . . . assignment . . . of a right to any benefit payable to a participant pursuant to a domestic relations order," <u>id</u>. § 1056(d)(3)(A). The only exception is "<u>if</u> the order is <u>determined</u> to be a qualified domestic relations order." <u>Id</u>. (emphasis added). Whether the several underlying divorce court orders involving Mr. Geiger's retirement benefits are in fact QDROs constitute several of the principal issues in this action, and will not be "determined" until this action is finally resolved <u>and</u> all applicable appeal or other review periods have expired.

Moreover, the statute expressly provides that while the QDRO status of a divorce court order is being determined by a court or otherwise, the plan shall <u>not</u> transfer any retirement benefits, but shall merely "separately account for the amounts . . . which <u>would have been payable to the alternate payee</u> during such period <u>if</u> the order had been determined to be a qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(H)(i) (emphasis added). Indeed, in their Motion defendants appear to concede that any transfer of funds before such a final determination would violate ERISA: "Federal statutes appear to provide that the State Court Orders may not be enforced while their validity as QDROs is being challenged in a court of competent jurisdiction." Motion, ¶ 6.

Despite this admission, however, by proposing an order sanctioning the transfer of Mr. Geiger's retirement funds <u>to Ms. Leeds' name</u>, and permitting her <u>joint control</u> over his investment of his own retirement funds, defendants would have this Court sanction an unlawful alienation of his retirement benefits and removal of his control over his own retirement security before the underlying divorce court orders, or any of them, have been finally adjudicated to

constitute QDROs.[4] In accordance with the statute, Mr. Geiger has no objection to defendants maintaining an accounting keeping track of which of his funds "would be" transferable to Ms. Leeds "if" the underlying orders are eventually finally determined to constitute QDROs, but not to their actual transfer of his funds and the control thereof as defendants propose.

### B. The Proposed Order Would Fail to Restore Mr. Geiger's Already Unlawfully-Alienated Benefits

For similar reasons, defendants' proposed order would violate ERISA by failing to restore to him his retirement funds which defendants have already unlawfully alienated and the gains he has lost thereby. For one thing, in the case of all of the plans at issue, defendants concede that they have already unlawfully alienated Mr. Geiger's funds by transferring them to Ms. Leeds' name before the QDRO issue has been finally determined. Motion, ¶¶ 7 ("funds held in Ms. Leeds' name"), 12 ("they are under Ms. Leeds' name").

Moreover, defendants admit that in the case of one of the plans, the Foley Hoag LLP Retirement Plan (the "Retirement Plan"), to accomplish their unlawful alienation of Mr. Geiger's benefits to Ms. Leeds defendants affirmatively sold his shares of a variety of mutual funds as accumulated through his investment elections under the plan, i.e., "reduce[d] the investments to cash." Motion, ¶ 12.[5] Accordingly, Mr. Geiger has not only already been deprived of ownership

---

[4] The only rationale defendants suggest for their proposed form of order is that they were "caught between" a contempt proceeding brought by Ms. Leeds in Mr. Geiger's divorce action seeking to enforce the orders entered therein and this action seeking a determination that those orders are not valid QDROs under ERISA, so that "the only way to proceed is to preserve the funds in the Plans in the name of Ms. Leeds." Motion, ¶ 7. The simple answer to defendants' "caught between" argument is that as required by the Supremacy Clause and conceded by defendants themselves, ERISA supersedes any state law orders and expressly provides that they "may not be enforced while their validity as QDROs is being challenged in a court of competent jurisdiction," Motion, ¶ 6 (emphasis added), thus providing a definitive defense to any contempt proceeding. Defendants also offer no logical reason why "the only way to proceed" is to transfer Mr. Geiger's retirement benefits to Ms. Leeds, rather than merely to separately track the proceeds as the statute requires, nor did they offer any rebuttal to the arguments in his Amended Complaint and Injunction Memorandum, endorsed by this Court's Order, that such an alienation is unlawful under ERISA.

[5] On defendants' own statement of the facts, not to mention common sense, their assertion that selling Mr. Geiger's investments was "the only mechanism to transfer the funds to the name of Ms. Leeds," Motion, ¶ 12, is untrue. For

and control of all three of his retirement plans, he has been deprived of the investment gains that his last previous exercise of control over one of the plans would have achieved, as defendants have entirely disregarded his right to control his own retirement funds and instead invested them as defendants arbitrarily chose.

