UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

FILE NO. 05-CA-11893-RWZ

| | |
|---|---|
| DAVID R. GEIGER,<br>                Plaintiff,<br><br>vs.<br><br>FOLEY HOAG LLP RETIREMENT PLAN, FOLEY HOAG LLP SAVINGS AND RETIREMENT PLAN, FOLEY HOAG LLP MONEY PURCHASE PENSION PLAN and FOLEY HOAG LLP as administrator of each of the foregoing plans,<br>                Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF REASONS WHY KAREN LEEDS
SHOULD BE PERMITTED TO INTERVENE AND BE HEARD
IN OPPOSITION TO THE PROPOSED ORDER AND
IN SUPPORT OF HER MOTION TO DISMISS**

**INTRODUCTION**

The sole purpose of this vexatious lawsuit is to nullify a final decision of a state divorce court assigning to the wife benefits in the husband's retirement plans. In the seven (7) years the parties' divorce has been pending in the Massachusetts Probate Court, Plaintiff David R. Geiger ["husband"] has waged a war of attrition wherein he has repeatedly burdened Intervener Karen Leeds ["wife"] emotionally and economically with piecemeal litigation, while he has moderated his own legal fees by representing himself and, even when he has had representation, doing much of his own research and writing in any event. Although the husband has had a number of lawyers representing him for varying periods of time over the course of seven years, the writing

style of his pleadings never changes. His pleadings are always characterized by a histrionic tone with <u>too many underlined words.</u>

## PROCEDURAL BACKGROUND

Plaintiff David R. Geiger ["husband"] and Intervener Karen Leeds ["wife"] were divorced by a judgment nisi of divorce entered by a Massachusetts Probate Court on June 7, 2004.[1] Amended Complaint, ¶10. That judgment assigned the wife benefits in the husband's three retirement plans.[2] On March 29, 2005, following a hearing, the Probate Court approved three domestic relations orders as qualified domestic relations orders ["QDROs"] under the Internal Revenue Code and the Employee Retirement Income Security Act of 1974 ["ERISA"], and on May 1, 2005 entered them as final orders of the court.[3] Complaint, ¶11 and exhibits A, B and C. The court retained jurisdiction solely "to amend or modify this Order in order to

---

[1] A judgment nisi becomes a judgment absolute after the expiration of ninety days from the entry thereof. M.G.L. c. 208, §21.

[2] The husband's appeal from the judgment is presently pending in the Massachusetts Appeals Court (Appeals Court No. 2005-P-1300). The appeal has been argued and is presently under advisement. On appeal the husband has challenged the assignment of interests in his retirement plans to the wife on state law grounds. *See*, n. 10, *infra*. The husband's motion for a stay of the judgment pending appeal was denied.

[3] The husband claims that he has appealed the QDROs themselves (in addition to his separate appeal from the divorce judgment). Amended Complaint, ¶29c. The husband filed his notice of appeal before the QDROs were entered on the court's docket. The husband was notified by the court that his notice was premature. *See*, Notice of Nonconforming Appeal dated April 14, 2005, attached as Ex. 1. The husband has never done anything since to prosecute an appeal from the QDROs, including taking appropriate steps to cure the premature filing of his notice of appeal by filing a notice of appeal after the QDROs entered on the docket on May 1, 2005. *See*, docket entries attached as Ex. 2. The wife views the husband's appeal from the QDROs as abandoned.

establish or maintain its qualification as a Qualified Domestic Relations Order as defined above." *Ibid.* The court entered a Supplemental Order on the same date -- March 29, 2005 --, which stated that "the former wife shall not be restrained from investing or 'rolling over' said benefits [set forth in said QDROS]." *Ibid.*

Defendant Plan Administrator Foley Hoag LLP[4] refused to comply with the Supplemental Order directing that the wife be permitted to roll over her benefits.[5] Accordingly, on June 1, 2005, the Probate Court entered a second Order, which stated that the wife "is hereby given leave to roll over her share of the accounts to any other investment vehicle of her choice."[6] Complaint, ¶11 and exhibits A, B and C. The Plan Administrator then refused to comply with this Order, claiming that it first had to make a final determination that the QDROs qualified. The Plan Administrator wrongfully capitulated to the husband's demand that the Administrator make its own determination whether the QDROs met statutory requirements, despite the court's final

---

[4]The husband has been employed as an attorney at this firm since 1981 and has been a partner in the firm since 1989. In 1995, he became head of the firm's entire Litigation Department.

