UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

...........................................................
DAVID R. GEIGER,

              Plaintiff,

   v.                                NO. 05-CA-11893-RWZ

FOLEY HOAG LLP RETIREMENT
PLAN, et al.,

              Defendants.
...........................................................



## PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE

Plaintiff David R. Geiger ("Mr. Geiger") hereby opposes the Motion to Intervene as a Defendant under Rule 24 (the "Motion"). As grounds, Mr. Geiger states that the proposed intervenor has failed adequately to allege, much less demonstrate, that (1) her Motion was timely, or (2) her interests will not be adequately represented by defendants. In further support of his opposition, Mr. Geiger states as follows:

### Facts

Mr. Geiger filed this action on September 19, 2005, originally against one of the three defendant pension plans and its administrator alleging defendants' violations of ERISA in numerous respects in purporting to determine that a state divorce court order of March 29, 2005 was a qualified domestic relations order ("QDRO") under ERISA. Cmpl., *passim*. Mr. Geiger sought injunctive and other appropriate relief and alleged that in the absence of this lawsuit the plan intended to assign a substantial portion of his interest in the plan to the proposed intervenor pursuant to the state court order. *Id.*, ¶¶ 24-5, Requested Relief.

After learning of subsequent actions by the other two defendant plans and their

administrator (the same administrator as the first plan), Mr. Geiger on September 28, 2005 filed an amended complaint adding the two additional plans as defendants. Amend. Cmpl. He alleged, and provided sworn testimony in support, that based on the state court order noted above and two other state court orders of the same date, and absent injunctive relief from this Court, the first plan was about to assign a substantial portion of his interest in the plan to the proposed intervenor and the other two plans had already done so. *Id.*, ¶ 31; Geiger Aff. 9/28/05, ¶¶ 4-5. He therefore also filed a motion seeking a preliminary injunction to restrain the plans from any such assignments and to order them to restore to Mr. Geiger all plan benefits, including investment gains thereon, of which he had been unlawfully deprived. Plaintiff's Mo. for Prelim. Inj.

By her own admission, the proposed intervenor was aware of this action by no later than *September 29, 2005*, on which date her counsel received a letter of the previous day from the plans' administrator informing her of the action. Memorandum of Reasons Why Karen Leeds Should Be Permitted to Intervene and Be Heard in Opposition to the Proposed Order and in Support of Her Motion to Dismiss ("Intervenor Memo."), Ex. 9. As of that date she was also aware, both from Mr. Geiger's preliminary injunction papers and defendants' letter, that defendants agreed that ERISA forbade them from assigning any of Mr. Geiger's plan benefits to the proposed intervenor so long as the issue of whether the state court orders were indeed QDROs was pending before this Court. Geiger Aff. 9/28/05, ¶ 4; Intervenor Memo. Ex. 9, second parag. She was also aware that defendants believed that the appropriate course for them under ERISA was to transfer Mr. Geiger's plan benefits that were at issue to the proposed intervenor's name, but that until the state court orders' QDRO status was finally determined, absent agreement by Mr. Geiger and the proposed intervenor his past investment elections would

remain in effect and the proposed intervenor could not withdraw, or roll over to another plan, the benefits transferred to her name. Intervenor Memo. Ex. 9, third to sixth parags. Despite all this knowledge, the proposed intervenor took no action to intervene herein.

On October 21, 2005, this Court *allowed* Mr. Geiger's motion for preliminary injunction, noting the lack of any opposition by defendants. Again, despite her knowledge of this, the proposed intervenor took no action to intervene.

On or about December 16, 2005, the proposed intervenor sent defendants a letter specifically informing them of the preliminary injunction. Intervenor Memo., Ex. 10, fourth parag. Defendants replied that they would seek a form of order from the Court that would be consistent with their interpretation of their ERISA obligations as set forth in their letter of September 28, 2005. *Id.* Again the proposed intervenor took no action to intervene herein.

