UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2006 AUG -4  A 10: 11

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| **DAVID R. GEIGER,** | |
| Plaintiff, | |
| v. | NO. 05-CA-11893-RWZ |
| **FOLEY HOAG LLP RETIREMENT PLAN**, et al., | |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR SANCTIONS

Plaintiff David R. Geiger ("Mr. Geiger") hereby opposes the Motion to Dismiss ("Motion") filed by intervenor Karen Leeds ("Intervenor") and requests, pursuant to 28 U.S.C. § 1927, the Court's inherent power and all other applicable law, that he be awarded reasonable attorneys' fees or his other damages incurred for defending against Intervenor's earlier motion to intervene as well as the Motion. As grounds, Mr. Geiger states that the Motion relies completely on Intervenor's false and fraudulent misrepresentation to this Court that the issues in this action have already been adjudicated in state court; in fact, said issues have not and could not have been so adjudicated. Accordingly, the Motion is frivolous, in bad faith and intended to multiply these proceedings unreasonably and vexatiously. In further support of his opposition, Mr. Geiger states as follows:

### Facts

In an amended judgment of divorce entered on August 26, 2004, the Norfolk County Probate and Family Court purported, among other things, to award Intervenor certain of Mr.

Geiger's property, apparently intending to include certain total dollar amounts from three of his pension plans.[1] Mr. Geiger's appeal from that judgment is now pending before the Massachusetts Appeals Court.[2] On March 25, 2005, purportedly acting pursuant to the amended judgment, the state court entered three separate orders (the "Orders"), one with respect to each of the pension plans, which purported to assign certain specific dollar amounts to Intervenor from each of the plans and to direct the plan administrator, not a party to the proceedings, to transfer such interests to her. Amend.Cmpl. ¶11 and Exs. A-C.[3]

As a matter of supreme federal law, ERISA forbids the assignment of any portion of any pension plan participant's benefits to any other person, including pursuant to a state divorce court order, except pursuant to an order meeting the statute's specific requirements for a

---

[1] The amended judgment was riddled with errors and ambiguity in this regard, including naming a non-existent account, not specifying which amounts were to come from which plans and so on.

[2] Among the reasons the property division was unlawful were: (1) the judge should have disqualifed himself for bias or because his impartiality "might reasonably be questioned," SJC Rule 3:09, Canon 3E(1), as prior to trial he had refused to read Mr. Geiger's briefs, affidavits and exhibits, cut off his oral argument, exhibited a hostile tone and body language, issued rulings after Mr. Geiger's counsel had been disqualified even though he invoked his fundamental right to have counsel before further proceedings and shortly before trial learned through the Commission on Judicial Conduct that Mr. Geiger had filed a previously confidential ethics complaint against him and the Commission had determined the complaint alleged facts which, if true, would constitute misconduct; (2) although Mass. Gen.L. ch. 209, § 2 provides married persons may make contracts in the same manner as single persons, and spouses may contract either by express "conversation or agreement," or "tacit agreement," to keep assets outside the marital partnership, *Bak v. Bak*, 24 Mass. App Ct. 608, 621 (1987); *Comins v. Comins*, 33 Mass. App. Ct. 28, 31 (1992), the judge ignored the undisputed testimony of the parties' lifelong agreement, both by express words and conduct, to keep their assets separate; (3) although marriage is a partnership that terminates once "both [parties] cease[] to hold themselves out to the community as a married couple, and there [is] no further marital relationship," and neither ex-spouse may be awarded any portion of the increase in the other's assets accumulating thereafter, *Savides v. Savides*, 400 Mass. 250, 251-2 (1987), the judge divided Mr. Geiger's property acquired after the undisputed date of marital partnership termination; and (4) although any trust providing for payment of income or principal for specified purposes creates a "present, enforceable, equitable right" and must be included in property division, *Comins v. Comins*, 33 Mass. App. Ct. 28, 30-1 (1992), and a purpose of "comfort," *id.*, "comfortable support," *Woodberry v. Bunker*, 359 Mass. 239, 241-2 (1971), or "welfare," *Dana v. Gring*, 374 Mass. 109, 116-7 (1977), requires "maintain[ing] the life beneficiary in accordance with his usual standard of living," *Woodberry*, 359 Mass. at 241-2, the judge excluded two of plaintiff's trusts specifying such a standard, one of which provided for "comfort and welfare," from division.

