UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11893-RWZ

KAREN LEEDS, Intervenor Plaintiff

DAVID R. GEIGER, Plaintiff

v.

FOLEY HOAG LLP RETIREMENT PLAN, et al. Defendants

MEMORANDUM OF DECISION AND ORDER

December 20, 2006

ZOBEL, D.J.

Plaintiff David R. Geiger filed this action against Foley Hoag LLP Retirement Plan ("Retirement Plan"), Foley Hoag LLP Savings and Retirement Plan ("Savings Plan"), and Foley Hoag LLP Money Purchase Pension Plan ("Money Plan") (collectively "the Plans").  The one-count complaint also names Foley Hoag LLP ("Foley"), administrator of the Plans, as a defendant.  Geiger is employed by Foley and is a participant in the Plans, which are pension plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

## I. Background

The suit arises out of a divorce proceeding between Geiger and Karen Leeds in Norfolk Probate and Family Court.  In three orders signed on March 29, 2005, and entered on the court's docket on May 13, 2005 ("the Orders"), the Probate Court judge assigned a portion of Geiger's interests in the Plans to Leeds.  Each Order is captioned

"Qualified Domestic Relations Order" ("QDRO") and expressly states that it is "intended to constitute a Qualified Domestic Relations Order." (Geiger's Complaint, Exs. A-C, Docket # 1). Each Order further states that the court "retains jurisdiction to amend or modify this Order in order to establish or maintain its qualification as a Qualified Domestic Relations Order as defined above." (Id.) Qualified status is significant under ERISA because the statute prohibits assignment of benefits "pursuant to a domestic relations order, except . . . if that order is determined to be a qualified domestic relations order." 29 U.S.C. § 1056(d)(1). Following entry of the Orders, the Plans issued in September 2005 Final Notices of Qualification, wherein the Plans notified the parties that they had determined that the Orders did indeed constitute QDROs, and that they thus intended to assign certain benefits to Leeds.

Geiger, in response, sued the Plans and Foley, administrator of one of the plans, for violating ERISA by determining that the Orders were qualified and therefore assigning his interests. He specifically asserts that defendants failed to comply with various provisions of 29 U.S.C. § 1056(d), which set forth requirements with which ERISA plans must comply in determining "the qualified status of domestic relations orders and to administer distributions under such qualified orders." Geiger seeks a declaration that the Orders are not, in fact, QDROs, restoration of any benefits previously assigned to Leeds, and a permanent injunction preventing defendants from assigning his interests in the Plans. (Docket # 1.)

**II. Pending Motion**

Leeds has since joined the action as an intervenor plaintiff and has moved to dismiss (Docket # 17).  First, she seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.  Specifically, Leeds asserts that the court lacks subject matter jurisdiction under the Rooker-Feldman doctrine and under the Full Faith and Credit Clause of the Constitution.  She argues in the alternative that, as a matter of discretion, the court should decline to exercise subject matter jurisdiction over the case under the Colorado River doctrine.  Second, Leeds moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Geiger opposes and in addition requests sanctions against Leeds (Docket # 27).  The Plans and Foley have taken no position on the motion.

## III. Discussion

When deciding a Rule 12(b)(6) motion to dismiss, I accept the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005).  Dismissal is appropriate only if the pleadings show that the non-movant, in this case, Geiger, can prove no set of facts consistent with the complaint under which he would be entitled to relief.  Id. at 6.  Motions to dismiss pursuant to Rule 12(b)(1) are generally subject to the same standard, except that "[i]t is the plaintiff's burden to prove the existence of subject matter jurisdiction," and in addition to the pleadings, "the court may consider whatever evidence has been submitted, such as depositions and exhibits."  See Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996).

In general, the Rooker-Feldman doctrine bars a federal district court from exercising subject matter jurisdiction over a matter where a final judgment has been entered in an earlier state proceeding on the issue sought to be litigated. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923).

Central to the parties' dispute, then, is whether the state court in fact determined that the Orders qualified as QDROs under applicable federal law. Leeds contends that the state court did indeed make this determination and her arguments in favor of dismissal flow therefrom. Geiger's opposition is based entirely on the premise that the state court did not. As explained below, however, the record indicates that the state court did, in fact, rule that its Orders are QDROs within the meaning of ERISA. Because Geiger offers no other challenge to Leeds' motion to dismiss and because federal courts have, on a variety of grounds, declined to re-determine the qualified status of domestic relations orders once such status has been adjudicated by state courts, the motion is allowed.

Geiger first argues that the state court could not have adjudicated the qualified status of the Orders because no litigation on that issue occurred. To the extent that Geiger is correct, it is because he chose not to litigate the issue. In the brief he submitted to the Norfolk Probate Court opposing entry of the Orders, Geiger expressly declined to "address the issue of whether any order that might be issued would constitute a qualified domestic relations order" because "that issue is exclusively a matter of federal law for determination by the plan administrator and the federal courts."

(Leeds' Ex. 8, at 6 n.3.)[1]  In fact, several courts have found exactly the opposite: determination of QDRO status is a matter of concurrent jurisdiction.  See, e.g., Bd. of Trs. of Laborers Pension Fund for Northern Calif. v. Levingston, 816 F. Supp. 1496, 1499 (N.D. Cal. 1993); Anonymous v. Anonymous, No. 01-8438, 2001 WL 1622210, at *2 & n.4 (S.D.N.Y. Dec. 18, 2001); Dudley Assocs., Ltd. v. Vanguard Group, No. 96-4830, 1996 WL 532490, at *2 (E.D. Pa. Sept. 19, 1996).

