**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2007 FEB 15 P 3: 49

U.S. DISTRICT COURT
DISTRICT OF MASS.

.......................................................................
|
**DAVID R. GEIGER,**                           |
|
Plaintiff,                  |
|
v.                         |          **No. 05-CA-11893-RWZ**
|
**FOLEY HOAG LLP RETIREMENT**                  |
**PLAN**, et al.,                              |
|
Defendants.  |
.......................................................................

### PLAINTIFF'S VERIFIED OPPOSITION TO
### INTERVENOR'S MOTION FOR ATTORNEYS' FEES

Plaintiff David R. Geiger ("Mr. Geiger") hereby opposes the Intervenor Plaintiff [*sic*]'s

Motion for Attorney's Fees Pursuant to ERISA ("Motion") filed by intervenor Karen Leeds

("Intervenor").[1] As grounds, Mr. Geiger states that: (1) the Motion is barred as untimely by

Fed.R.Civ.P. 54(d)(2)(B); (2) under a proper interpretation ERISA permits an award of fees

against a losing plaintiff only when his action was frivolous, unreasonable or without foundation,

which as a matter of law Mr. Geiger's action was not; (3) even under Intervenor's proposed five-

factor test an award of fees would be improper; and (4) many of the fees claimed by Intervenor

are not lawfully recoverable, or would require discovery and possibly an evidentiary hearing as

provided by Fed.R.Civ.P. 54(d)(2)(C).

### Argument

## I. THE MOTION IS BARRED AS UNTIMELY BY FED.R.CIV.P. 54(d)(2)(B)

First, the Motion is barred by the explicit terms of Fed.R.Civ.P. 54(d)(2)(B). Under that

---

[1] In the caption of her motion intervenor mistakenly characterizes herself as an intervenor plaintiff. In fact, she is an intervenor *defendant*, as she intervened for the express purpose of filing a motion to dismiss the complaint.

rule, a motion for attorney's fees "*must* be filed *no later than* 14 days after entry of judgment."

(emphasis added). Here, judgment was entered on December 20, 2006. Hence under Rule 54,

the latest the Motion could timely have been filed was on January 3, 2007. The Motion was

actually filed on January 26, 2007, more than three weeks later. The Motion thus must be denied

as untimely, and this court should proceed no further. Fed.R.Civ.P. 54(d)(2)(B); *Bender v.*

*Freed*, 436 F.3d 747 (7th Cir. 2006 (district court properly held defendant's motion for fees filed

after Rule 54(d)(2)(B) deadline was untimely; indeed, even if all parties were "well aware"

defendant would eventually seek fees, that "does not excuse noncompliance with the applicable

procedural rules").

## II. PROPERLY INTERPRETED, ERISA PERMITS AN AWARD OF FEES AGAINST A LOSING PLAINTIFF ONLY WHEN HIS ACTION WAS FRIVOLOUS, WHICH THIS ACTION WAS NOT

Properly interpreted, ERISA permits an award of attorneys' fees against a losing plaintiff

only when his lawsuit is "frivolous, unreasonable, or without foundation." *See Christiansburg*

*Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). In *Christiansburg*, the Supreme Court was

faced with defining the standard for a fee award against a losing plaintiff under the Civil Rights

Act of 1964, which provided only that "the court, in its discretion, *may* allow the prevailing party

. . . a reasonable attorney's fee." *Id.* at 414 (emphasis supplied). The court held that under that

provision fees could be awarded only if "the plaintiff's action was frivolous, unreasonable, or

without foundation," *id.* at 421, as otherwise plaintiffs would be deterred from bringing "all but

the most airtight claims," *id.* at 422, which would improperly "undercut the efforts of Congress

to promote the vigorous enforcement" of the statute by creating a right of action thereunder, *id.*[2]

---

[2] Somewhat similarly, the Supreme Court recently was called upon to interpret the standard for awarding fees against a party who unsuccessfully attempted to invoke federal jurisdiction under the federal removal statute, which provides that upon ordering remand of a removed case back to state court the federal court "may require payment of . . . attorney fees, incurred as a result of the removal." *Martin v. Franklin Capital Corp.*, ___ U.S. ___, ___ (2005).