### C. If the Underlying Orders Are Ultimately Found to Be QDROs, Defendants' Proposed Order Would Unlawfully Award the Proposed Alternate Payee Mr. Geiger's Investment Gains on His Retirement Benefits

Further, in the event the underlying divorce court orders are ultimately found to be QDROs, defendants' proposed order would violate ERISA by awarding Ms. Leeds Mr. Geiger's investment gains on his own retirement benefits. Motion, Ex. A, ¶ 1 (Mr. Geiger's funds "to be maintained in the name of Karen Leeds as alternate payee in the following amounts, plus accrued investment gains or losses after December 31, 2005) (emphasis added).

This windfall is completely unauthorized under ERISA and would constitute yet another unlawful alienation by defendants of Mr. Geiger's benefits to Ms. Leeds. Mr. Geiger's benefits under the plans are not in cash or otherwise presently payable but rather consist of investment holdings of shares in a variety of mutual funds to be available to him on retirement[6] (or, with respect to the Retirement Plan, they were in that form before defendants' unlawful sale of Mr. Geiger's securities). Accordingly, his benefits do not accrue interest but rather investment gains (or losses) in the form of ordinary dividends or short- or long-term capital gains.

---

the other two plans defendants somehow managed simply to change the name of the record account holder; moreover, such an administrative measure is commonplace for financial institutions. In any event, defendants offer no explanation why even if for some unfathomable reason they had to sell Mr. Geiger's investments to transfer them to Ms. Leeds--itself an unlawful action as described above--they could not immediately purchase the same number of shares of the same mutual funds in her name so as to preserve Mr. Geiger's investment elections as they did with the two other funds. Defendants' deliberate destruction of Mr. Geiger's investment choice is an even more egregious ERISA violation than their unlawful transfer of record ownership while (at least temporarily) preserving that choice.

[6] Historically, Mr. Geiger maintained a diversified portfolio of stock and bond funds, both foreign and domestic and of large- and small-cap entities.

No provision of ERISA authorizes the alienation of a participant's investment gains to anyone else, whether an alternate payee under a divorce court order or otherwise. Indeed, to the contrary, the statute expressly provides that under certain circumstances if a divorce court order is ultimately determined to be a QDRO, the plan shall pay the separately-accounted-for amounts, "including any interest thereon," to the alternate payee. 29 U.S.C. § 1056(d)(3)(H)(ii) (emphasis added). Notably, the statute does not require the payment of interest, nor specify any rate for the calculation thereof, but merely provides that "any" interest, i.e., any interest that may exist, be paid with the separately-accounted-for principal. Here, under the terms of Mr. Geiger's plans, there is no interest, and no statutory provision permits the alienation of his investment gains.

## III. DEFENDANTS' PROPOSED ORDER IGNORES MR. GEIGER'S LIKEHOOD OF SUCCESS AND HIS THREATENED IRREPARABLE HARM

Finally, defendants' proposed order ignores Mr. Geiger's likelihood of success in proving defendants' pre-existing ERISA violations and his threatened irreparable harm as a result thereof.

As set forth in greater detail in Mr. Geiger's Amended Complaint and Injunction Motion, ERISA requires that before a retirement plan or its administrator may determine that a divorce court order constitutes a QDRO, and hence alienate a participant's retirement benefits pursuant to that order, the plan must: (1) have promulgated reasonable procedures to determine whether such an order is a QDRO, (2) promptly on receipt of such an order send notice thereof to the participant, notify him of the plan's QDRO procedures and afford him an opportunity to be heard concerning whether the order is indeed a QDRO and (3) correctly find the order to meet the Act's specific, and strictly interpreted, definitional requirements for a QDRO.

In this case, on the undisputed evidence, defendants met none of those requirements

before making their QDRO determination, so Mr. Geiger has an exceedingly high likelihood of success herein. On the same undisputed evidence, he is also threatened with irreparable harm in the form of the alienation, loss of investment control over and permanent loss of his retirement benefits, which once lost may not thereafter be able to be restored.

## Conclusion

For all the reasons set forth herein, and in his Amended Complaint and Injunction Memorandum, defendants' Motion should be denied, and the Court should enter an order as set forth in Exhibit A hereto.

Respectfully submitted,

_____
David R. Geiger, pro se
22 Tanglewood Road
Wellesley, MA  02481
(781) 431-1411

Dated: May 8, 2006

## Certificate of Service

I, David R. Geiger, pro se, hereby certify that on this 8th day of May, 2006, I served the foregoing Plaintiff's Opposition to Defendants' Motion for Entry of Order upon all parties by causing a copy of same to be delivered in hand to Michael P. Boudett, Esq., Foley Hoag LLP, 155 Seaport Boulevard, Boston, MA 02210, attorney for defendants.

_____
David R. Geiger