[5]Following entry of the QDROs by the court, Foley Hoag, which had previously approved the QDRO drafted by the wife for the Plan it administered, refused to establish separate accounts for the wife while it embarked on a determination whether the QDRO approved by the court qualified. *See*, letter dated May 5, 2005, Foley Hoag to Attorney Giordano and the husband, attached as Ex. 3. The firm administering the other two plans for Foley Hoag, New York Life Investment Management ["New York Life"], had previously found the QDROs qualified, *see* n. 7 below, but froze the accounts established for the wife, claiming that the March 29 Supplemental Order was ambiguous. *See,* letter dated April 21, 2005, New York Life to Attorney Giordano, attached as Ex. 4.

[6]The Plan administrator, Foley Hoag, and New York Life appeared in the parties' divorce proceeding in answer to complaints for contempt filed against them by the wife.

determination that its orders qualified as QDROs under ERISA and the Internal Revenue Code.[7]
The Plan Administrator issued a Final Notice of Qualification as to one plan on September 16, 2005. Amended Complaint, Ex. K. The husband filed his original complaint, naming that retirement plan and the plan administrator as defendants, three days later, on September 19, 2005. When a Final Notice of Qualification issued as to the other two Plans on September 23, 2005, the husband amended his complaint to add those plans as defendants. Amended Complaint, Ex. L.

The Plan Administrator continued to refuse to comply with the state court orders directing that the wife be permitted to roll over her benefits. The Plan Administrator claims that, because of this pending lawsuit, it is prohibited by law from completing unrestricted transfer of the funds to the wife while "the issue of whether a domestic relations order is a qualified domestic relations order is being determined . . . by a court of competent jurisdiction," citing

---

[7] Although it appears that the husband's law firm is the Plan Administrator of each of the three Plans, administration of two of the Plans was delegated to New York Life. The wife obtained draft QDROs from New York Life, which included a copy of each Plan's Procedures. *See,* letter dated December 23, 2004, New York Life to Karen Leeds as Ex.5. On January 14, 2005, New York Life issued Notices of Qualification of Domestic Relations Orders as to two of the husband's Plans. *See,* Notices dated January 14 attached as Ex. 6. For a period of 3 months, the wife's attorney worked to finalize drafts of the QDROs in collaboration with the Plan Administrator, all with the knowledge and input of the husband, who was copied on everything and given ample opportunity to submit proposed changes. *See,* correspondence attached as Ex. 7. The husband submitted a written objection to *any* orders relating to his retirement plans in advance of the court's hearing on the proposed QDROs. *See,* Defendant's Objections, attached as Ex. 8. Following the hearing and entry of QDROs by the court, the husband for the first time objected on various persnickety procedural grounds that the QDROs had not been properly qualified by the Plan Administrator. A farce thereupon ensued whereby the Plan Administrator undertook to "re-qualify" the QDROs in light of the husband's objections. This process occupied a period of 5 months, during which time the wife's retirement benefits remained frozen and the wife incurred unnecessary attorney's fees responding to inquiries from the Plan Administrator. Once the Plan Administrator once again declared the QDROs qualified, the

ERISA, §206(d)(3)(H)(I) and Internal Revenue Code, §414(p)(7). *See,* letter dated September 28, 2005, from Foley Hoag to Geiger and Attorney Giordano, attached as Ex. 9.

On September 28, 2005, the husband filed a motion for a preliminary injunction, asking that the Defendants be ordered to fully restore to his retirement plans any benefits already assigned to the wife. This relief would directly contravene the Massachusetts divorce judgment. The husband falsely told this court that the Defendants "do not disagree with my interpretation of ERISA's QDRO dispute resolution procedures as set forth in my Amended Complaint and Motion, or disagree with or object to the relief requested in my Motion." *See,* Defendants' Motion For Entry of Order, ¶8; Affidavit of David R. Geiger, ¶4, filed in support of his Motion For Preliminary Injunction. The Defendants, who were not served with process until January 13, 2006, were not aware that the court entered an order dated October 21, 2005, granting the husband's motion "without opposition" until it was brought to their attention by the wife by letter dated December 16, 2005.[8] *See,* Defendants' Motion For Entry of Order, ¶9.