On January 30, 2006, defendants sent the proposed intervenor a proposed form of order that was consistent with their September 28, 2005 letter. Mo. for Entry of Order, ¶ 11 and Ex. D. The proposed intervenor offered no response, *id.*, ¶ 11, and again took no action to intervene herein.

On April 5, 2006, defendants moved for entry of a specific order on Mr. Geiger's preliminary injunction motion. Mo. for Entry of Order. As twice before promised to the proposed intervenor, their proposed order was consistent with their September 28, 2005 letter. *Id.*, Ex. D. Defendants also again reiterated their belief that ERISA forbade them from assigning any of Mr. Geiger's plan benefits to the proposed intervenor free of restrictions so long as the issue of whether the state court orders were indeed QDROs was pending before this Court. *Id.*, ¶ 6. Again the proposed intervenor took no action to intervene herein.

After Mr. Geiger filed an opposition to defendants' proposed order, and sought an order

consistent with the relief sought in his preliminary injunction motion that had been allowed by this Court, the Court on May 18, 2006 set the issue of the proper form of injunctive relief for a hearing on June 1, 2006. Again the proposed intervenor took no action to intervene.

On May 26, 2006 the Court, pursuant to an assented-to motion, continued the hearing on the form of injunctive relief to June 29, 2006. On June 21, 2006, virtually on the eve of the rescheduled hearing, the proposed intervenor filed her much-belated Motion seeking leave to intervene as a defendant to file a lengthy motion to dismiss this action in its entirety.

In her Motion and memorandum, the prospective intervenor asserted in conclusory form most of the required elements for intervention under Fed.R.Civ.P. 24(a) but did *not*, for obvious reasons, allege that her application was timely. Moreover, in her memorandum, she made no effort affirmatively to *demonstrate* any of these required elements save for the assertion that defendants had not been willing to make one of the arguments she wished to make for dismissal. Intervenor Memo. at 5.

Despite these failings, she seeks to be permitted to intervene to argue that this entire action should be dismissed because the state court has conclusively determined the state court orders at issue to be QDROs and this Court must afford full faith and credit to that determination, the *Rooker-Feldman* doctrine bars subject matter jurisdiction over this action, under the *Colorado River* doctrine the Court should abstain from hearing the action in favor of the state court action and the amended complaint fails to state a claim because defendants are obligated to comply with the purported state court determination that the orders at issue are QDROs.

Defendants herein are three pension plans presumably expert in ERISA as well as their administrator, a large and prestigious law firm which specifically advertises its expertise under the statute, *see, e.g.,* http://www.foleyhoag.com/overview.asp?pID=000320866701;

http://www.foleyhoag.com/attorney.asp?aID=000321005801;

http://www.foleyhoag.com/attorney.asp?aID=000321101001. Defendants also operate with the assistance of another ERISA professional, New York Life Investment Management LLC and its NYLIM Retirement Plan Services. *E.g.*, Motion, Exs. 4-6, 9 (third parag.). The proposed intervenor is represented by yet another substantial law firm. *See generally*, Motion, Intervenor Memo.

By contrast, Mr. Geiger is not an expert in ERISA matters. He is a working single parent who is responsible for caring for his two children approximately half the time, maintaining his household fulltime and working as close to fulltime as he can. Under the best of circumstances, his "spare" time to deal with personal matters such as this action consists of a few hours on Saturdays. Verification. As a result of the proposed intervenor's persistent litigation in the state court action, the ordinary expenses of Mr. Geiger and his children exceed his income by a large margin, and he therefore cannot afford representation by counsel either in that action or herein. *Id.* As a result, he is proceeding pro se, without the assistance of the attorneys, paralegals and secretaries available to the other parties. *Id.* Accordingly, every time he is required to respond to a court filing such as the proposed intervenor's Motion (or, if intervention were permitted, her lengthy motion to dismiss) he can do so only by defaulting on his responsibilities to his children, fiancée and job for a considerable period of time. *Id.*

### Argument

### I. THE PROPOSED INTERVENOR HAS NOT EVEN ALLEGED, MUCH LESS DEMONSTRATED, THAT HER MOTION WAS TIMELY FILED

#### A. The Proposed Intervenor's Failure Even to Allege Timeliness Bars Her Motion

The very first requirement of Rule 24(a), under which the proposed intervenor claims her entitlement to proceed, is that any application for intervention be "timely." Fed.R.Civ.P. 24(a).