[3] The Orders recited that they were "entered" on March 29, 2005, *e.g.*, Amend. Cmpl., Ex. A, p. 4, and Mr. Geiger filed a timely appeal from them on April 1, 2005. Proceedings on this appeal are currently in abeyance due to the pendency of the appeal from the underlying judgment, for the reason that reversal of that judgment will also require vacation of the Orders which are based thereon. Mass. R. Dom. Rel. P. 60(b)(5) (providing for relief from judgment or order when "a prior judgment upon which it is based has been reversed or otherwise vacated").

"qualified domestic relations order" ("QDRO"). 29 U.S.C. §1056(d)(1), (d)(3)(A). The statute requires that: (1) pension plans establish reasonable procedures to determine whether divorce court orders are QDROs, *id.* §1056(d)(3)(G)(ii); (2) on receipt of such an order the plan promptly notify the participant both of its receipt and of the plan's procedures for determining whether the order indeed qualifies as a QDRO, *id.* §1056(d)(3)(G)(i)(I); (3) the plan administrator as a fiduciary act solely in the interest of the participant and for the exclusive purpose of providing benefits to him, *id.* §1140(a)(1), and thus resolve any issue as to whether such an order is a QDRO in the participant's favor; and (4) the plan strictly apply the statute's definitional requirements, *id.* §1056(d)(3)(B)-(C), in determining whether such an order is indeed a QDRO. The statute also provides that while the issue of whether such an order is a QDRO is being determined by the plan administrator or any court of competent jurisdiction, the administrator may not assign the benefits to the purported new beneficiary but instead shall merely separately account for the benefits that would be assigned if the order were found to be a QDRO. *Id.* §1056(d)(3)(H).

In the present case, the administrator of the three plans, a defendant herein, failed to comply with *any* of ERISA's requirements set forth above, Amend. Cmpl. ¶¶ 14-29, but nonetheless purported to determine on September 16 and 23, 2005 that the Orders were QDROs, *id.* ¶ 27 and Exs. K-L. Mr. Geiger therefore brought this action against the plans and their administrator under 29 U.S.C. § 1132(a)(2)-(3) to restrain or un-do any unlawful transfer of his pension plan interests and award him damages for any losses suffered thereby. *Amend. Cmpl.,* Count I and Relief Requested.

After ignoring the pendency of this action for approximately nine months, Intervenor belatedly filed a motion to intervene to assert her present Motion. By order of July 17, 2005 this

Court permitted such intervention.

### Argument

Intervenor's Motion is founded in its entirety on her fraudulent misrepresentation to this Court that the state court adjudicated the issue of whether the Orders were indeed QDROs. *E.g.*, Memorandum of Reasons Why Karen Leeds Should Be Permitted to Intervene and Be Heard in Opposition to the Proposed Order and in Support of the Motion to Dismiss ("Interven. Memo."), pp. 3-4 (referring to "the court's final determination that its orders qualified as QDROs under ERISA and the Internal Revenue Code"). In fact, the only action the state court took with respect to the Orders was, as set forth above, simply to *enter* them.

Certainly Intervenor points to no actual litigation in the state court of whether the Orders were QDROs, including any pleadings, discovery, hearing or trial or legal arguments advanced on that issue by either Intervenor or Mr. Geiger. Indeed, Intervenor disingenuously fails to point out that even in opposing the mere *entry* of any proposed orders, Mr. Geiger explicitly stated he was not seeking to litigate the QDRO issue. Interven. Memo., Ex. 8, p. 6 n.3 ("Mr. Geiger does not by these objections address the issue of whether any order that might be issued would constitute a qualified domestic relations order. Under ERISA, that issue is exclusively a matter of federal law for determination by the plan administrator and the federal courts").[4]

Moreover, the state court in entering the Orders did not purport to adjudicate the issue of whether they were QDROs; indeed, the court explicitly recognized that they might not be. Thus the Orders stated that while they were "intended" to constitute QDROs, *e.g.*, Amended Cmpl., Ex. A, introductory parag., § IV, the court retained jurisdiction to modify the Orders if necessary to make them such, *e.g.*, *id.* § IV. Moreover, *Intervenor herself* recognized the court would not

---

[4] Mr. Geiger opposed entry of any orders for lack of service (or timely service) of a motion including copies of the orders proposed, for all the reasons for which the underlying property division judgment was unlawful (*see* n. 2, *supra*) and on various other state law grounds. Interven. Memo., Ex. 8.

be making the QDRO determination, as the form of order that she apparently proposed would have provided that if the Orders were determined by the plan administrator not to constitute QDROs Mr. Geiger was to cooperate in curing this deficiency, Interven. Memo., Ex. 8, pp. 7-8; the court struck this provision on Mr. Geiger's objection that it impaired his rights under ERISA, *id.*; Amended Cmpl., Ex. A, § IV.