Nor has Geiger attempted to litigate QDRO status in the state courts in the interim.  The Orders were signed on March 29, 2005, but entered on the docket in May 2005.  The state court docket indicates that Geiger filed an appeal from the Orders on April 1, 2005, but that appeal was rejected as untimely because judgment had not yet been entered.  (Leeds' Exs. 1-2.)  It is thus inaccurate for Geiger to state that "[p]roceedings on this appeal [i.e., the appeal from the QDROs] are currently in abeyance due to the pendency of the appeal from the underlying judgment, for the reason that reversal of that judgment will also require vacation of the Orders which are based thereon." (Geiger's Opp. 2 n.3).  While reversal of the underlying divorce judgment might have that effect, the reason the appeal from the QDROs has not proceeded is because it was premature when filed.  Leeds asserts, and Geiger does not deny, that he has filed no further appeal of the QDRO since judgment was entered

---

[1] The record also indicates that Geiger chose not to raise the issue of qualified status before Probate Court, even though the parties engaged in extensive correspondence concerning drafts of the Orders, and even though counsel for Leeds gave Geiger ample opportunity to comment upon the Orders. (Leeds' Ex. 7.)  At no point during this correspondence or before the Probate Court did Geiger challenge the qualified status of the Orders under ERISA.

in May 2005.  Nor has Geiger challenged the qualified status of the Orders under federal law in his appeal from the divorce judgment.  In other words, Geiger has chosen not to litigate QDRO status in the state courts at all.  That he failed to raise the issue, however, does not mean that the state court could not have decided it.  In fact, the Appeals Court for the Commonwealth has, on October 24, 2006, affirmed the judgment of divorce and the several financial orders contained within it.

     Geiger also contends that the state court expressly declined to determine whether the Orders were QDROs.  He seizes upon language in the Orders stating that the Orders were "intended to constitute" QDROs and notes that the court retained jurisdiction to modify the Orders, if necessary, to "establish or maintain its qualification as a Qualified Domestic Relations Order."  (Am. Compl. Exs. A-C.)  This language, contrary to Geiger's contention, does not indicate that the state court declined to determine whether or not the Orders were QDROs.  In fact, it indicates the opposite: the state court viewed the Orders as QDROs, sought to make clear their status as such, and was dedicated to maintaining their status as such in the future.  This intent may also be discerned from the caption of each Order, which states, in bold font and all capital letters, "Qualified Domestic Relations Order."  In addition, the Supplemental Order, also signed March 29, 2005, refers to the Orders as "Qualified Domestic Relations Orders."

     It is not clear precisely what language Geiger believes a state court ought to employ when adjudicating the qualified status of a domestic relations order, but state courts using precisely the language used by the Probate Court in this case have

6

previously been found to have adjudicated QDRO status. See Reyher v. Trust Annuity Plan for Pilots of Trans World Airlines, Inc., 891 F. Supp. 591, 592-93 (M.D. Fla. 1995) (where state court order stated that it was "intended to be a QDRO" and also reserved jurisdiction to establish and maintain qualified status in the future, state court had adjudicated qualified status for ERISA purposes); see also Dudley Assocs., 1996 WL 532490, at *2 (state court adjudicated QDRO status by "enter[ing] a judgment characterized as a [QDRO]"). The state court here clearly intended to, and did, determine that the Orders were QDROs under ERISA.

      Geiger next argues that even if the state court purported to engage in a determination of qualified status, it could not as a matter of law have conducted such an adjudication because of the absence of due process. The record and the correspondence between the parties prior to March 29, 2005, however, reveals, that Geiger had ample notice and plenty of opportunity to marshal any objections he might have had to the determination of qualified status. Geiger knew that Leeds was submitting draft QDROs to the court and that the court wished to enter them as such. Any objections he wished to make to the status of the QDROs should have been brought before the state court. And any objections he had to the Probate Court's determination or the procedures it followed could and should have been appealed to the state appellate courts. See Dudley Assocs., 1996 WL 532490, at *2 (dismissing husband's action challenging qualified status of domestic relations orders and noting that "[i]f [he] wished to challenge the state court orders as violative of ERISA, he should have done so through the state courts and ultimately to the U.S. Supreme Court"). The

opinion of the Appeals Court does not specifically address the QDROs, but, by definition, its affirmance of the judgment below clearly encompasses these Orders.

Finally, Geiger contends that, under ERISA, the state court could not have adjudicated the qualified status of the Orders before the Plans engaged in their own determinations. Courts, however, have previously rejected this argument. See, e.g., Metropolitan Life Ins. Co. v. Bigelow, 283 F.3d 436, 442 (2d Cir. 2002) (rejecting contention that to constitute a QDRO, plans were required to make determination of qualified status before court did so).

I therefore accept that the state court made a determination that the Orders were QDROs within the meaning of ERISA. As Leeds notes, numerous federal courts have declined to exercise jurisdiction over the question of qualified status in such circumstances. See, e.g., Dudley Assocs., 1996 WL 532490, at *2; Reyher, 891 F. Supp. at 593. Because QDRO status was determined by the state court and because that court retained ongoing jurisdiction to resolve all disputes as to qualified status, I, too, decline to exercise jurisdiction and accordingly dismiss under the Rooker-Feldman doctrine and Fed. R. Civ. P. 12(b)(1).

Leeds' motion to dismiss (Docket #17) is allowed. Geiger's request for sanctions (Docket # 27) is denied. Judgment may be entered dismissing the complaint.

___December 20, 2006___                              _____/s/Rya W. Zobel_____

DATE                                                              RYA W. ZOBEL
                                                          UNITED STATES DISTRICT JUDGE