Although the First Circuit in *Gray v. New England Tel. and Tel. Co.*, 792 F.2d 251 (1st

Cir. 1986), applied the five-factor test relied upon by Intervenor in assessing whether to award

fees against a losing plaintiff, the court only did so by default after rejecting the prevailing

defendant's argument that the court should apply a presumption in *favor* of awarding fees. 792

F.2d at 258 (rejecting defendant's argument that it "shall" be entitled to fees unless the court

specifically finds plaintiff's position "was substantially justified or that special circumstances

make an award unjust"). To Mr. Geiger's knowledge, neither the Supreme Court nor the First

Circuit has had occasion to address his argument that ERISA in fact requires a strong

presumption *against* the award of fees against a losing plaintiff, in accordance with the standard

articulated by *Christiansburg*, and indeed such a result is required by the reasoning of that case.[3]

Under that standard, the Motion must be denied as a matter of law, as Mr. Geiger's action

was not frivolous. In fact, it is *meritorious*, and the court's contrary ruling in dismissing the

action was error. The court dismissed the case under the *Rooker-Feldman* doctrine, holding that

the state court in Mr. Geiger's divorce action had determined that the divorce court orders at

issue in this case were qualified domestic relations orders ("QDRO"s) under ERISA so that this

court--a court of original rather than appellate jurisdiction--lacked subject matter jurisdiction to

review that ruling. Memorandum of Decision and Order, 12/20/06 ("Order"), p. 8.

But in a case that Intervenor herself cited to the court, the Supreme Court has explicitly

held that *Rooker-Feldman* applies only where "the losing party in state court filed suit in federal

court *after the state proceedings ended.*" *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,

544 U.S. 280, ___; 125 S.Ct. 1517, 1526 (2005) (emphasis added). Here, the state court action

---

Again noting that a ready award of fees would discourage a party from invoking its federal rights "in all but obvious cases," *id.* at ___ , the court held an award was improper unless the unsuccessful removal claimant "lacked an objectively reasonable basis for seeking removal," *id.* at ___.

[3] The recent *Martin* case would also require a similar result. *See* n. 2, *supra.*

ended only two weeks ago with the Supreme Judicial Court's denial of further appellate review, and Mr. Geiger filed this suit long before that (and indeed shortly after the defendant plans' adverse QDRO determinations which he challenged herein). Thus Mr. Geiger's lawsuit as a matter of law does *not* fail for lack of subject matter jurisdiction. Certainly, even if for some reason *Exxon Mobil* were not binding here, that precedent would at the very least render Mr. Geiger's action not frivolous or without foundation.

Moreover, even if, contrary to the holding of *Exxon Mobil*, the *Rooker-Feldman* doctrine could apply, such application would require that the issue of whether the divorce court orders were QDROs in fact have been properly submitted to and determined by the divorce court. On that issue, the court itself conceded that *Mr. Geiger* did not submit that issue to the state court. Order at 4, 6. Nor did the court cite any motion in which *Intervenor* submitted that issue, and the court could not as no such motion exists. Again, the absence of any such actual divorce court litigation means Mr. Geiger's present lawsuit does *not* fail for lack of subject matter jurisdiction; at the very least, however, Mr. Geiger's assertion of jurisdiction in light of the absence of such affirmative state court litigation means his action is not frivolous.

Further, the court's apparent conclusion that the state court entered its orders, in a form in which they had not been proposed by any party, and *simultaneously* determined them to be QDROs, Order at 6, is similarly erroneous. In addition to the lack of any motion raising the issue whether the orders as actually entered were QDROs, and the lack of any reasonable advance notice and opportunity to be heard on such a motion, the issue of whether the orders were QDROs was not even ripe until *after* the orders were entered, a matter which this court simply failed to address in its Order. [4] Further, to be binding any such determination would

---

[4] This court cited no legal basis for its assertion that the fact that the parties did not raise an issue "does not mean that the state court could not have decided it." *Id.* at 6.