The Defendants have refused the wife's request that they raise in this action obvious defenses such as full faith and credit and instead have taken the position that the wife should find "some agreeable way to preserve the status quo with regard to the retirement plan funds" while this action proceeds forward. *See,* letter dated December 30, 2005, Foley Hoag to Attorney Giordano, attached as Ex. 10. The Defendants have now submitted a Proposed Order For Preliminary Relief to the court which in essence continues the freeze on the retirement accounts established for the wife pending further order of the court. The wife wishes to be heard in

---

husband filed this action.

[8] The wife has received no notice or copies of any of the pleadings filed by the husband.

5

opposition to that Order. This court must first determine whether this action should be dismissed before it can be said that "the issue of whether a domestic relations order is a qualified domestic relations order is being determined . . . by a court of competent jurisdiction." For all the reasons stated herein, including the fact that the orders have already been determined to be valid QDROs by a court of competent jurisdiction, this court should never undertake that determination.

## ARGUMENT

### I. THIS COURT MUST GIVE THE DIVORCE JUDGMENT AND QDROs ENTERED BY A MASSACHUSETTS COURT FULL FAITH AND CREDIT.

Congress amended ERISA in 1984 to eliminate any doubt about a state court's power to assign pension interests in a divorce. The Retirement Equity Act of 1984, Public Law 98-397, 98 Stat. 1433, authorizes state courts to assign pension benefits in divorce actions by means of QDROs. 29 U.S.C.A. §1056(d)(3)(A). *See, Smith v. Estate of Mark Smith,* 248 F.Supp.2d 348, 360 (D.N.J. 2003) (very goal of Act is "to give effect to divorce decrees and related State-court orders that pertain to ERISA-regulated plans). QDROs must meet certain requirements of ERISA, *see,* 29 U.S.C.A. §1056(d)(3)(C), but the particular formula or percentage of benefits assigned is left to the state court.

A Massachusetts Probate Court entered a final judgment of divorce assigning to the wife, in the exercise of the court's statutory authority to make an equitable division of marital assets, benefits in three of the husband's retirement plans. Following entry of the divorce judgment, the state court determined that the QDROs at issue herein are qualified domestic relations orders

---

The wife has followed activity in this action by periodically checking docket entries.

which meet the requirements of ERISA (and the Internal Revenue Code) .[9]

The Massachusetts divorce judgment dividing the parties' marital assets and the final orders determining that the QDROs are "qualified" for ERISA and IRC purposes must be given full faith and credit, including by a federal district court. *Jones v. American Airlines, Inc.,* 57 F.Supp.2d 1224, 1232 (D.Wy. 1999). Federal courts are required to give the same preclusive effects to a state court judgment as it would have in the courts of the state in which it was rendered. *R.G. Financial Corp. v. Vergara-Nunez,* 446 F.3d 178, 182 (1st Cir. 2006). Massachusetts follows the federal rule, followed by a majority of states, that a judgment is final and immediately entitled to res judicata effect, regardless of the fact that an appeal is pending. *O'Brien v. Hanover Insurance Co.,* 427 Mass. 194, 201 (1998); *Campos v. Van Houtum,* 45 Mass. App. Ct. 918, 919 (1998). *See also,* Restatement 2nd on Judgments, §13; Wright & Miller, Federal Practice and Procedure, §107. Under Massachusetts law, claim preclusion applies to claims that were not but could have been litigated in the first case, even if the claimant is prepared to present new evidence or legal theories in the second action. *O'Neill v. City Manager of Cambridge,* 428 Mass. 257, 259 (1998).

The husband had ample opportunity to litigate in the Massachusetts courts all of his

---

[9]Massachusetts state courts have concurrent jurisdiction with the federal court to determine whether a domestic relations order assigning retirement benefits to a nonemployee spouse is a QDRO. *Dudley Associates, Ltd. Profit Sharing and Money Purchase Plans v. Vanguard Group,* 1996 WL 532490 (E.D.Pa. 1996); *Reyher v. Trust Annuity Plan For Pilots of Trans World Airlines, Inc.,* 891 F.Supp. 591, 593 (M.D.Fla. 1995); *Board of Trustees of Laborers Pension Trust v. Levingston,* 816 F.Supp. 1496 (N.D.Cal. 1993); *Oddino v. Oddino,* 16 Cal.4th 67, 73-82, 939 P.2d 1266 (1997). *See also, Anonymous v. Anonymous,* 2001 WL 1622210 (S.D.N.Y. 2001).

objections to the assignment to the wife of benefits in his retirement plans[10], as well as to the QDROs entered by the Massachusetts Probate Court. The court hearing in regard to entry of the QDROs took place after the wife's attorney, with the husband's knowledge and ample opportunity to comment, worked with the Plan Administrator and New York Life over a period of three months to draft acceptable QDROs. *See,* Ex. 7. At the hearing, changes were made by the judge to the QDROs proposed by the wife. The husband could have raised the objections he raises herein at any time up to and including at the hearing. Instead, the husband chose to make an issue of the Plans' procedures only after the court had found the QDROs qualified and entered them as final orders.