Moreover, Rule 24(c) expressly requires that a person desiring to intervene serve a motion, which "*shall* state the grounds therefor." Fed.R.Civ.P. 24(c) (emphasis added); *accord*, Fed.R.Civ.P. 7(b) ("[a]n application to the court for an order shall be made by motion which . . . *shall* state with particularity the grounds therefor") (emphasis added). As is clear from the foregoing, "[t]he language of the rule is mandatory, not permissive." *Public Citizen* v. *Liggett Group, Inc.*, 858 F.2d 775, 783-4 (1st Cir. 1988).

Here, the proposed intervenor's Motion does not even *allege* as one of its grounds that it is timely. Motion; *see also* Intervenor Memo. This failure to allege an essential element of Rule 24(a) intervention is alone fatal to the Motion.

### B. The Proposed Intervenor Has Not *Demonstrated* Timeliness

In addition to her failure even to allege timeliness, as the party seeking intervention the proposed intervenor has the burden of *demonstrating* her entitlement to it, including her Motion's timeliness. *United States* v. *Texas Eastern Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991); *Public Service Co. of New Hampshire* v. *Patch*, 136 F.3d 197, 204 (1st Cir. 1998) ("party that desires to intervene . . . must satisfy four conjunctive prerequisites . . . [including] a timely application"). Having failed even to allege timeliness, the proposed intervenor manifestly has not demonstrated it. Accordingly, her Motion must be denied for that reason as well.

Nor, even if she had essayed such a demonstration, could the proposed intervenor have succeeded. In the First Circuit, "[t]imeliness stands as a sentinel at the gates whenever intervention is requested and opposed," and the court has "made it pellucidly clear that Rule 24's timeliness requirement is of great importance." *Banco Popular de Puerto Rico* v. *Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992). Overall, "[t]here is no bright-line rule," and timeliness is determined by "the totality of the relevant circumstances." *Id.* At the very least, the court must

consider "the length of time the applicant knew or reasonably should have known that its interest was imperilled [sic] before it moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to the applicant if intervention is denied; and (4) idio[syn]cratic circumstances which, fairly viewed, militate for or against intervention." *Id.* at 1231.

### 1. The Prospective Intervenor Has Long Known Her Interests Could Be Imperiled by This Litigation

Here, all four factors cut sharply against premitting intervention. The prospective intervenor has been aware of this action for approximately *nine months*, *i.e.*, since September 29, 2005. At all times since then she has equally been aware that defendants agreed with Mr. Geiger that under ERISA they could not assign his benefits to the proposed intervenor outright, though they believed they could transfer the benefits to her name while maintaining Mr. Geiger's prior investment elections (or other subsequent elections to which he and the proposed intervenor agreed). Yet she did not move to intervene to assert, as she now belatedly wishes to, that this entire action should be dismissed so that the plan benefits could be transferred to her.

Moreover, the prospective intervenor has been aware for approximately *eight months* that defendants did not oppose Mr. Geiger's requested preliminary injunction; even if she believed they did not have any obligation to do so until they were formally served on January 13, 2006, she has still known for the approximately five months since then that they did not oppose the motion or move to dismiss the action. Yet now, *long after the normal deadlines to oppose the preliminary injunction motion*, L.R. 7.1(B)(2) (fourteen days from service of motion), *or move to dismiss the entire action*, Fed.R.Civ.P. 12(a)(1)(A) (twenty days from service of complaint), she belatedly seeks leave to intervene to do both.