Nor, even if it had so intended, *could* the state court have simultaneously entered the Orders and adjudicated them to be QDROs. For one thing, there would be the trivial matter of federal and state due process to contend with, *i.e.*, the absence of any pleading raising the question of whether the Orders were QDROs and an opportunity for Mr. Geiger to be heard on the issue. Moreover, any purported QDRO issue or adjudication would have been premature and unripe until *after* the Orders had actually entered, as it was only then that their terms were established.[5] In addition, the pension plans and plan administrator, which the Orders purported to bind, were not parties when the Orders were entered and would have been indispensable parties to any purported adjudication that the Orders were QDROs. *E.g.*, Mass. R. Dom. Rel. P. 19(a)(b).

Most fundamentally, however, any such purported simultaneous entry of the Orders and determination that they were QDROs would be patently invalid under the Supremacy Clause. As noted above, ERISA unambiguously prescribes a specific process that must occur *after* the entry of any such order--including providing it to the pension plan, giving the plan participant notice of the plan's receipt of the order and the plan's procedures for determining whether the order is a QDRO and the plan administrator's initial determination of that issue-- before the issue may be

---

[5] In the respect noted in the preceding paragraph, and in many others, the Orders did not enter in the same form in which Intervenor proposed they enter.

determined by any court.[6]

## I. THERE IS NO STATE COURT ADJUDICATION THAT THE ORDERS ARE QDROs TO WHICH FULL FAITH AND CREDIT MUST BE GIVEN

Intervenor's first frivolous argument is that this Court must give full faith and credit both to the state court's divorce judgment and to that court's purported adjudication that the Orders "are qualified domestic relations orders which meet the requirements of ERISA (and the Internal Revenue Code)." Interven. Memo. at 6-9. A simple review of the Amended Complaint reveals that this action does not challenge the amended judgment of divorce; that is the subject of Mr. Geiger's appeal which is currently pending in the Massachusetts Appeals Court. Moreover, as discussed above, the state court simply did not adjudicate, nor could it have adjudicated, whether the Orders were QDROs.[7]

---

[6] In addition, by ERISA's unambiguous terms the state court could have no jurisdiction to determine that issue, as the statute provides that the federal district courts have "*exclusive jurisdiction* of *civil actions under this subchapter* brought by . . . a participant [or] beneficiary." 29 U.S.C. § 1132(e)(1) (emphasis added). Manifestly, a proceeding to determine that an order is not (or is) a QDRO under 29 U.S.C. § 1056(d)(3) is a "civil action[] under this subchapter." The only exception to exclusive federal jurisdiction is that state courts have concurrent jurisdiction over actions of a purely contractual, plan-interpretation-and-enforcement nature. 29 U.S.C. § 1132(e)(1) (providing for concurrent jurisdiction over actions under 29 U.S.C. § 1132(a)(1)(B)); 29 U.S.C. § 1132(a)(1)(B) (providing for actions "by a participant or beneficiary . . . to recover benefits due to him under the *terms of his plan*, to enforce his rights under the *terms of the plan*, or to clarify his rights to future benefits under the *terms of the plan*") (emphasis added). An action to determine that an order is not (or is) a QDRO does not seek to interpret or enforce the requirements of the plan but rather the definitional requirements of 29 U.S.C. § 1056(d)(3), and any case purporting to hold to the contrary ignores the unambiguous statutory terms. Indeed, the seminal such case, *Board of Trustees of the Laborers Pension Trust Fund* v. *Levingston*, 816 F. Supp. 1496 (N.D. Cal. 1993), cited by Intervenor, Interven. Memo. at 7 n.9, turned largely on the court's belief that Congress would not have referred in 29 U.S.C. § 1056(d)(3)(H)(i) to the QDRO issue's being determined by "a court of competent jurisdiction" if Congress had intended only the federal district courts to have jurisdiction. 816 F. Supp. at 1499, 1500. Yet that phrase plainly was intended to account for the fact that the issue could be pending before a federal district court, federal Court of Appeal or the United States Supreme Court, as well as the fact that only certain of those courts would be competent tribunals by virtue of possessing personal jurisdiction over the parties. Nor could that general phrase, found in an entirely different part of the statute, be used to contradict or elucidate the unambiguous terms of the specific jurisdictional provision at issue. In any event, this Court need not reach this issue because in the present case, as noted in the text, the state court did not even purport to adjudicate the QDRO issue.