- 4 -

plainly have required the joinder of the plans and administrators to whom the state court orders were directed, *see, e.g.,* Mass. R. Dom. Rel. P. 19(a)(b), yet those entities were not parties to the divorce court proceeding here, another matter which the court failed to address.[5] These numerous reasons why the mere entry of the orders could not be a simultaneous adjudication of their QDRO status further establish that this lawsuit does *not* actually fail for lack of subject matter jurisdiction; at the very least, however, Mr. Geiger's assertion of such jurisdiction in light of these failings in the state court litigation means this action is not frivolous.

Further, ERISA itself--and hence, with respect to a state court, the Supremacy Clause--precludes any court from determining the QDRO status of an order at least until the plan administrator has had an opportunity to make that determination. The plain language of the statute prescribes a specific process that must occur *after* the entry of any such order--including providing it to the pension plan, giving the plan participant notice of the plan's receipt of the order and the plan's procedures for determining whether the order is a QDRO and the plan administrator's initial determination of that issue--before the issue may be determined by any court. Nor does the authority relied upon by this court in concluding otherwise, Order at 8, in fact support a contrary ruling. Rather, the court in *Metropolitan Life Ins. Co., v. Bigelow*, 283 436 (2d Cir. 2002), merely held that if the QDRO qualification issue *was* submitted to the plan administrator, and if the administrator expressly determined that it *could not decide* and hence commenced an interpleader action (notably, in *federal* court) seeking a judicial determination of the issue, then the court could proceed, as no purpose would be served by ordering an administrator that had already determined it could not decide to do so. *Id.* at 442 (such an

---

[5] Notably, in the lead case cited by the court for the proposition that a state court has concurrent jurisdiction to determine whether divorce court orders are QDROs, the pension plan that was to be bound by such determination *was* a party to the state court proceeding. *Board of Trustees of Laborers Pension Trust Fund v. Levingston*, 816 F.Supp. 1496, 1497 (N.D.Cal. 1993).

- 5 -

exercise "would exalt form over substance"). As nothing in *Bigelow* justifies this court's ignoring ERISA's clear command in the circumstances of this case, this lawsuit does *not* fail for lack of subject matter jurisdiction; at the very least, however, Mr. Geiger's assertion of such jurisdiction in light of the statute's express language means this action is not frivolous.

Further, the state court *could not* properly have decided the QDRO qualification issue, even if the issue had affirmatively been submitted and the court had purported to resolve it, because under ERISA's unambiguous language any such determination is within the exclusive jurisdiction of the federal courts. Thus 29 U.S.C. § 1132(e)(1) provides that the federal courts have "exclusive jurisdiction of civil actions under this subchapter brought by . . . a participant [or] beneficiary," except for actions "to recover benefits due to him under the *terms of his plan*, to enforce his rights under the *terms of the plan*, or to clarify his rights to future benefits under the *terms of the plan*." (emphasis added). Any litigation to determine that the orders were not (or were) QDROs under 29 U.S.C. § 1056(d)(3) was unequivocally a "civil action[] under this subchapter," and did not seek enforcement or interpretation of "the terms of the plan." Although there is contrary authority that was cited by the court, *see* Order at 5, those cases fly in the face of the statutory language and, in any event, the issue is at least an open one in this court, having never been addressed by either the Supreme Court or First Circuit. Moreover, the United States Department of Labor, the federal agency charged with enforcing ERISA, has *itself* supported Mr. Geiger's position. *See Oddino v. Oddino*, 16 Cal.4th 67, 73 (1997) (citing department's amicus brief). Thus under the statute's express terms, this lawsuit does *not* fail for lack of subject matter jurisdiction; at the very least, however, Mr. Geiger's assertion of such jurisdiction in light of the statutory language--and lack of binding precedent--means this action is not frivolous.