The husband will argue that his complaint raises the federal question whether the Plan Administrator violated ERISA in various respects in making his determination that the QDROs meet the requirements of ERISA. A federal court must apply the claim preclusion principles of the state that rendered the judgment, even if a plaintiff seeks to raise a federal question or to vindicate federal constitutional rights. *Cruz v. Melecio,* 204 F.3d 14, 18 (1st Cir. 2000); *Arecibo Radio Corporation v. Commonwealth of Puerto Rico,* 825 F.2d 589, 591 (1st Cir. 1987).

This action should be judged by its true nature. *See, Weiss v. Weiss,* 375 F.Supp.2d 10, 16 (D.Conn. 2005), quoting from *McLaughlin v. Cotner,* 193 F.3d 410, 413 (6th Cir. 1999). The relief the husband seeks is a permanent injunction barring the Plan Administrator from "assigning, transferring. . . or otherwise impairing in any way any interest or benefit of Mr.

---

[10]In his brief filed in support of his appeal from the divorce judgment, the husband makes a one-paragraph argument that the assignment of benefits in his retirement plans to the wife works a "hardship" on him and is based on no contribution by the wife. He makes no argument that the assignment in any respect violates ERISA or any other federal statute.

Geiger under the Plans and to fully restore any such interest or benefits already assigned. . ." to the husband. This relief would directly contravene the Massachusetts judgment of divorce, which assigns to the wife benefits in the husband's retirement plans. The husband also seeks a declaration that the QDROs entered by the Massachusetts court are "not QDROs." Such a declaration would directly contravene the final determination of the Massachusetts court, which found the domestic relations orders qualified.

This court is required to give preclusive effect to the Massachusetts final judgment of divorce assigning to the wife benefits in the husband's retirement Plans and to the QRDOs, entered by the court in order to effectuate that assignment. Full faith and credit requires that the husband's action to have the QDROs declared "not QDROs" and for a permanent injunction requiring that the benefits assigned to the wife pursuant to the parties' divorce judgment be restored to him be dismissed.

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION TO REVIEW FINAL STATE COURT JUDGMENTS.

When a losing party in a state court proceeding files suit in federal court after a final judgment has entered in the state proceeding, complaining of an injury caused by that judgment and in effect seeking review and rejection of the state court's judgment, the *Rooker-Feldman* doctrine bars a federal district court from exercising subject matter jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 (2005). Unless and until reversed or modified, a state court judgment is an effective and conclusive adjudication. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923).

This case is on all fours with *Dudley Associates, Ltd. Profit Sharing and Money Purchase Plans v. Vanguard Group*, 1996 WL 532490 (E.D. Pa. 1996), where a husband sought

9

declaratory and injunctive relief under ERISA (1) to prevent the defendant investment firm, which held plan assets, from complying with a state court judgment characterized as a QDRO and related state court orders, and (2) to compel the defendant to release the plan assets to him. The court correctly observed that it could not accord the husband the relief he was seeking without effectively nullifying the state court judgment and orders, and held that the husband's action was precluded by the *Rooker-Feldman* doctrine. *Ibid.*

The husband can be expected to argue that the Massachusetts proceedings have not "ended," because he has appeals pending. Following the *Exxon Mobil* decision, the First Circuit, in *Federacion de Maestros de Puerto Rico v. Junta de Relactiones del Trabajo de Puerto Rico*, 410 F.3d 17 (2005), "explore[d] what it means for state proceedings to have 'ended'" under the *Rooker-Feldman* doctrine. The court noted that, although in many states including Massachusetts a judgment may carry preclusive effect as soon as it enters, "in most cases" – but not all cases -- the state proceedings have not yet "ended" for *Rooker-Feldman* purposes. *Id.* at 27 n.3. The First Circuit concluded that the test of finality announced by the Supreme Court in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), should be used to determine whether state court proceedings have ended for *Rooker-Feldman* purposes. *Id.* at 26.