In the face of such grossly dilatory conduct, the proposed intervenor could never sustain

her burden to demonstrate timeliness. *See, e.g., U.S.* v. *One-Sixth Share of James J. Bulger*, 326 F.3d 36, 41-2 (1st Cir. 2003) (failure to file claim in forfeiture proceeding *within ten-day period prescribed by rules* governing same "is sufficient on its own to disqualify [proposed intervenor] from intervention now"); *NAACP* v. *New York*, 413 U.S. 345, 360, 367 (1973) (intervention untimely when filed *seventeen days* after applicants became aware of "strong likelihood" defendant would not contest summary judgment; "it was incumbent upon the appellants, at that stage of the proceedings, to take *immediate* affirmative steps to protect their interests") (emphasis added); *Garrity* v. *Gallen*, 697 F.2d 452, 457 (1st Cir. 1983) (applicants were required to have moved to intervene "at the very latest" "*two months* after . . . their interest [became] crystal clear"); *Banco Popular*, 964 F.2d at 1231 ("[w]e find [applicant's] failure to act for over *three months*, though armed with full knowledge, to be inexpiable").

### 2. Mr. Geiger Will Be Greatly Prejudiced if Intervention is Permitted

Moreover, at least Mr. Geiger, and indeed all existing parties to this action, will be considerably prejudiced by such belated intervention. For one thing, while the proposed intervenor dallied, the parties fully briefed the preliminary injunctive relief issue and then appeared at the recent hearing to have it resolved; indeed, that hearing had been scheduled once previously without any action by the proposed intervenor.

In addition, Mr. Geiger's motion for preliminary injunction was *allowed* long ago and he had not until the recent hearing obtained a formal order giving him some portion of the relief to which that allowance entitled him, including suspension and/or reversal of any assignment of his plan interests pending resolution of this action. Intervention for the purpose of asserting a long-untimely motion to dismiss would potentially strip him entirely of this relief, an extreme form of prejudice. *Garrity*, 697 F.2d at 457 (intervention "would obviously be highly detrimental to"

plaintiffs where "the substantial relief afforded them by [earlier] order would probably be delayed--and, if applicants were successful in their challenge to the order, denied"; "[c]ourts have not hesitated to give great weight to such potential adverse effects in denying leave to intervene").

Further, the immense additional burden on Mr. Geiger, as a time-stressed and insolvent single parent who is proceeding pro se, in having to face litigation by not one, but now *two*, substantial law firms only magnifies the prejudice to him if intervention were permitted. Every additional court filing to which he must respond forces him to default on his obligations to his children, fiancée and job. Permitting intervention would *at least* double his burden and, given the prospective intervenor's resources and appetite for aggressive litigation, likely would increase it still more.

### 3. The Prospective Intervenor Will Suffer No or Minimal Prejudice if Intervention is Denied

Nor would denial of intervention prejudice the prospective intervenor or, at worst, any such prejudice would be slight. For one thing, she would not suffer any prejudice unless, had intervention been allowed, she "would have enjoy[ed] a significant probability of success on the merits." *Banco Popular*, 964 F.2d at 1232 (internal quotations and citation omitted).

Here, although Mr. Geiger has not begun to investigate the prospective intervenor's proposed motion to dismiss, as intervention has not been allowed so as even to permit the motion's filing, *White v. Texas American Bank Galleria, N.A.*, 958 F.2d 80, 83 (5th Cir. 1992) ("until the Appellants received leave to intervene, they were not parties to the suit and, consequently, had no standing to be served or respond to [other parties' filings]"), the motion would appear to be legally baseless, if not entirely frivolous, harassing and in bad faith. The premises of the motion appear to be that the purpose of the present action "is to nullify a final

decision of a state divorce court assigning to the [prospective intervenor] benefits in [Mr. Geiger]'s retirement plans," Intervenor Memo at 1, and that "the state court determined that the QDROs at issue herein are qualified domestic relations orders which meet the requirements of ERISA," *id.* at 6-7.