[7] Thus the case relied on by Intervenor, *Jones* v. *American Airlines, Inc.*, 57 F. Supp.2d 1224 (D. Wyo. 1999), is completely inapposite, as in that case the state court *had* purported to adjudicate whether its own orders were QDROs. *Id.* at 1228, 1232. To the extent Intervenor argues that the Orders themselves are final state court orders entitled to full faith and credit by this Court, even in the absence of a purported state court adjudication that such orders are QDROs, this argument would also be frivolous. Any general requirement that federal courts give full faith and credit to final state court adjudications is plainly overridden as to orders purporting to assign interests in

## II. JURISDICTION IS NOT LACKING UNDER THE *ROOKER-FELDMAN* DOCTRINE

Intervenor's next frivolous argument is that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine because state court litigation of "the federal question [Mr. Geiger] is seeking to litigate herein . . . --i.e., whether the assignment of benefits in his retirement plans to the [Intervenor] violated ERISA--has ended" and this Court has no jurisdiction to review that final adjudication. Interven. Memo. at 9-11.

The Supreme Court has indeed recognized that federal district courts do not have appellate jurisdiction so that they may not review the correctness of final state court judgments, e.g., *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); more recently the Court has held that this doctrine applies only when the loser in the state court proceeding did not commence his federal action until after the state court adjudication already became final, *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). Again, however, this doctrine is utterly irrelevant as the state court has not and could not have adjudicated the issue of whether the Orders constituted QDROs.[8]

## III. DISMISSAL FOR REASONS OF "WISE JUDICIAL ADMINISTRATION" UNDER *COLORADO RIVER* WOULD NOT BE PERMITTED

Intervenor's next frivolous argument is that the Court should decline to exercise jurisdiction under the *Colorado River* doctrine. The Supreme Court indeed recognized in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), that in certain instances "involving the contemporaneous exercise of concurrent jurisdictions" by federal and

---

pension plans by the very specific provisions of ERISA discussed at pp. 2-3, above.
[8] Intervenor relies for her *Rooker-Feldman* argument on *Dudley Assoc. Ltd. Profit Sharing and Money Purchase Plans v. Vanguard Group*, 1996 WL 532490 (E.D. Pa.). Interven. Memo. at 9-10. That case was an unreported decision in a lawsuit brought by a criminal fugitive, *id.* at *1 n.1, who failed to address the *Rooker-Feldman* issue after it was raised by the court, *id.* at *2. Even putting aside the complete lack of precedential or even persuasive value of such an unlitigated and unpublished decision, it appears that in that case--in distinct contrast to this action-- the state court *had* purported explicitly to adjudicate whether the order at issue was a QDRO in a proceeding to which the pension plan investment manager was a party. *Id.* at *1.

state courts, "considerations of wise judicial administration" could permit the federal court to dismiss the federal action to allow the state court to resolve the issue. *Id.* at 817 (internal quotes and brackets deleted). But the Court held that the general rule was that "the pendency of an action in the state court is *no* bar to proceedings concerning the same matter in the Federal court," *id.* (emphasis added), it is "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *id.*, the circumstances permitting an exception to this obligation "are considerably more limited than the circumstances appropriate for abstention" and indeed are "exceptional," *id.* at 818.

In any event, the *Colorado River* doctrine, limited as it is, is utterly irrelevant to this case, as there is no pending state court proceeding "concerning the same matter" as this action. *Id.* at 817; *see also id.* at 805-06 (pending federal and state actions both involved federal government's water rights under state and federal law). As already noted, in the present case the state court action did not adjudicate and could not have adjudicated the ERISA issues,[9] hence the only pending appellate proceedings therein also do not and cannot involve that issue.[10]

## IV. THE COMPLAINT STATES A CLAIM FOR RELIEF UNDER ERISA

Intervenor's final frivolous argument is that the complaint fails to state a claim under ERISA because "the Massachusetts Probate Court finally determined that the QDROs at issue herein meet the requirements of ERISA." Interven. Memo. at 14-15. It is unclear how this