Finally, even if the issue properly could have been, and was, determined by the state

- 6 -

court, under long-established Supreme Court authority that determination would *not* be a bar to Mr. Geiger's federal action, as *he had made clear to the state court that he did not wish to adjudicate his federal claims in the state court but would adjudicate them in this court.* Having set forth that reservation in the state court, Mr. Geiger had an absolute *right* to have his federal claims heard by this court. *England v. Louisiana State Bd. Of Med. Examiners*, 375 U.S. 411, 421-22 (1964) (while such an express reservation of federal claims for federal court is not required, where asserted the litigant's "right to return [to federal court] will in all events be preserved"; "the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily . . . fully litigated his federal claims in the state courts") (emphasis added); *Exxon Mobil*, 544 U.S. at ___; 125 S.Ct. at 1527 n. 9 (holding *England* "permit[s] a party to reserve litigation of federal constitutional claims for federal court while a state court resolves questions of state law").

For all these reasons, therefore, this court did (and does) have personal jurisdiction over this action, the court's erroneous decision to the contrary notwithstanding. Regardless, the action is as a matter of law most definitively *not* frivolous, and the Motion must be denied.

## III. EVEN UNDER THE FIVE-FACTOR TEST ARGUED BY INTERVENOR, AN AWARD OF FEES WOULD BE IMPROPER

Even if the five-factor test argued for by Intervenor were applicable, an award of fees would be improper. Numerous circuit and district courts which have assumed the application of the standard have made clear that an award of fees against an unsuccessful ERISA *plaintiff* would rarely be proper, as the result would be to discourage the very private causes of actions Congress has authorized to ensure enforcement of the statute's terms.[6]

Thus in *Gray*, in which the losing plaintiff did not raise the arguments set forth in the

---

[6] Again, this is a major reason why the five-factor test is in fact inapplicable, and a fee award against a losing plaintiff should be held unlawful unless his claim is actually frivolous. *See* Argument II, *supra*.

preceding section so that the court assumed the applicability of the five-factor test, the First

Circuit noted that the ability to pay, deterrence and benefit conferred factors all "favor a

prevailing plaintiff more strongly than a prevailing defendant," which is appropriate because

"ERISA was primarily intended to protect the interests of plan beneficiaries and participants,"

*i.e.*, *plaintiffs*. 792 F.2d at 258-59. Accordingly, the court affirmed a denial of fees to a

defendant who had prevailed by directed verdict at trial as there was no evidence plaintiff's

claim was in bad faith, *i.e.*, no "circumstances indicating that [he] had knowledge that his suit

was without basis, but proceeded anyway." *Id.* at 259. The court thus rested its decision on "the

reasonableness of [plaintiff's] ERISA claims," *id.*, and held that as there was "some evidence in

the record of [defendant']'s withholding of pension benefits from the plaintiff," *id.*, plaintiff's

suit was not unreasonable and a fee award was properly denied.

Similarly, the Seventh Circuit has expressly "emphasize[d] . . . that refusal to award

attorneys' fees and costs to ERISA defendants, even 'prevailing' defendants, would rarely

constitute an abuse of discretion. Although the five factors used as guidelines above do not

explicitly differentiate between plaintiffs and defendants, consideration of these factors will

seldom dictate an assessment of attorneys' fees against ERISA plaintiffs." *Marquardt v. North*

*American Car Corp.*, 652 F.2d, 719-20 (7th Cir. 1981).

The Ninth Circuit has also held that the five-factor test "very frequently suggest[s] that

attorney's fees should not be charged against ERISA plaintiffs, *Tingey v. Pixley-Richards West,*

*Inc.*, 958 F.2d 908, 909 (9th Cir. 1992), and has held such an award improper where there is "no

showing of bad faith or culpability" by plaintiff so that "no deterrent effect would flow from

such an award," *Hogan v. Kraft Foods*, 969 F.2d 142, 146 (9th Cir. 1992). Indeed, the court has

gone so far as to note its "common perception that attorney's fees should *not* be charged against

ERISA plaintiffs." *Flanagan v. Inland Empire Electrical Workers Pension Plan*, 3 F.3d 1246,

1253 (9th Cir. 1993) (emphasis added). *See also Sage v. Automation, Inc. Pension Plan and*

*Trust*, 845 F.2d 885, 895-96 (10th Cir. 1988) (denying fee award against losing plaintiffs because

their "position was in good faith and not without merit"); *Sunbeam-Oster Co., Inc. Group*

*Benefits Plan v. Whitehurst*, 102 F.3d 1368, 1378 (5th Cir. 1996) (denying fee award against

plaintiff even though reversing judgment in his favor and entering judgment against him because

"we find essentially no evidence of culpability or bad faith on [his] part, and conclude that . . .

the relative merits of the parties' positions were not overwhelmingly stacked on the [defendant]'s

side").