One of the situations stated in *Cox Broadcasting* where a judgment would be considered final is where the outcome of further proceedings in the state courts is "preordained." *Id.* at 26. Here, any state litigation regarding the federal question the husband is seeking to litigate herein in regard to the divorce judgment – i.e., whether the assignment of benefits in his retirement plans to the wife violated ERISA – has ended for *Rooker-Feldman* purposes, because the husband has not placed that federal question in issue on his appeal. *See*, n. 10, *supra*. In regard

to the QDROs themselves, state proceedings ended when the husband took no curative action in response to the court's notice that his notice of appeal had been filed prematurely. No court any longer has the power to enlarge the husband's time for filing a notice of appeal, because it has been more than one year from the date of entry of the QDROs. *See,* Mass.R.App.P. 4(c), 14(b). Even if the husband were to be permitted to prosecute his appeal from the QDROs, the appellate courts will not hear the husband's ERISA claims, because he chose not to raise them in the Probate Court. In the Probate Court, the husband took the mistaken position that the question whether an order would constitute a qualified domestic relations order is exclusively a matter for determination by the plan administrator and the federal courts. *See,* Ex. 8 at 6 n. 3. The state proceedings in regard to the QDROs have ended for *Rooker-Feldman* purposes, because failure of the husband's appeal from the QDROs is foreordained.

### III. IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN FROM HEARING THIS DOMESTIC RELATIONS MATTER WHICH HAS ALREADY BEEN EXCESSIVELY LITIGATED BY THE HUSBAND IN THE STATE COURTS.

If this court determines that state proceedings have not ended for *Rooker-Feldman* purposes, this court should exercise its discretion to dismiss this action in favor of the state proceedings. This case presents the extraordinary circumstances which justify abstention in favor of a state court proceeding. *See, Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976); *Moses H. Cone v. Mercury Construction Corp.,* 460 U.S. 1 (1982).

Two of the *Colorado River* factors are of no significance in this case. This is not a proceeding in rem and the federal forum is not significantly less convenient than the state forum.

The third factor weighs very heavily in favor of abstention. The significance of the fact that this action was filed long after the state action must be examined in light of the husband's

11

motivation in filing this action. *Gonzalez v. Cruz*, 926 F.2d 1 (1st Cir. 1991). This garden-variety divorce has been in litigation for *seven* years. At the conclusion of the divorce trial, the judge found that the husband had litigated the case far beyond what circumstances required, that the husband had been relentless in attempting to control all aspects of case, and that the husband's "scorched earth" approach persisted unabated and has caused and is continuing to cause financial and personal harm to the wife and children. *See*, Judgment Nisi of Divorce and Rationale at 36-37, attached as Ex. 11. Because of the husband's "scorched earth" litigation tactics, the wife has incurred about $400,000 in attorney's fees to date, and there is no end in sight. This federal action is yet another in a long line of "vexatious and reactive" proceedings initiated by the husband. *Moses H. Cone, id.*, 460 U.S. at 18 n. 20.

The fourth factor under *Colorado River*, the desirability of avoiding piecemeal litigation, also weighs very heavily in favor of abstention. This is identified as the most important factor in the abstention determination in *Gonzalez v. Cruz, id.* at 5. The husband has deliberately burdened the wife with piecemeal litigation for the past five years in order to wear her down, emotionally and economically. While the divorce was pending, the husband filed an extraordinary number of petitions seeking interlocutory review in the Massachusetts appellate courts (all unsuccessful) and improperly attempted to take a number of direct appeals from temporary orders in the middle of the divorce case (all unsuccessful). In his appeal from the divorce judgment presently pending, the husband has taken the position that his appeal from a modest award of attorney's fees made to the wife in connection with the divorce is not within the scope of that appeal but may be prosecuted by him at some indefinite time in the future. He claims in this proceeding that he still has an appeal pending from the entry of the QDROs, but has taken no steps in the state

court to prosecute that appeal.

One of the two factors under *Moses H. Cone* – the adequacy of the state forum – also weighs in favor of abstention. Massachusetts courts can afford the husband all of the relief he is entitled to.[11] The Plan Administrator is a party in the parties' divorce proceeding. A complaint for contempt is presently pending against the Administrator for his persistent refusal to comply with the Probate Court's order that the wife be permitted to roll over her accounts. The Probate Court retained jurisdiction to amend or modify its Orders in order to establish or maintain their qualification as Qualified Domestic Relations Orders. If the Orders need to be modified for some reason or if they need to be "re-qualified" yet again because of some misstep of the Plan Administrator, the Massachusetts Probate Court is in a position to afford that relief.