Both premises are completely false. For one thing, it is Mr. Geiger's recently-argued *state court appeal* that seeks to nullify the property division provisions of the divorce judgment, including as they relate to his pension plan interests; this action merely seeks to establish that the subsequent orders which purport to specifically direct the assignment of certain of those interests pursuant to that judgment are not valid QDROs, so that ERISA prohibits any assignment pursuant to those orders. Moreover, the proposed intervenor points to no state court litigation of the issue whether the state court orders were indeed QDROs[1], nor could she; under the plain language of ERISA (which necessarily controls any state court proceedings under the Supremacy Clause), the state court could not simultaneously enter the orders and determine them to be QDROs, as ERISA prescribes a specific process *after* the entry of such orders--including providing the order to the pension plan, giving the interested parties notice of the plan's receipt of the order and procedures for determining whether it is a QDRO and the plan administrator's initial determination of that issue-- which is a necessary predicate to a determination of that issue by any court. Amend. Cmpl., ¶¶ 18-29.[2]

---

[1] The orders themselves did not purport to make such a determination and indeed recognized that the orders might not be QDROs. Thus the orders stated that they were "intended" to constitute QDROs, *e.g.*, Amended Cmpl., Ex. A, introductory parag., § IV, but that the state court retained jurisdiction to modify the orders if that was necessary to qualify them as QDROs, *e.g.*, *id.* at § IV.

[2] In addition, by ERISA's unambiguous terms the state court could have no jurisdiction to determine that issue, as the statute provides that the federal district courts generally "shall have *exclusive jurisdiction* of civil actions under *this subchapter* brought by . . . a participant [or] beneficiary," 29 U.S.C. § 1132(e)(1) (emphasis added); manifestly, a proceeding to determine whether an order is a QDRO under 29 U.S.C. § 1056 is a "civil action[] under this subchapter." The only exception under § 1132(e)(1) to ERISA's exclusive federal jurisdiction provision is that state courts have concurrent jurisdiction of actions under 29 U.S.C. § 1132(a)(1)(B), which are actions of a purely contractual, plan-enforcement nature, i.e., actions "by a participant or beneficiary . . . to recover benefits due to him

Further, even if the prospective intervenor's proposed motion to dismiss had merit that does not appear on its face, any prejudice from denial of intervention would be non-existent or at most minimal. For one thing, defendants may prevail in defending the validity of the state court orders on the merits under ERISA, thus affording the prospective intervenor precisely the relief she seeks albeit on different grounds. Alternatively, in the worst-case scenario for her (assuming the state court divorce judgment is affirmed after the appellate process), she will need only to obtain new, and this time fully ERISA-compliant, state court assignment orders to obtain her desired result.

### 4. Equitable Factors Strongly Militate Against Intervention

Finally, the only additional relevant circumstance strongly militates against intervention. As noted, this is not a traditional litigation between two substantial parties with strong legal representation. Rather, even *without* intervention this a pro se battle by an overburdened and insolvent single parent with no ERISA expertise on the one hand, against ERISA experts represented by a prestigious law firm on the other. To impose the immense additional burden and stress on Mr. Geiger of having to litigate against an additional Leviathan opponent would be grossly inequitable.

## II. THE PROPOSED INTERVENOR HAS FAILED ADEQUATELY TO ALLEGE, MUCH LESS DEMONSTRATE, THAT HER INTERESTS WILL NOT BE ADEQUATELY REPRESENTED BY DEFENDANTS

Nor has the proposed intervenor, under the circumstances of this case, adequately alleged, much less demonstrated, that her interests will not be adequately represented by defendants. Again, the burden is on her to so demonstrate. *Public Service Co.*, 136 F.3d at 204 ("[p]arty that desires to intervene . . . must satisfy four conjunctive prerequisites . . . [including] a

---

under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." This is not such a case.

satisfactory showing that existing parties inadequately represent its interest").

Indeed, in the present case it is legally *presumed* that defendants' representation will be adequate because their goals and those of the proposed intervenor are the same. *Daggett* v. *Commission on Governmental Ethics and Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999) ("adequate representation is presumed where the goals of the applicants are the same as those of the plaintiff or defendant"); *accord, Narragansett Indian Tribe* v. *Ribo, Inc.*, 868 F.2d 5, 8 (1st Cir. 1989) ("[s]ince the named defendants had 'the same ultimate goal' as appellants, adequacy of representation may fairly be presumed") (citations omitted). That is, both defendants and the intervenor plaintiff wish to establish in this litigation that the state court orders are indeed valid QDROs, defendants to defend the validity of the determination to that effect that they previously made (in the face of Mr. Geiger's vigorous contrary arguments) and the proposed intervenor so she may obtain Mr. Geiger's plan benefits.