---

[9] The case of *Reyher v Trust Annuity Plan for Pilots of Trans World Airlines, Inc.*, 891 F. Supp. 591 (M.D. Fla. 1995), relied on by Intervenor, Interven. Memo. at 13-14, is completely irrelevant to the issues herein. That case involved the question of what right plaintiff should have in his pension plan benefits under a state court order after the plan had been modified to allow lump-sum distributions as well as monthly payments. *Id.* at 592. Thus the question was not of rights under the ERISA statute, including whether the order was a QDRO, but of rights under state "domestic relations law." *Id.* at 592, 593. In fact, the federal court itself determined the QDRO status of the state court order, *id.* at 592 (order "contained all the statutory requirements for a QDRO"), just as Mr. Geiger seeks such a determination of the QDRO issue, among others, by this Court.

[10] Even if the state court action could and did involve an adjudication of whether the Orders were QDROs, the fact that this issue is one of federal law would virtually require this Court to exercise its jurisdiction. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) ("the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction).

- 8 -

argument is distinct from Intervenor's full faith and credit argument, but it is frivolous for at least the same reasons.[11]

### Request for Sanctions

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Moreover, the Court has inherent power to award "an appropriate sanction," including attorneys' fees, against a party or attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-46 (1991).

Here, by Intervening to assert her false, fraudulent and frivolous Motion, Intervenor has caused Mr. Geiger to perform *extensive* unnecessary work researching and opposing both her original motion to intervene to assert the Motion as well as the Motion itself. The latter motion in particular asserted numerous rarely-invoked and abstruse doctrines of federal court jurisdiction which after investigation proved to be utterly irrelevant to this action.[12] Mr. Geiger should therefore be awarded attorneys' fees or his other damages caused by these motions, based on his time reasonably expended at his usual and ordinary hourly rate or any other appropriate damages measure, the amount of such damages to be determined upon subsequent hearing.

---

[11] Indeed, Intervenor's final argument is even more frivolous, as it is hornbook law that on her Fed. R. Civ. P. 12(b)(6) argument the Court is limited to the allegations of Mr. Geiger's Amended Complaint, must draw all reasonable inferences in his favor and may dismiss only if he has no possibility of recovering. *E.g., Nethersole v. Bulger*, 287 F.3d 15, 18 (1st Cir. 2002). Certainly the Amended Complaint does not plead that the state court adjudicated the issue of whether the Orders were QDROs.

[12] Intervenor is well aware that Mr. Geiger has been rendered insolvent by the state court judgment, works a full-time job and is in addition responsible for care of his children approximately half the time; he thus has neither the time to defend himself against Intervenor's litigation nor the resources to hire counsel. Intervenor, by contrast, has to care for her children only approximately half the time and has no need to work or to use her trust resources as they are legally required to be used; hence she has substantial time and resources to pursue aggressive litigation against Mr. Geiger by means of a substantial law firm. Her tactics have included bringing a contempt action to enforce the judgment before it was even final, bringing numerous subsequent contempt actions which were dismissed or abandoned and seeking to expand Mr. Geiger's appeal from the judgment to cover a different judgment after a different trial over different issues. Now she is continuing her harassment of Mr. Geiger in this forum.

## Conclusion

For all the foregoing reasons, therefore, Intervenor's Motion should be denied and Mr. Geiger should be awarded reasonable attorneys' fees or other damages for his opposition to Intervenor's motion to intervene and Motion.

Respectfully submitted,

*/s/ David R. Geiger*

David R. Geiger, pro se
22 Tanglewood Road
Wellesley, MA 02481
(781) 431-1411

Dated: August 4, 2006

### Certificate of Service

I, David R. Geiger, pro se, hereby certify that on this 4th day of August, 2006, I served the foregoing Plaintiff's Opposition to Motion to Dismiss and Request for Sanctions upon all parties herein by causing a copy of same to be mailed by first-class mail, postage prepaid, to Michael P. Boudett, Esq., Foley Hoag LLP, 155 Seaport Boulevard, Boston, MA 02210, attorney for defendants, and Frances M. Giordano, Esq., Rubin and Rudman LLP, 50 Rowes Wharf, Boston, MA 02110, attorney for the Intervenor.

*/s/ David R. Geiger*

David R. Geiger