      Numerous district court decisions in other circuits are to the same effect. For example,

the court in *Jones v. O'Higgins*, 736 F.Supp. 1243 (N.D.N.Y. 1990) recognized "[t]he favorable

slant toward ERISA plaintiffs" if the five-factor test is applied and held that that slant was

"necessary to prevent the chilling of suits brought in good faith--the purpose of ERISA being to

promote the interests of plan beneficiaries and allow them to enforce their statutory rights." *Id.*

at 1245. Thus the court declined to award fees against a losing plaintiff as he had not acted in

bad faith, at least some of his claims were substantially justified and a denial of fees "would be

in accord with ERISA's goal of protecting beneficiaries and enforcing fiduciary obligations." *Id.*

at 1247. And the court in *Travitz v. Northeast Department ILGWU Health and Welfare Fund*,

818 F.Supp. 761 (M.D.Pa. 1993) denied fees against a losing plaintiff where her claim was not in

bad faith or frivolous, by resolving an unclear issue the action benefited the plan and other

participants and the court did not believe that "deter[e]nce of actions such as [this] is a wise

judicial goal." *Id.* at 771. *See also Loving v. Pirelli Cable Corp.*, 11 F.Supp.2d 480, 494-97

(D.Del. 1998) (recognizing "it is unusual to award attorney's fees and costs to a prevailing

defendant," and awarding fees only against plaintiff's counsel, and not plaintiff, after concluding counsel violated Fed.R.Civ.P. 11 by asserting a claim that was *not* "objectively reasonable" after a prior caution from the court about such conduct).

As discussed in the preceding argument, there is no basis whatsoever for concluding that Mr. Geiger's suit was jurisdictionally frivolous or unreasonable (indeed, it is meritorious), so even under the five-factor test advocated for by Intervenor, as routinely interpreted by the courts where a fee award is sought against a losing plaintiff, the Motion must be denied.

Indeed, even apart from the above authority under the test, a brief consideration of the factors reveals that they do not support a fee award. As to the first factor, there is again no evidence of bad faith or culpability by Mr. Geiger: to the contrary, he has consistently since even before the state court orders were entered taken the position, *amply* justified by (and in fact correct under) ERISA's own language, circuit and Supreme Court authority (and at the very least involving unresolved questions of law), that whether any orders that might ultimately be entered were QDROs was a matter exclusively for the federal courts and that in any event he would not litigate those issues in state court. At all times, Mr. Geiger has sought nothing more than compliance with Congress' command, set forth in ERISA, as to the limited circumstances under which benefits of qualified pension plans could be assigned to a person other than the original participant or beneficiary.

As to the second factor, ability to pay, the First Circuit has noted that it supports an award of fees against a plan or administrator far more than a plaintiff plan participant or beneficiary, *Gray*, 792 F.2d at 258, as the former business entities can purchase insurance, spread the costs of fees across all plan participants or customers and so on. Mr. Geiger is an individual and cannot do that.

- 10 -

Moreover, Mr. Geiger has been rendered insolvent by the divorce action in that his income is not adequate to meet his ordinary expenses and needs, and he is forced to deplete his savings to do so.[7] Thus Mr. Geiger drives a fifteen-year-old car with nearly 200,000 mile, lives in a house with windows that do not open and leak freely, causing heat loss and discomfort in the winter, a roof that needs replacing, a deck that needs replacing, sidewalks that have gaps and holes in them, a basement wall that has a large, water-and-mold-stained hole in it and so on. Whereas he used to save and invest a substantial sum annually, he can no longer do so and, to the contrary, must deplete his savings over time.