In *Reyher v. Trust Annuity Plan For Pilots of Trans World Airlines, Inc.*, 891 F.Supp. 591 (M.D.Fla. 1995)-- an action by a plan participant seeking to prevent any distributions from the defendant plan to his former wife pursuant to a divorce decree – the court deferred to the jurisdiction of the state court and dismissed the husband's action "in observance of comity, and with respect for the states' traditional jurisdiction over matters of domestic relations." *Id.* at 593. The court noted that, although (as in this case) the husband attempted to rest his complaint on alleged violations of ERISA, the true aim of his lawsuit was to prevent any distributions to the wife. *Id.* at 594. The court concluded that the relief the husband was seeking "can and should be afforded by the state court which specifically reserved jurisdiction to review and modify the QDRO it originally issued." *Ibid.*

---

[11] That the husband may be found to have waived some claims by his failure timely to raise them in the state courts is not a reason to permit him to pursue those claims in this court.

13

As in *Reyher v. Trust Annuity Plan For Pilots of Trans World Airlines, Inc*, the husband seeks by this action to overturn the Probate Court's assignment to the wife of benefits in his retirement plans. This court should decline jurisdiction in deference to the jurisdiction of the state courts.

### IV. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE, ONCE QDROs ARE FINALLY APPROVED AS QUALIFIED DOMESTIC RELATIONS ORDERS BY A COURT OF COMPETENT JURISDICTION, PLAN ADMINISTRATORS ARE REQUIRED TO DISTRIBUTE FUND ASSETS IN COMPLIANCE WITH THE TERMS OF THE QDROs, IRRESPECTIVE OF WHETHER THE ADMINISTRATORS DEEM THE DOMESTIC RELATIONS ORDERS TO BE "QUALIFIED."

The crux of the husband's complaint is that the administrator of the Plans, which is his own law firm, failed in various respects to comply with ERISA in making its determination that the QDROs entered in this case are qualified. Once the Massachusetts Probate Court finally determined that the QDROs at issue herein meet the requirements of ERISA and are valid qualified domestic relations orders, the husband's various persnickety complaints regarding the Plan administrator's procedures became moot. *See, Carland v. Metropolitan Life Insurance Co.*, 935 F.2d 114, 1121-22 (10th Cir. 1991) (plan administrator has fiduciary duty to alternate beneficiary to honor qualified domestic relations order); *Board of Trustees of Laborers Pension Trust v. Levingston, supra*, 816 F.Supp. at 1501 (state courts have final authority to determine whether a domestic relations order is a QDRO for purposes of ERISA and to order ERISA plan administrators to distribute fund assets in compliance with the terms of their orders); *Stinner v. Stinner*, 554 A.2d 45, 48-49 (Pa. 1989) (directing enforcement of QDRO despite conclusions of plan administrator it was not qualified). A state court may determine that a domestic relations order is qualified, whether a plan administrator has found the order qualified or not and even in

cases where a plan administrator has made no determination. *See, Metropolitan Life Ins. Co. v. Bigelow,* 283 F.3d 436, 444 (2d Cir. 2002) (would abuse plan administrator's discretion to refuse to treat court order that substantially complies with ERISA requirements as valid QDRO); *Smith v. Estate of Mark Smith, id.* at 359 (plan administrator's receipt of QDRO not required for QDRO's qualification); *Williams v. Williams,* 50 F.Supp.2d 951, 963 (C.D.Ca. 1999) (court not precluded from finding valid QDRO despite plan administrator's failure to follow ERISA's mandates).

## CONCLUSION

Karen Leeds should be permitted to intervene in this action, the goal of which is to eradicate the retirement benefits awarded to her in the parties' divorce, in order to be heard in opposition to the husband's motion for a preliminary injunction and in support of her motion to dismiss. For all of the aforesaid reasons, this action should be dismissed.

Respectfully submitted,

KAREN LEEDS,

By her attorneys,

RUBIN AND RUDMAN, LLP

*/s/ Frances M. Giordano*

By: Frances M. Giordano, BBO #556769
50 Rowes Wharf
Boston, MA 02110
(617) 330-7000