In the face of this presumption, the intervenor plaintiff must make "a strong affirmative showing" of inadequate representation, *Public Service Co.*, 136 F.3d at 204 (citation omitted), so that she "ordinarily must demonstrate adversity of interest, collusion, or nonfeasance." *Daggett*, 172 F.3d at 111. Here, the intervenor plaintiff has not adequately alleged *any* of these grounds. Indeed, she has not advanced any actual argument whatsoever on the required inadequate representation element, thus waiving it entirely. Fed.R.Civ.P. 24(c) (motion to intervene "*shall* state the grounds therefor" (emphasis added); *Public Citizen*, 858 F.2d at 783-4 ("[t]he language of [Rule 24(c)] is mandatory, not permissive"); *accord*, Fed.R.Civ.P. 7(b) (all motions "*shall* state with particularity the grounds therefor") (emphasis added).

Further, even if she had preserved the point, the sole hint of inadequacy that she offers is that "[d]efendants have refused the [prospective intervenor]'s request that they raise in this

action obvious defenses such as full faith and credit." Intervenor Memo. at 5. In fact, however, defendants' "use of different arguments as a matter of litigation judgment is *not* inadequate representation per se." *Daggett*, 172 F.3d at 112 (emphasis added). Moreover, for the reasons noted above, the prospective intervenor's suggested argument that the state court made a binding determination that the orders at issue were valid QDROs simultaneously with entering them flies in the face of both the explicit provisions of ERISA and the facts, and is frivolous. Beyond this, the proposed intervenor has simply offered *no* basis for determining that defendants have an "adversity of interest" with her when they have themselves agreed with her that the orders are QDROs, that they are in "collusion" with Mr. Geiger when they have found adversely to him or that they have engaged in any "nonfeasance."[3]

In short, the notion that the defendants, a collection of ERISA plans and their administrator, represented by a large and sophisticated law firm with ERISA expertise and with the aid of additional ERISA professionals, cannot and will not adequately defend (to the extent it can be done) their determination that the state court orders were QDROs under ERISA is utterly unsupported.

---

[3] Even if defendants were to not oppose, or affirmatively support, the requested intervention, this would be of no consequence. *Public Service Co.*, 136 F.3d at 197 ("neither [defendants'] support of and consent to the [applicant's] desire to intervene, nor the [defendants'] insinuations that they, alone, are not up to the task of defending the [order at issue], can strip a federal court of the right and power--indeed, the duty, to make an independent determination as to whether Rule 24(a)(2)'s prerequisites are met"; court finds such prerequisites *not* met).

**Conclusion**

For all the foregoing reasons, therefore, the proposed intervenor's Motion should be denied.

Respectfully submitted,

*/s/ David R. Geiger*

David R. Geiger, pro se
22 Tanglewood Road
Wellesley, MA 02481
(781) 431-1411

Dated: July /0, 2006

Verification

I, David R. Geiger, hereby state, under the pains and penalties of perjury, that the facts set forth herein are true and correct or, to the extent offered upon information and belief, that I believe them to be true and correct.

*/s/ David R. Geiger*

David R. Geiger

Certificate of Service

I, David R. Geiger, pro se, hereby certify that on this /0 day of July, 2006, I served the foregoing Plaintiff's Opposition to Motion to Intervene upon the proposed intervenor and all parties herein by causing a copy of same to be mailed by first-class mail, postage prepaid, to Frances M. Giordano, Esq., Rubin and Rudman LLP, 50 Rowes Wharf, Boston, MA 02110, attorney for the proposed intervenor, and Michael P. Boudett, Esq., Foley Hoag LLP, 155 Seaport Boulevard, Boston, MA 02210, attorney for defendants.

*/s/ David R. Geiger*

David R. Geiger