Further, although Mr. Geiger is nearing an age when many high-earning individuals are able to retire, he will not be able to do so, as the court in the divorce action confiscated *over 96%* of his retirement accounts (including the benefits at issue in this case).

Further, Mr. Geiger has huge debt, when before the divorce action he had none save for his home mortgage. Now, in addition to the mortgage he has thousands of dollars in credit card debt and faces claims for unpaid legal fees from prior counsel in the amount of approximately $93,000.

In addition, due to his insolvency he has been unable to afford counsel to represent him since just after the underlying divorce trial, save for relatively limited assistance of appellate counsel only on the direct appeal from the divorce judgment. Further, Mr. Geiger has suffered a large loss of income as a result of being compelled to represent himself, as he has lost over $195,000 in compensation the past three years alone largely due to the time he has been forced to spend defending against Intervenor's constant aggressive litigation.

Notably, by contrast, Intervenor is a 51-year-old holder of a master's degree in

---

[7] Intervenor's assertion that Mr. Geiger is not insolvent conveniently points only to his income, *not* to his ordinary expenses and needs for which that income must be used.

management who lives a life of leisure, without the burden of work, due to the divorce judgment and to the fact that she is in any event independently wealthy as a result of her interests in multiple family trust funds in which, under binding Supreme Judicial Court authority, she has an enforceable right to income and principal payments that would pay (based on the last discovery provided to Mr. Geiger) between her *between $147,000 and $235,000 per year over her approximately 34-year life expectancy*, depending on whether the principal was invested at conservative historical average 10-year U.S. Treasury rates (7.29%) or more aggressive historical average U.S. stock market returns (12.56%).

Indeed, plaintiff's resources are amply demonstrated by her relentless pursuit of Mr. Geiger with the assistance of a large law firm (Rubin and Rudman LLP), utilizing at least two lawyers at a time (Ms. Giordano and Ms. Wagner) not only in the divorce action itself but in the form of numerous contempt proceedings therein (all unnecessary, unfounded and unsuccessful in obtaining contempt relief), an affirmative motion after the divorce action had gone to judgment retroactively to unseal the records so she and her counsel could publicize the results of the case and intervention proceedings in this case, when all she need have done to effectuate the pension plan division of the divorce judgment was secure a proper QDRO.[8]

As to the third factor, whether the award would deter others under similar circumstances, the First Circuit has again recognized that it supports an award of fees against a plan or administrator far more than a plaintiff plan participant or beneficiary, *Gray*, 792 F.2d at 258, as "ERISA was primarily intended to protect the interests of plan beneficiaries and participants," *id.* at 259. Thus it is not a proper goal for the courts to deter good faith suits such as Mr. Geiger's

---

[8] Although the resources of the party seeking fees are not explicitly enumerated among the five factors, the First Circuit has made clear, in a case cited by Intervenor herself, that the enumerated factors are *not* exhaustive. *Cottrill v. Sparrow, Johnson & Utrillo, Inc.*, 100 F.3d 220, 225 (1st Cir. 1996) (factors "are exemplary rather than exclusive"; "[a]n inquiring court may--indeed, should--consider additional criteria that seem apropos in a given case").

by plan participants seeking to enforce their ERISA rights. *Accord, Travitz*, 818 F.Supp. at 771 (deterrence of such actions not "a wise judicial goal").

Similarly, the First Circuit has recognized that the fourth factor, the amount of benefit to the plan members conferred by the action, also supports an award of fees against a plan or administrator far more than a plaintiff plan participant or beneficiary. *Gray*, 792 F.2d at 258. Indeed, in this case at the very least--*i.e.*, even if the court's dismissal ruling were correct--Mr. Geiger's action has conferred a benefit on plan members by clarifying a previously unresolved legal issue: whether a plan participant's benefits may be involuntarily assigned by a state divorce court order which, without adequate notice or opportunity to be heard on the issue of whether the order in the form issued constitutes a QDRO, without joinder of the pension plan that the order purports to bind and in the face of an express reservation of rights by the participant to have the federal law issue of whether the order constitutes a QDRO determined by a federal court, simultaneously orders the assignment *and* determines the order to be a QDRO. *See Travitz*, 818 F.Supp. at 771 (denying fees against losing plaintiff in part because her claim benefited the plan and other participants by resolving an unclear legal issue).

Finally, even if the court's dismissal order were correct, while this would determine that the fifth factor, the relative merits of the parties' positions, favors defendants, given the *extensive* statutory and case law basis for Mr. Geiger's position the factor would not weigh heavily, and under all the foregoing authority could not justify fees in the face of the other four factors. *Sunbeam-Oster*, 102 F.3d at 1378 (denying fees against plaintiff because, inter alia, relative merits were "not overwhelmingly stacked" against him).

## IV. THE FEES CLAIMED ARE NOT SUBSTANTIATED BY ADMISSIBLE EVIDENCE, NOT LEGALLY RECOVERABLE AND WOULD REQUIRE DISCOVERY AND POSSIBLY AN EVIDENTIARY HEARING

Moreover, even if an award of fees were legally permissible, the fees claimed here are not substantiated by *any* admissible evidence, even if they were many are not legally recoverable and the vast majority would require Mr. Geiger to be afforded discovery and possibly an evidentiary hearing.

First, the sole purported factual basis for Intervenor's claimed fees is an affidavit of her associated counsel Ann Wagner, Affidavit of Counsel in Support of Intervener [*sic*] Plaintiff [*sic*]'s Motion for Fees ("Wagner Aff."), which includes the ostensible authentication of "a true copy of the relevant time and billing records of Rubin & Rudman," Intervenor's primary counsel herein, *id.* ¶ 5. Yet as evidenced by her signature block on the Motion, Ms. Wagner is a solo practitioner based in Marshfield, Massachusetts. Accordingly, there is *no* basis on which the court can find that she has personal knowledge adequate to authenticate the alleged billing records of a firm by which she is not employed, and it is the most fundamental of requirements for the admissibility of testimony that it be predicated on personal knowledge. Fed. R. Evid. 602. As Intervenor thus has *no* admissible evidence of the amount of her claimed fees, none may be awarded.

Even if the rules of evidence were to be wholly disregarded by the court, most of Intervenor's claimed fees are not legally recoverable. ERISA provides that the court may award "a reasonable attorney's fee and costs of action to *either party*." 29 U.S.C. § 1132(g) (emphasis added). Thus the statute's terms permit an award to "either" the plaintiff or defendant, *not* an intervenor, and Intervenor cites no authority permitting same.

Moreover, even if fees could be awarded to an intervenor, Intervenor became a "party"

only by the court's order of July 17, 2006, and she cites no authority permitting an award of fees

for legal work done *before* she became a party to this action. To the contrary, ERISA's language

authorizing an award of "reasonable attorney's fee and costs of *action*" limits an award only to

fees incurred "after a district court has assumed jurisdiction over a case." *Peterson v.*

*Continental Casualty Co.*, 282 F.3d 112, 119 (2d Cir. 2002); *accord*, *Cann v. Carpenters'*

*Pension Trust Fund*, 989 F.2d 313, 316 (9th Cir. 1993) (award limited to "fees incurred in the

litigation in court"). Yet the overwhelming majority of Intervenor's claim is for work done

*before* she became a "party" in the "action" and *before* this court "assumed jurisdiction over" her

"case" by permitting her to intervene.

Further, many of the unauthenticated, vague and often only partially legible billing

entries submitted by Intervenor do not demonstrate that the work claimed for was even related to

this action (and some entries demonstrate the opposite), as opposed to her various trial and

appellate court divorce proceedings against Mr. Geiger, or that the time expended was

reasonable for the often-unspecified task. Indeed, the very description of the matter to which *all*

the time is billed is "Domestic/vs. David Geiger," not "ERISA action" or some such description.

Among the many entries that are inadequate in these respects are the following. An

11/1/05 FMG entry expressly relates to an "appeal," not this case. A __/8/05 AEW entry (p.2)

involves an unexplained call to a "Michael Taft." A __/14/05 AEW entry involves unexplained

"legal research." A __/18 AEW entry involves reviewing an unidentified "other party's" letter to

an unidentified "Clerk of Court," and the immediately following entries that same day involve a

call and letter to the *probate* court clerk, which plainly related to the divorce action. An

11/28/05 AEW entry involved drafting a "Motion to Intervene and Answer," unallocated as

between the two tasks, yet Intervenor never filed an answer. AEW entries of 12/7/05 and

- 15 -

12/13/05 involve correspondence to Foley Hoag, not specified as to whether it was in connection

with this case or the divorce proceeding.  FMG entries of 12/20/05 involve discussions with her

client, again without specification as to what matter.  A 3/14/06 AEW entry is for unexplained

legal research.  A 3/18/06 AEW entry includes an unexplained "Internal Office Memo" to FMG

(who does not report receiving or reviewing same).  Virtually all WSB and AJT entries involve

non-legal clerical/overhead tasks such as file "re-organization" and "organization,"

photocopying, scanning documents into .pdf format, electronic filing, making hand delivery and

unspecified "case administration"; one entry (__/__/06--p.9) includes job training to learn *how* to

electronically file.

　　　　Further, many of the time entries appear on their face to be grossly excessive.  For

example, Ms. Wagner asserts without explanation that she spent 13.25 hours understanding Mr.

Geiger's ERISA claims, Wagner Aff. ¶ 8, when all she need to have done was to read his

complaint and the statutory language he relied on therein.  Similarly, she reports spending 6.0

hours to write two letters merely to inquire what position the plan administrator intended to take

and urging it to defend against Mr. Geiger's suit.  *Id.*  She also reports spending *30 hours* on a

motion to intervene and motion to dismiss, including to appear at a hearing ostensibly to argue in

support of intervention, *id.* ¶ 11, when that motion had not been set for hearing and the time for

Mr. Geiger to respond to it had not even run.  And she reports spending *21.25 hours* to prepare

Intervenor's fee motion, *id.* ¶ 13, even though it relies primarily only on one First Circuit case

(*Gray*).

　　　　Finally, Mr. Geiger requests discovery concerning all of Ms. Wagner's claimed charges

and, if he desires it after conducting such discovery, an evidentiary hearing on such issues as

specifically provided for by Fed.R.Civ.P. 54(d)(2)(C).  While Ms. Wagner's work is billed for on

the unauthenticated purported printout of the Rubin and Rudman firm, as noted above she is *not* a lawyer at that firm but rather a sole practitioner. Accordingly, Mr. Geiger is entitled to discovery *concerning the rates (or range of rates) that Ms. Wagner charges in the ordinary course of her work as a solo practitioner*, as Rubin and Rudman should not be permitted to mark up such rates to $350 per hour for the purpose of collecting such a mark-up from Mr. Geiger under ERISA.

### Conclusion

For all the foregoing reasons, therefore, the Motion should be denied. Alternatively, if the court is considering awarding any fees for the work of Ms. Wagner, Mr. Geiger should be afforded discovery concerning her claimed fees and, if necessary, an evidentiary hearing on those issues.

Respectfully submitted,

David R. Geiger, pro se
22 Tanglewood Road
Wellesley, MA 02481
(781) 431-1411

Dated: February 15, 2007

### Verification

I, David R. Geiger, hereby state, under the pains and penalties of perjury, that the facts set forth herein are true and correct or, to the extent offered upon information and belief, that I believe them to be true and correct.

David R. Geiger

### Certificate of Service

I, David R. Geiger, hereby certify that on this 15 day of February, 2007, I served the foregoing Plaintiff's Verified Opposition to Intervenor's Motion for Attorneys' Fees upon all parties herein by causing a copy of same to be mailed by first-class mail, postage prepaid, to Frances M. Giordano, Esq., Rubin and Rudman LLP, 50 Rowes Wharf, Boston, MA 02110,

- 17 -

attorney for intervenor, and Michael P. Boudett, Esq., Foley Hoag LLP, 155 Seaport Boulevard, Boston, MA 02210, attorney for defendants.

David R. Geiger